APPEAL,ATTYOPEN,BHL−HD,BHL−MF,CLOSED,RF

# United States District Court
## Eastern District of Wisconsin (Milwaukee)
## CIVIL DOCKET FOR CASE #: 2:23−cv−00489−BHL

SHORT RECORD
Appeal No. 26-1555
Filed 03.23.2026

Acevedo et al v. Mattioli et al
Assigned to: Judge Brett H Ludwig
Demand: $15,000,000
Cause: 42:1983 Civil Rights Act

Date Filed: 04/14/2023
Date Terminated: 03/06/2026
Jury Demand: Both
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: Federal Question

**Plaintiff**

**Jose Acevedo**
*Indvidually and as Special Administrator*
*of the Estate of Joel Acevedo*

represented by **Ben Crump**
Ben Crump Law
717 D St NW − Ste 310
Washington, DC 20004
800−959−1444
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kirk M Claunch**
The Claunch Law Firm
301 W Central Ave
Fort Worth, TX 76164
817−335−4003
Email: claunchlaw3@earthlink.net
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Devon M Jacob**
Jacob Litigation
PO Box 837
Mechanicsburg, PA 17055−0837
717−796−7733
Email: djacob@jacoblitigation.com
*ATTORNEY TO BE NOTICED*

**Precious Chavez**
Ben Crump Law
122 S Calhoun St
Tallahassee, FL 32301
800−959−1444
*ATTORNEY TO BE NOTICED*

**B'Ivory LaMarr**
The LaMarr Firm PLLC
5718 Westheimer Rd − Ste 1000
Houston, TX 77057
800−679−4600

Fax: 800−679−4600
Email: blamarr@bivorylamarr.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Estate of Joel Acevedo**                    represented by    **Ben Crump**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kirk M Claunch**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Devon M Jacob**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Precious Chavez**
(See above for address)
*ATTORNEY TO BE NOTICED*

**B'Ivory LaMarr**
(See above for address)
*ATTORNEY TO BE NOTICED*


V.

**Defendant**

**Michael Mattioli**                    represented by    **Craig S Powell**
Hart Powell SC
735 N Water St − Ste 1212
Milwaukee, WI 53202−4105
414−271−9595
Fax: 414−271−3701
Email: cspowell@hartpowell.com
*TERMINATED: 01/05/2024*

**Jasmyne M Baynard**
Wirth & Baynard
9898 W Bluemound Rd − Ste 2
Wauwatosa, WI 53226
414−291−7979
Fax: 414−291−7960
Email: jmb@wbattys.com
*ATTORNEY TO BE NOTICED*

**Joseph M Wirth**
Wirth and Baynard
9898 W Bluemound Rd − Ste 2

Wauwatosa, WI 53202
414−291−7979
Email: jmw@wbattys.com
*ATTORNEY TO BE NOTICED*

**Michael F Hart**
Hart Powell SC
735 N Water St − Ste 1212
Milwaukee, WI 53202−4105
414−271−9595
Fax: 414−271−3701
Email: mfhart@hartpowell.com
*TERMINATED: 01/05/2024*

**Defendant**

**Robert Roach**
*TERMINATED: 07/25/2025*

represented by **Clint B Muche**
City of Milwaukee
841 N Broadway − 7th Fl
Milwaukee, WI 53202
414−286−6195
Email: cmuche@milwaukee.gov
*ATTORNEY TO BE NOTICED*

**Jennifer L Williams**
Milwaukee City Attorneys Office
200 E Wells St Rm 800
Milwaukee, WI 53202
414−286−2601
Email: jlwilliams@grsm.com
*TERMINATED: 11/18/2024*

**Defendant**

**Alfonso Morales**
*TERMINATED: 07/25/2025*

represented by **Clint B Muche**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jennifer L Williams**
(See above for address)
*TERMINATED: 11/18/2024*

**Defendant**

**City of Milwaukee Wisconsin**

represented by **Joshua B Cronin**
Milwaukee City Attorney
800 City Hall
200 E Wells St
Milwaukee, WI 53202
414−286−8822
Email: jbcronin@milwaukee.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Clint B Muche**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jennifer L Williams**
(See above for address)
*TERMINATED: 11/18/2024*

| Date Filed | # | Docket Text |
|---|---|---|
| 04/14/2023 | 1 | COMPLAINT with Jury Demand; against Michael A Mattioli, Alfonso Morales, Robert Roach by Jose Acevedo. ( Filing Fee PAID $402 receipt number AWIEDC−4376370) (Attachments: # 1 Civil Cover Sheet, # 2 Summons, # 3 Summons, # 4 Summons)(LaMarr, B'Ivory) |
| 04/14/2023 | | NOTICE Regarding assignment of this matter to Judge Brett H Ludwig; Consent/refusal forms for Magistrate Judge Joseph to be filed within 21 days; the consent/refusal form is available here. Pursuant to Civil Local Rule 7.1 a disclosure statement is to be filed upon the first filing of any paper and should be filed now if not already filed. (jcl) |
| 04/14/2023 | | Case Opening Modification(s); The following modification(s) have been made to your case entry: The county code has been modified − please remember to choose the county for the first named plaintiff. ; Please refer to the attorney case opening instructions, the summons instructions and the party name guidelines found in the user manual for further guidance (kah) |
| 04/14/2023 | | Summons Issued as to Michael A Mattioli, Alfonso Morales, Robert Roach. (kah) |
| 05/09/2023 | 2 | NOTICE of Appearance by Michael F Hart on behalf of Michael A Mattioli. Attorney(s) appearing: Attorney Michael F. Hart (Hart, Michael) |
| 05/09/2023 | 3 | Unopposed MOTION for Extension of Time *for Defendant, Michael Mattioli, to File Responsive Pleading to Civil Complaint* by Michael A Mattioli. (Hart, Michael) |
| 05/09/2023 | 4 | NOTICE of Appearance by Craig S Powell on behalf of Michael A Mattioli. Attorney(s) appearing: Attorney Craig S. Powell (Powell, Craig) |
| 05/09/2023 | 5 | NOTICE of Appearance by Clint B Muche on behalf of Alfonso Morales, Robert Roach. Attorney(s) appearing: CLINT B. MUCHE, JENNIFER WILLIAMS (Muche, Clint) |
| 05/09/2023 | 6 | MOTION to Strike *PORTIONS OF THE COMPLAINT* by Alfonso Morales, Robert Roach. (Muche, Clint) |
| 05/09/2023 | 7 | Magistrate Judge Jurisdiction Form filed by Alfonso Morales, Robert Roach. (NOTICE: Pursuant to Fed.R.Civ.P. 73 this document is not viewable by the judge.) (Muche, Clint) |
| 05/09/2023 | 8 | TEXT ONLY ORDER signed by Judge Brett H. Ludwig on 5/9/2023 re: 3 Unopposed Motion for Extension of Time for Defendant Michael Mattioli to File Responsive Pleading. The motion is **GRANTED**. Defendant Mattioli must now respond to the complaint on or before **May 30, 2023**. (cc: all counsel)(jad) |
| 05/20/2023 | 9 | |

| | | |
|---|---|---|
| | | BRIEF in Opposition filed by All Plaintiffs re 6 MOTION to Strike *PORTIONS OF THE COMPLAINT* . (LaMarr, B'Ivory) |
| 05/30/2023 | 10 | First MOTION to Stay *Proceedings* by Michael A Mattioli. (Powell, Craig) |
| 05/30/2023 | 11 | BRIEF in Support filed by Michael A Mattioli re 10 First MOTION to Stay *Proceedings* . (Attachments: # 1 Complaint Ex. A to Brief in Support of Motion to Stay Proceedings − Criminal Complaint 20CF1991)(Powell, Craig) |
| 05/30/2023 | 12 | DECLARATION of Craig S. Powell in Support of Defendant Mattioli's Motion to Stay Proceedings (Powell, Craig) |
| 06/08/2023 | 13 | RESPONSE to Motion filed by All Plaintiffs re 10 First MOTION to Stay *Proceedings* . (LaMarr, B'Ivory) |
| 06/08/2023 | 14 | NOTICE of Hearing: Telephonic Counsel−Only Status Conference set for 6/14/2023 at 11:00 AM before Judge Brett H Ludwig. Counsel must call the Court conference line at 1−669−254−5252, enter Meeting ID 160 9600 2659 # and Passcode 243805 before the scheduled hearing time. (cc: all counsel)(jad) |
| 06/14/2023 | 15 | Audio of hearing held on 6/14/23 at 11:10 a.m.; Audio File Size(15.7 MB) (jad) |
| 06/14/2023 | 16 | Minute Order. Proceedings held before Judge Brett H Ludwig: Status Conference held on 6/14/2023. Defendants Roach and Morales's motion to strike 6 is DENIED. Defendant Mattioli's motion to stay 10 is GRANTED. Proceedings in this matter are stayed until November 30, 2023. Responses to Plaintiffs' complaint must be filed by December 1, 2023. (Tape #15.) (jad) |
| 12/01/2023 | 17 | NOTICE of Appearance by Joseph M Wirth on behalf of Michael A Mattioli. Attorney(s) appearing: Joseph M. Wirth (Wirth, Joseph) |
| 12/01/2023 | 18 | NOTICE of Appearance by Jasmyne M Baynard on behalf of Michael A Mattioli. Attorney(s) appearing: Jasmyne M. Baynard (Baynard, Jasmyne) |
| 12/01/2023 | 19 | ANSWER to 1 Complaint, with Jury Demand by Michael A Mattioli.(Wirth, Joseph) |
| 12/01/2023 | 20 | ANSWER to 1 Complaint, with Jury Demand by Alfonso Morales, Robert Roach.(Williams, Jennifer) |
| 12/04/2023 | | NOTICE from the clerk to plaintiffs and defendant Mattioli requesting that the Consent/Refusal form to Magistrate Judge Joseph be filed within 21 days; the form is available here. (vkb) |
| 12/05/2023 | 21 | SCHEDULING ORDER signed by Judge Brett H Ludwig on 12/5/23. The Court will conduct a telephone scheduling conference pursuant to Fed. R. Civ. P. 16(b) and Civil L.R. 16(a), on **January 18, 2024 at 9:00 a.m.** To appear by telephone, you must call the Court conference line at 1−669−254−5252, enter Meeting ID 160 9600 2659 and Passcode 243805 before the scheduled hearing time. A formal written Rule 26(f) report must be filed **no later than seven days** before the scheduling conference. (cc: all counsel)(jad) |
| 12/07/2023 | 22 | Magistrate Judge Jurisdiction Form filed by All Plaintiffs. (NOTICE: Pursuant to Fed.R.Civ.P. 73 this document is not viewable by the judge.) (LaMarr, B'Ivory) |
| 12/21/2023 | 23 | AMENDED COMPLAINT with Jury Demand against All Plaintiffs filed by Jose Acevedo, Estate of Joel Acevedo.(LaMarr, B'Ivory) |

| 12/22/2023 | 24 | Magistrate Judge Jurisdiction Form filed by Michael A Mattioli. (NOTICE: Pursuant to Fed.R.Civ.P. 73 this document is not viewable by the judge.) (Baynard, Jasmyne) |
|---|---|---|
| 01/02/2024 | 25 | MOTION to Withdraw as Attorney by Michael Mattioli. (Powell, Craig) |
| 01/04/2024 | 26 | ANSWER to 23 Amended Complaint with Jury Demand by Michael Mattioli.(Baynard, Jasmyne) |
| 01/05/2024 | 27 | TEXT ONLY ORDER signed by Judge Brett H. Ludwig on 1/14/2022 re: 25 Motion to Withdraw as Counsel. The Court **GRANTS** the motion. Attorneys Michael F. Hart and Craig S. Powell have leave to withdraw from representation of Defendant Michael Mattioli. The clerk is directed to remove Hart and Powell from the case. The Court notes that this motion was unnecessary as per Civil L. R. 7.1(e)(1). (cc: all counsel)(jad) |
| 01/11/2024 | 28 | ANSWER to Complaint AND CROSSCLAIM against MICHAEL MATTIOLI with Jury Demand filed by City of Milwaukee Wisconsin, Alfonso Morales, Robert Roach. (Muche, Clint) |
| 01/11/2024 | 29 | *JOINT* REPORT of Rule 26(f) Plan by City of Milwaukee Wisconsin, Alfonso Morales, Robert Roach. (Muche, Clint) |
| 01/16/2024 |  | NOTICE from the clerk to defendant City of Milwaukee requesting that the Consent/Refusal form to Magistrate Judge Joseph be filed within 21 days; the form is available here. (vkb) |
| 01/16/2024 | 30 | Magistrate Judge Jurisdiction Form filed by City of Milwaukee Wisconsin. (NOTICE: Pursuant to Fed.R.Civ.P. 73 this document is not viewable by the judge.) (Muche, Clint) |
| 01/17/2024 | 31 | LETTER from Attorney Clint Muche *Discovery Negotiations Update*. (Muche, Clint) |
| 01/18/2024 | 32 | Audio of hearing held on 1/18/24 at 9:00 a.m.; Audio File Size(10.3 MB) (jad) |
| 01/18/2024 | 33 | Minute Entry for proceedings held before Judge Brett H Ludwig: Scheduling Conference held on 1/18/2024. Counsel for the parties reported on the status of the case and their opinions as to how the case should proceed. The Court will issue a scheduling order adopting the deadlines as proposed in the parties' Rule 26(f) report and setting dates for a final pretrial conference and trial. (Tape #32) (jad) |
| 01/18/2024 | 34 | SCHEDULING ORDER signed by Judge Brett H Ludwig on 1/18/24. Rule 26(a) Disclosures to be exchanged by 2/9/24. Amended Pleadings due 1/18/24. Fact and expert discovery due 8/16/24. Primary expert witnesses due 5/1/24. Rebuttal expert witnesses due 6/16/24. Daubert motions due 11/30/24. Dispositive motions due 9/20/24. Final Pretrial conference set for 5/1/25 at 9:00 a.m. Jury trial set for 5/12/25 − 5/16/25. (cc: all counsel)(jad) |
| 04/12/2024 | 35 | ANSWER to Crossclaim re 28 *and crossclaim against City of Milwaukee* filed by Michael Mattioli. (Wirth, Joseph) |
| 04/30/2024 | 36 | Joint MOTION to Enlarge Scheduling Order by All Plaintiffs. (LaMarr, B'Ivory) |
| 05/03/2024 | 37 | ANSWER to Crossclaim re 35 filed by City of Milwaukee Wisconsin. (Muche, Clint) |
| 05/06/2024 |  | NOTICE of Electronic Filing Error re 37 Answer to Crossclaim filed by City of Milwaukee Wisconsin; The exhibit with this document should have been filed as an attachment to the main document. This document does not need to be re−filed. Please |

| | | refer to the policies and procedures for electronic case filing and the user manual found at www.wied.uscourts.gov (vkb) |
|---|---|---|
| 05/07/2024 | 38 | TEXT ONLY ORDER signed by Judge Brett H. Ludwig on 5/7/2024 re: 36 Joint Motion to Amend Scheduling Order. The Motion is **GRANTED**. All discovery will now close on **December 1, 2024**, primary expert witness disclosures are now due on or before**August 15, 2024**, rebuttals on or before **October 1, 2024**, and *Daubert* motions are due on or before **March 15, 2025**. Finally, dispositive motions will be due on or before **January 10, 2025**. (cc: all counsel)(jad) |
| 05/07/2024 | | Reset Deadlines: Discovery deadline set for 12/1/2024 and Dispositive Motions due by 1/10/2025 (vkb) (Entered: 05/08/2024) |
| 08/15/2024 | 39 | Joint MOTION for Protective Order *Qualified Protective Order for Protected Health Information* by Jose Acevedo, Estate of Joel Acevedo. (Attachments: # 1 Text of Proposed Order Qualified Protective Order)(Jacob, Devon) |
| 08/16/2024 | | DISREGARD − DOCKETED IN ERROR ~~NOTICE from the clerk to~~ **Defendant** ~~requesting that the Consent/Refusal form to Magistrate Judge be filed within 21 days; the form is available~~ here~~. (ams)~~ Modified on 8/16/2024 (ams). |
| 08/19/2024 | 40 | TEXT ONLY ORDER signed by Judge Brett H. Ludwig on 8/19/2024 re: 39 Joint Motion for the Entry of a Qualified Protective Order. The Court **DENIES** the motion *without prejudice* because parties have not supported their request with an affidavit or stipulation setting forth specific facts sufficient to establish good cause for a protective order. *See* Civil L.R. 26(e)(1) ("All motions and stipulations requesting a protective order must contain sufficient facts demonstrating good cause."); *Jepson, Inc. v. Makita Elec. Works, Ltd.*, 30 F.3d 854, 858 (7th Cir. 1994) ("In deciding whether to issue a stipulated protective order, the district court must independently determine if 'good cause' exists."). (cc: all counsel)(jad) |
| 08/30/2024 | 41 | Joint MOTION to Enlarge Scheduling Order by All Plaintiffs. (LaMarr, B'Ivory) |
| 08/30/2024 | 42 | TEXT ONLY ORDER signed by Judge Brett H. Ludwig on 8/30/2024 re: 41 Joint Motion to Amend Scheduling Order. The Motion is **GRANTED**. Fact discovery will now close **March 1, 2025**, primary expert witness disclosures are due **November 15, 2024**, rebuttal expert witness disclosures are due **January 3, 2025**, and *Daubert* motions **June 15, 2025**. Dispositive motions are now due on or before **April 10, 2025**. The final pretrial conference scheduled for May 1, 2025 is **CANCELLED** and the jury trial scheduled to begin May 12, 2025 is **ADJOURNED**. New dates will be set as necessary after the resolution of dispositive motions. (cc: all counsel)(jad) |
| 11/15/2024 | 43 | NOTICE of Withdrawal by Jennifer L Williams on behalf of Robert Roach, Alfonso Morales, City of Milwaukee Wisconsin.Attorney Jennifer L. Williams to be termed. (Williams, Jennifer) |
| 11/15/2024 | 44 | STATUS REPORT *Joint* by Jose Acevedo, Estate of Joel Acevedo. (Jacob, Devon) |
| 11/18/2024 | | Attorney Jennifer L Williams terminated (vkb) |
| 04/03/2025 | 45 | Joint MOTION to Reset *Scheduling Deadlines* by Robert Roach, Alfonso Morales, City of Milwaukee Wisconsin. (Muche, Clint) |
| 04/03/2025 | 46 | NOTICE of Hearing on Motion 45 Joint MOTION to Reset *Scheduling Deadlines* : Telephonic Motion Hearing set for 4/11/2025 at 1:30 PM before Judge Brett H Ludwig. To appear by telephone, you must call the Court conference line at |

| | | |
|---|---|---|
| | | 1−669−254−5252, enter Meeting ID 160 9600 2659 and Passcode 243805 before the scheduled hearing time. (cc: all counsel)(jad) |
| 04/11/2025 | 47 | Audio of hearing held on 4/11/25 at 1:30 p.m.; Audio File Size(20.3 MB) (jad) |
| 04/11/2025 | 48 | Minute Entry for proceedings held before Judge Brett H Ludwig: Motion Hearing held on 4/11/2025 re 45 Joint MOTION to Reset Scheduling Deadlines. The Court reluctantly granted the motion, but only in part, and indicated that further extensions would not be granted absent extraordinary circumstances. The Court explained the need to seek extensions before a deadline has passed. The Court then set a more abbreviated extension of the latest schedule. (Tape #47) (jad) |
| 04/11/2025 | 49 | SCHEDULING ORDER signed by Judge Brett H Ludwig on 4/11/25. Jury Trial set to begin 2/23/2026 at 8:30 AM in Courtroom 320, 517 E Wisconsin Ave., Milwaukee, WI 53202 before Judge Brett H Ludwig. Pretrial Conference set for 2/13/2026 at 9:00 AM in Courtroom 320, 517 E Wisconsin Ave., Milwaukee, WI 53202 before Judge Brett H Ludwig. Fact discovery due 5/30/25. Primary expert witnesses due 6/13/25. Rebuttal expert witnesses due 6/27/25. Expert discovery due 7/11/25. Dispositive motions due 8/1/25. (cc: all counsel)(jad) |
| 07/24/2025 | 50 | STIPULATION of Dismissal *OF DEFENDANTS ROACH AND MORALES WITH PREJUDICE* by City of Milwaukee Wisconsin, Alfonso Morales, Robert Roach. (Muche, Clint) |
| 07/25/2025 | | Party Alfonso Morales and Robert Roach terminated and dismissed with prejudice and without costs to either party pursuant to 50 Joint Stipulation Dismissing Defendants Roach and Morales With Prejudice (vkb) |
| 08/01/2025 | 51 | MOTION for Summary Judgment by Michael Mattioli. (Baynard, Jasmyne) |
| 08/01/2025 | 52 | BRIEF in Support filed by Michael Mattioli re 51 MOTION for Summary Judgment . (Baynard, Jasmyne) |
| 08/01/2025 | 53 | DECLARATION of Michael Mattioli (Baynard, Jasmyne) |
| 08/01/2025 | 54 | DECLARATION of Jasmyne Baynard *in Support of Summary Judgement* (Attachments: # 1 Mattioli Deposition Transcript, # 2 Roach Deposition Transcript, # 3 Janowski Testimony, # 4 Peters Testimony, # 5 Roach Testimony, # 6 Expert Trial Testimony)(Baynard, Jasmyne) |
| 08/01/2025 | 55 | MOTION for Partial Summary Judgment *Regarding "Color of Law" and "Scope of Employment"* by Jose Acevedo, Estate of Joel Acevedo. (Jacob, Devon) |
| 08/01/2025 | 56 | STATEMENT OF FACT by Jose Acevedo, Estate of Joel Acevedo . (Attachments: # 1 Exhibit 1 − Mattioli Deposition Transcript, # 2 Exhibit 2 − Standard Operating Procedure − 220 − Arrest Authority)(Jacob, Devon) |
| 08/01/2025 | 57 | BRIEF in Support filed by Jose Acevedo, Estate of Joel Acevedo re 55 MOTION for Partial Summary Judgment *Regarding "Color of Law" and "Scope of Employment"* . (Jacob, Devon) |
| 08/01/2025 | 58 | Proposed Jury Instructions by City of Milwaukee Wisconsin. (Muche, Clint) |
| 08/01/2025 | 59 | MOTION for Summary Judgment by City of Milwaukee Wisconsin. (Muche, Clint) |
| 08/01/2025 | 60 | Proposed Findings of Fact by City of Milwaukee Wisconsin. (Muche, Clint) |

| 08/01/2025 | 61 | DECLARATION of Alan D Carsky in support of summary judgment (Attachments: # 1 EX 1 − SOP 460, # 2 EX 2 − SOP 220, # 3 EX 3 − CAD SHEET, # 4 EX 4 − 911 CALL, # 5 EX 5 − ROACH BWC, # 6 EX 6 − BOUZEK BWC, # 7 EX 7 − ROMERO−PEREZ BWC, # 8 EX 8 − DATHE BWC)(Muche, Clint) Modified on 8/4/2025 (lz). |
|---|---|---|
| 08/01/2025 | 62 | DECLARATION of Jim Owczarski in support of motion for summary judgment. (Muche, Clint) Modified on 8/4/2025 (lz). |
| 08/01/2025 | 63 | DECLARATION of Clint B Muche in support of summary judgment. (Attachments: # 1 EX 1 − MATTIOLI DISCOVERY RESPONSES, # 2 EX 2 − MATTIOLI DEPOSITION TRANSCRIPT, # 3 EX 3 − PETERS TESTIMONY, # 4 EX 4 − JANOWSKI TESTIMONY, # 5 EX 5 − BLOMME TESTIMONY, # 6 EX 6 − DEFORD TESTIMONY, # 7 EX 7 − DALLAND TESTIMONY, # 8 EX 8 − TLOMAK TESTIMONY, # 9 EX 9 − MATTIOLI TESTIMONY)(Muche, Clint) Modified on 8/4/2025 (lz). |
| 08/01/2025 | 64 | BRIEF in Support filed by City of Milwaukee Wisconsin re 59 MOTION for Summary Judgment . (Muche, Clint) |
| 08/04/2025 | 65 | Exhibits 4−8 to 61 Declaration, (NOT AVAILABLE ON PACER; Exhibits contained on flash drive stored in clerk's office; exhibits are electronically stored ) (asc) (Entered: 08/05/2025) |
| 08/22/2025 | 66 | MOTION in Limine *to Exclude Dr. Jimmie L. Valentine and Dr. Jeffrey M. Jentzens Expert Opinions and Testimony Due to Untimely Service of Deficient Disclosures Without Leave of Court* by Jose Acevedo, Estate of Joel Acevedo. (Jacob, Devon) |
| 08/22/2025 | 67 | BRIEF in Support filed by Jose Acevedo, Estate of Joel Acevedo re 66 MOTION in Limine *to Exclude Dr. Jimmie L. Valentine and Dr. Jeffrey M. Jentzens Expert Opinions and Testimony Due to Untimely Service of Deficient Disclosures Without Leave of Court* . (Attachments: # 1 Exhibit 1 − Email RE Service of Expert Disclosures Without Written ReportsMattioli's First Set of Deficient Disclosures, # 2 Exhibit 2 − Redacted Email RE Settlement Negotiations Referencing Deficient Disclosures, # 3 Exhibit 3 − Email RE Discussing Deficient Disclosures, # 4 Exhibit 4 − Email RE Serving Deficient Disclosure Documents, # 5 Exhibit 5 − First Set of Deficient Disclosure Documents, # 6 Exhibit 6 − Email RE Informing Mattioli's Counsel Leave of Court is Required, # 7 Exhibit 7 − Email From Mattioli's Counsel Informing Motion Will Be Filed, # 8 Exhibit 8 − Email RE Advising Non−Concurrence, # 9 Exhibit 9 − Email RE Serving Second Set of Deficient Disclosure Documents Without Leave of Court, # 10 Exhibit 10 − Second Set of Deficient Disclosure Documents)(Jacob, Devon) |
| 08/25/2025 | 68 | Unopposed MOTION for Leave to File by Michael Mattioli. (Attachments: # 1 Defendant Mattioli's Proposed Findings of Fact in Support of Summary Judgment)(Baynard, Jasmyne) |
| 08/27/2025 | 69 | TEXT ONLY ORDER signed by Judge Brett H. Ludwig on 8/27/2025 re: 68 Unopposed Motion for Leave to File Proposed Findings of Fact. Defendant Mattioli indicates he failed to file his statement of proposed undisputed facts in support of his motion for summary judgment and that Plaintiff has agreed to allow him to file the document late so long as Plaintiff receives additional time to respond. The motion is **GRANTED**. The Clerk of Court is directed to docket Defendant Mattioli's "Proposed Findings of Fact," ECF No. 68−1, as a separate docket entry as of the date of this Order. Plaintiffs must respond to summary judgment motions on or before **September** |

| | | |
|---|---|---|
| | | **10, 2025**. Defendants' optional reply briefs are due on or before **September 24, 2025**. (cc: all counsel)(jad) |
| 08/27/2025 | 70 | Proposed Findings of Fact filed by defendant Michael Mattioli (vkb) (Entered: 08/28/2025) |
| 09/02/2025 | 71 | BRIEF in Opposition filed by All Plaintiffs re 59 MOTION for Summary Judgment *(Response to City of Milwaukee)*. (LaMarr, B'Ivory) |
| 09/02/2025 | 72 | RESPONSE to 60 Defendant City's Proposed Findings of Fact and Plaintiff's ADDITIONAL PROPOSED FINDINGS OF FACT filed by all Plaintiffs (LaMarr, B'Ivory) Modified on 9/3/2025 (vkb) |
| 09/02/2025 | 73 | DECLARATION of B'Ivory LaMarr (Attachments: # 1 Exhibit A− Michael Mattioli Deposition, # 2 Exhibit B− FPC Charges 6.15.20, # 3 Exhibit C− Mattioli's Response to PLF's RFA, Roggs, RFP, # 4 Exhibit D− Robert Roach Deposition, # 5 Exhibit E− Medical Examiner Report, # 6 Exhibit F− Expert Disclosure Report of Roy Taylor, # 7 Exhibit G− James Lewis 30(b)(6) Deposition, # 8 Exhibit H− Griselda Aldrete Deposition, # 9 Exhibit I− Milwaukee Police Department SOP 220, # 10 Exhibit J− Milwaukee Police Department SOP 460)(LaMarr, B'Ivory) |
| 09/02/2025 | 74 | RESPONSE to 56 Plaintiff's Proposed Findings of Fact filed by defendant City of Milwaukee Wisconsin. (Muche, Clint) Modified on 9/3/2025 (vkb) |
| 09/02/2025 | 75 | BRIEF in Opposition filed by City of Milwaukee Wisconsin re 55 MOTION for Partial Summary Judgment *Regarding "Color of Law" and "Scope of Employment"* . (Muche, Clint) |
| 09/05/2025 | 76 | BRIEF IN OPPOSITION to Motion filed by Michael Mattioli re 66 MOTION in Limine *to Exclude Dr. Jimmie L. Valentine and Dr. Jeffrey M. Jentzens Expert Opinions and Testimony Due to Untimely Service of Deficient Disclosures Without Leave of Court* . (Baynard, Jasmyne) |
| 09/05/2025 | 77 | DECLARATION of Jasmyne Baynard (Attachments: # 1 Aldrete depo, # 2 Defendant's Supp Disclosures, # 3 Defendant's Amended Expert Disclosures, # 4 3.21.2022 Ltr, # 5 Expert CV)(Baynard, Jasmyne) |
| 09/10/2025 | 78 | BRIEF in Opposition filed by All Plaintiffs re 51 MOTION for Summary Judgment *(Response to Michael Mattioli)*. (LaMarr, B'Ivory) |
| 09/10/2025 | 79 | RESPONSE to 70 Defendant Mattioli's Proposed Findings of Fact and ADDITIONAL Proposed Findings of Fact filed by Plaintiffs (LaMarr, B'Ivory) Modified on 9/10/2025 (vkb) |
| 09/10/2025 | 80 | DECLARATION of B'Ivory LaMarr *In opposition to Mattioli's MSJ* (Attachments: # 1 Exhibit A− Michael Mattioli Deposition, # 2 Exhibit B− FPC Charges 6.15.20, # 3 Exhibit C− Mattioli's Response to PLF's RFA, Roggs, RFP, # 4 Exhibit D− Robert Roach Deposition, # 5 Exhibit E− Medical Examiner Report, # 6 Exhibit F− Expert Disclosure Report of Roy Taylor, # 7 Exhibit G− James Lewis 30(b)(6) Deposition, # 8 Exhibit H− Griselda Aldrete Deposition, # 9 Exhibit I− Milwaukee Police Department SOP 220, # 10 Exhibit J− Milwaukee Police Department SOP 460)(LaMarr, B'Ivory) |
| 09/10/2025 | 81 | RESPONSE to 70 Defendant Mattioli's Proposed Findings of Fact filed by City of Milwaukee Wisconsin. (Muche, Clint) Modified on 9/11/2025 (vkb) |

| 09/10/2025 | 82 | DECLARATION of CLINT B. MUCHE *in Support of defendant City's Response to defendant Mattioli's Proposed Findings of Fact* (Attachments: # 1 Ex. 1 − Crime Scene Photos)(Muche, Clint) |
|---|---|---|
| 09/10/2025 | 83 | BRIEF in Opposition filed by City of Milwaukee Wisconsin re 51 MOTION for Summary Judgment . (Muche, Clint) |
| 09/16/2025 | 84 | RESPONSE filed by City of Milwaukee Wisconsin re 72 Proposed Findings of Fact (Muche, Clint) |
| 09/16/2025 | 85 | RESPONSE to 74 City's Additional Proposed Findings of Fact filed by Plaintiff ~~Counter Proposed Findings of Fact by Jose Acevedo, Estate of Joel Acevedo~~ (Jacob, Devon) Modified on 9/17/2025 (vkb) |
| 09/16/2025 | 86 | REPLY BRIEF in Support filed by Jose Acevedo, Estate of Joel Acevedo re 55 MOTION for Partial Summary Judgment *Regarding "Color of Law" and "Scope of Employment"* . (Jacob, Devon) |
| 09/16/2025 | 87 | DECLARATION of CLINT B. MUCHE *IN RESPONSE TO PLAINTIFF'S ADDITIONAL PROPOSED FINDINGS* (Attachments: # 1 Ex 1 − Email Delivering Exhibits, # 2 Ex 2 − Civilian Complaint dated 5.27.20, # 3 Ex 3 − FPC Charging Doc dated 7.10.20)(Muche, Clint) |
| 09/18/2025 | 88 | Expedited MOTION for Leave to File *City of Milwaukee's Reply to Plaintiff's Brief in Opposition to Summary Judgment* by City of Milwaukee Wisconsin. (Attachments: # 1 City of MIlwaukee's Reply to Plaintiff's Brief in Opposition to Summary Judgment)(Muche, Clint) |
| 09/19/2025 | 89 | REPLY BRIEF in Support filed by Jose Acevedo, Estate of Joel Acevedo re 66 MOTION in Limine *to Exclude Dr. Jimmie L. Valentine and Dr. Jeffrey M. Jentzens Expert Opinions and Testimony Due to Untimely Service of Deficient Disclosures Without Leave of Court* . (Attachments: # 1 Exhibit 11 − June 2 Email from Devon Jacob, # 2 Exhibit 12 − June 2 Email from Jasmyne Baynard) (Jacob, Devon) Modified exhibit descriptions on 9/22/2025 (av). |
| 09/24/2025 | 90 | REPLY filed by Michael Mattioli re 81 RESPONSE to 70 Proposed Findings of Fact (Baynard, Jasmyne) Modified on 9/25/2025 (av). |
| 09/24/2025 | 91 | REPLY filed by Michael Mattioli re 79 RESPONSE to 70 Proposed Findings of Fact (Baynard, Jasmyne) Modified on 9/25/2025 (av). |
| 09/24/2025 | 92 | REPLY BRIEF in Support filed by Michael Mattioli re 51 MOTION for Summary Judgment . (Baynard, Jasmyne) |
| 11/18/2025 | 93 | NOTICE of Appearance by Clint B Muche on behalf of City of Milwaukee Wisconsin. Attorney(s) appearing: Joshua Cronin (Muche, Clint) |
| 11/18/2025 | 94 | Joint MOTION in Limine *BY ALL DEFENDANTS* by City of Milwaukee Wisconsin, Michael Mattioli. (Muche, Clint) |
| 11/21/2025 | | NOTICE to Joshua Cronin: The contact information on your most recent filing does not match your Central Sign−On account. Please refer to Maintain Your CSO Account for instructions on how to update your account. (av) |
| 01/13/2026 | 95 | Rule 7(h) Expedited Non−Dispositive MOTION to Modify *the Scheduling Order* by City of Milwaukee Wisconsin. (Muche, Clint) |

| 01/14/2026 | 96 | TEXT ONLY ORDER signed by Judge Brett H. Ludwig on 1/14/2026 re: 95 Joint Motion to Modify the Scheduling Order. The Court **GRANTS** the motion. The final pretrial conference set for February 13, 2026 and the trial set for February 23, 2026 are cancelled. Both will be reset, if necessary, after the Court issues its order on the pending summary judgment motions. (cc: all counsel)(jad) |
| 03/06/2026 | 97 | ORDER signed by Judge Brett H Ludwig on 3/6/26 that Defendant Mattioli's Motion for Summary Judgment 51 is GRANTED. Plaintiff's Motion for Partial Summary Judgment 55 is DENIED. Defendant City of Milwaukee's Motion for Summary Judgment 59 is GRANTED. The two Motions in Limine 66 & 94 are DENIED as moot. Defendant City of Milwaukee's Expedited Motion for Leave to File a Reply Brief 88 is GRANTED. (cc: all counsel)(jad) |
| 03/06/2026 | 98 | JUDGMENT signed by Deputy Clerk on 3/6/26. (cc: all counsel)(jad) |
| 03/16/2026 | 99 | Amended Order on Cross Motions for Summary Judgment signed by Judge Brett H Ludwig on 3/16/26. (cc: all counsel)(jad) |
| 03/22/2026 | 100 | NOTICE OF APPEAL as to 98 Judgment, 99 Order, 97 Order on Motion for Summary Judgment,, Order on Motion for Partial Summary Judgment,,,, Order on Motion in Limine,, Order on Motion for Leave to File,,, by Jose Acevedo, Estate of Joel Acevedo. Filing Fee PAID $605, receipt number AWIEDC−5197631 (cc: all counsel) (Jacob, Devon) |
| 03/23/2026 | 101 | Attorney Cover Letter re: 100 Notice of Appeal, (Attachments: # 1 Docket Sheet)(bx) |

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISON**

| | |
|---|---|
| JOSE ACEVEDO, individually, and as Special Administrator of the Estate of JOEL ACEVEDO; <br><br> *Plaintiff,* <br><br> v. <br><br> MICHAEL MATTIOLI, et al., <br><br> *Defendants.* | **CASE NO. 23-cv-00489** <br><br><br> **JURY TRIAL DEMANDED** |

**NOTICE OF APPEAL**

NOW COMES JOSE ACEVEDO, individually, and as Special Administrator of the ESTATE OF JOEL ACEVEDO, by and through his counsel, B'IVORY LAMARR, ESQUIRE, of the law firm of B'IVORY LAMARR TRIAL LAWYERS; DEVON M. JACOB, ESQUIRE, of the law firm of JACOB LITIGATION, INC.; and BENJAMIN L. CRUMP, ESQUIRE, of BEN CRUMP LAW, PLLC, to appeal to the United States Court of Appeals for the Seventh Circuit, from the Final Judgment (Doc. 98) dated March 6, 2026, along with the Order on Cross Motions for Summary Judgment (Doc. 97) and the Amended Order on Cross Motions for Summary Judgment (Doc. 99).

1

**Respectfully Submitted,**


By:   /s/ B'Ivory LaMarr                                    Date: March 22, 2026
   **B'IVORY LAMARR, ESQUIRE**
   Wisconsin Bar No. 1122469
   blamarr@lamarrfirm.com
   THE LAMARR FIRM
   5718 Westheimer Road, Suite 1000, Houston, TX 77057
   800.679.4600, Ext. 700


By:   /s/ Devon M. Jacob                                  Date: March 22, 2026
   **DEVON M. JACOB, ESQUIRE**
   Pennsylvania Bar No. 89182
   North Carolina Bar No. 63663
   djacob@jacoblitigation.com
   JACOB LITIGATION, INC.
   P.O. Box 837, Mechanicsburg, Pa. 17055-0837
   717.796.7733


   **KIRK M. CLAUNCH, ESQUIRE**
   Texas Bar No. 1039975
   claunchlaw3@earthlink.net
   THE CLAUNCH LAW FIRM
   301 W. Central Avenue, Forth Worth, TX 76164
   817.335.4003


   **BENJAMIN L. CRUMP, ESQUIRE**
   Washington, D.C. Bar No. 1552623
   court@bencrump.com
   **PRECIOUS CHAVEZ, ESQUIRE**
   precious@bencrump.com
   BEN CRUMP LAW, PLLC
   122 S. Calhoun Street, Tallahassee, FL 32301
   800.959.1444

   *Counsel for Plaintiff*

2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JOSE ACEVEDO as Special Administrator
of the Estate of Joel Acevedo,

Plaintiff,

v.

Case No. 23-cv-0489-bhl

MICHAEL A MATTIOLI,
and the CITY OF MILWAUKEE,[1]

Defendants.

## ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

This case arises out of the death of Joel Acevedo following a drunken altercation at the home of off-duty Milwaukee Police Officer Michael Mattioli. On the night in question, Acevedo was among a group of friends that Mattioli invited over for drinks and a bonfire. After the men drank heavily and fell asleep in different rooms of the house, Mattioli awoke to find Acevedo in his bedroom rummaging through his pants. Mattioli accused Acevedo of theft and told him to leave, leading to a physical struggle that ended with Mattioli on top of Acevedo and, aided by another friend, holding him down. Acevedo continued to resist even as Mattioli called 911. By the time responding officers arrived, Acevedo did not appear to be breathing and, despite efforts to resuscitate him, he was declared legally brain dead several days later. The administrator of Acevedo's estate (the Estate) now seeks to hold Mattioli and the City of Milwaukee (the City) liable for Acevedo's death under a number of state law tort theories and for federal constitutional violations.

The parties have filed competing motions for summary judgment. Based on the undisputed facts, the Estate's federal constitutional claims fail as a matter of law. The record confirms that Mattioli was acting as a private citizen in connection with the incident, and not "under color of

---

[1] Defendants Robert Roach and Alfonso Morales were dismissed by stipulation on July 24, 2025. (ECF Nos. 5 & 50.)

law," precluding any alleged constitutional violation. The Court will therefore dismiss the Estate's federal claims and relinquish jurisdiction over its remaining state law claims.

## FACTUAL BACKGROUND[2]

At the time of the events in question, Acevedo was an adult resident of the State of Wisconsin. (ECF No. 91 at 1 ¶1.) He was an acquaintance of Mattioli, an adult resident of the State of Wisconsin and, at the relevant time, a member of the Milwaukee Police Department. (ECF No. 72 at 2 ¶3; ECF No. 85 ¶¶3–4.) The City is a municipal corporation with its principal office located in Milwaukee, Wisconsin. (ECF No. 91 at 2 ¶4.)

On April 18, 2020, Mattioli hosted a bonfire at his home that was attended by Acevedo and two other friends, Christopher Peters and Andrew Janowski. (*Id.* at 3 ¶8.) At the time of the party, Mattioli was *not* on duty. (ECF No. 72 at 2 ¶7; ECF No. 91 at 26 ¶56.) The four men spent the night drinking alcohol around a bonfire until it got too cold, at which point they went inside. (ECF No. 91 at 3 ¶¶8–9.) Because they had been drinking, the guests stayed the night in various rooms around Mattioli's home. (*Id.* at 4 ¶13.) Mattioli slept in his bedroom on the second floor. (*Id.* at 4 ¶14.) Janowski went to sleep on a couch in the living room on the main level of the house. (*Id.*) Peters went to sleep in the basement of the house. (*Id.*) It is unclear where Acevedo was or if he ever went to sleep.

In the early morning hours of April 19, 2020, Mattioli awoke to see Acevedo rummaging through his pants pockets. (*Id.* at 4 ¶15.) Mattioli concedes that both he and Acevedo were still intoxicated. (ECF No. 72 at 10 ¶51; ECF No. 91 at 28 ¶61.) When Mattioli asked Acevedo why he was stealing from him, Acevedo became loud, defensive, and angry. (ECF No. 72 at 6 ¶31.) He denied he was stealing anything and then began taking things out of his own pockets and throwing them on Mattioli's bed. (*Id.*) Mattioli got out of bed and told Acevedo to leave. (ECF No. 72 at 6 ¶33.) Acevedo left the room and began walking downstairs while Mattioli followed, continuing to insist that Acevedo leave. (*Id.* at 6 ¶¶33–34; ECF No. 91 at 5 ¶19.)

The noise and skirmishing woke both Janowski and Peters. (ECF No. 72 at 7 ¶¶35–36.) Janowski stood up from the couch but did not immediately intervene. (*Id.* at 7 ¶35.) Peters came upstairs from the basement. (*Id.* at 7 ¶36.) All witnesses confirm that Mattioli and Acevedo were

---

[2] This background is derived primarily from the parties' Proposed Findings of Facts. (ECF Nos. 72, 74, 84, 85, 90, & 91.) Additional details are derived from responding officers' body camera footage, (ECF No. 61-5), which provide objective confirmation of the circumstances, *see Lopez v. Sheriff of Cook Cnty.*, 993 F.3d 981, 985 (7th Cir. 2021).

screaming at each other, with Mattioli accusing Acevedo of stealing and telling him to leave, and Acevedo refusing to go. (*Id.* at 7 ¶37.)

Mattioli ultimately threatened to call the police if Acevedo did not leave. (*Id.* at 7 ¶38.) Acevedo responded by shoving Mattioli in the chest, causing him to take a step backward. (*Id.* at 7 ¶40; ECF No. 91 at 5 ¶26.) Peters also began yelling, and Acevedo responded by punching him in the face, causing him to fall back into the adjoining kitchen. (ECF No. 72 at 8 ¶41; ECF No. 91 at 8 ¶¶27–28.) Acevedo also lost his balance and fell to the ground. (ECF No. 72 at 8 ¶¶41–42; ECF No. 91 at 8 ¶30.) When Acevedo tried to get up, Mattioli got on top of him and used his body weight to keep Acevedo down. (ECF No. 72 at 8 ¶43; ECF No. 91 at 8–9 ¶32.) With everyone now in the kitchen, Janowski joined the fight. (ECF No. 72 at 8 ¶45; ECF No. 91 at 9–10 ¶¶34–35.)

Eventually, Acevedo lay face-down on his stomach with Mattioli on top of him, straddling Acevedo's back with his knees on the ground. (ECF No. 72 at 8–9 ¶46; ECF No. 91 at 14 ¶40.) In holding Acevedo down, Mattioli was positioned with his upper body on top of Acevedo's upper body and his right arm under Acevedo's chin or neck. (ECF No. 91 at 15 ¶42.) The parties dispute whether Mattioli was choking him. (*Id.* at 50 ¶38, 32–34 ¶¶69–71.) Janowski lay across Acevedo's legs to further restrain him. (*Id.* at 15 ¶41.) Despite these efforts, Acevedo continued to try to push off the ground, but each time, Mattioli pushed him back down. (*Id.* at 15 ¶43.)

At 7:29 a.m., Mattioli called 911, telling the dispatcher, "I need help." (*Id.* at 11 ¶36; ECF No. 90 at 7 ¶36; ECF No. 72 at 10 ¶49; ECF No. 61-4 at 00:15–00:25.) He also accurately identified himself as an off-duty police officer. (ECF No. 91 at 11 ¶36; ECF No. 90 at 7 ¶36; ECF No. 72 at 10 ¶49; ECF No. 61-4 at 00:15–00:25.) During the call, Acevedo knocked the phone out of Mattioli's hand, and Peters picked up the phone to inform dispatchers that Acevedo was attacking them and urged dispatchers to send someone quickly. (ECF No. 91 at 12 ¶38.) Acevedo can be heard on the 911 call saying "Let me go. I want to go home." (ECF No. 72 at 10 ¶50; ECF No. 91 at 24 ¶53.) According to Peters and Mattioli, Acevedo continued to resist throughout the 911 call, and both believed he posed a danger to the individuals in the house. (ECF No. 91 at 12–13 ¶¶38–39.) When the call ended, Peters went outside to wait for officers to arrive. (ECF No. 72 at 13 ¶63.)

Around 7:38 a.m., Milwaukee Police Officers Robert Roach and Mark Sheremeta arrived. (ECF No. 91 at 21 ¶49; ECF No. 72 at 13 ¶64.) Peters met Roach at the sidewalk and reported

that Acevedo had been subdued and was inside the house.  (ECF No. 61-5 at 2:38–3:02.)  He then escorted the officers to Mattioli's side door, which led into the kitchen.  (*Id.* at 3:02–3:34.)  During the walk to the house, Peters informed Roach that Mattioli was a police officer.  (*Id.*)  Upon entering, Roach saw Mattioli holding Acevedo down, and Mattioli told him to handcuff Acevedo.  (*Id.* at 3:34–3:44.)  Roach asked which of them was the police officer.  (*Id.* at 3:44–3:47.)  Mattioli responded that he was the officer, after which Roach asked if Acevedo was breathing, and Mattioli said, "I don't know."  (*Id.* at 3:47–3:51.)  Roach then moved closer, indicating he was "making sure [Mattioli] did not have his arm around [Acevedo's] neck," and Mattioli said "oh, yeah."  (*Id.* at 3:51–3:57.)  By that time, Acevedo was not moving.  (*Id.*; ECF No. 91 at 17 ¶46; ECF No. 80-1 at 100:2–9, 104:24–105:9.)

Mattioli moved to sit on Acevedo's back and hold his hands behind him.  (ECF No. 61-5 at 3:55–4:02.)  Roach tapped Acevedo's arm and said "hello," and when Acevedo did not respond, Roach told Mattioli to get up several times, finally saying "Officer, get up."  (*Id.* at 3:58–4:05.)  Mattioli and Janowski got off Acevedo and stepped back, Roach checked Acevedo for a pulse but did not find one, and the officers then rolled Acevedo onto his back to start cardio-pulmonary resuscitation (CPR).  (ECF No. 91 at 22 ¶51; ECF No. 72 at 14 ¶70; ECF No. 61-5 at 4:05–4:58, 6:20–7:48.)  CPR continued until the emergency medical technicians (EMTs) arrived.  (ECF No. 72 at 14 ¶71.)  At 8:01 a.m., the EMTs detected a pulse; Acevedo was then transported to a hospital, but he never regained consciousness.  (*Id.* at 15 ¶¶72–73.)  On April 25, 2020, a week after the incident, Acevedo was pronounced brain dead.  (*Id.* at 15 ¶76.)

## LEGAL STANDARD

Summary judgment is appropriate if the record shows there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The Court must determine whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  A fact is "material" if, under the governing law, it could influence the outcome of the lawsuit.  *Id.* at 248; *Contreras v. City of Chicago*, 119 F.3d 1286, 1291–92 (7th Cir. 1997).  A dispute over a material fact is "genuine"

only if a reasonable trier of fact could find in favor of the non-moving party on the evidence presented. *Liberty Lobby*, 477 U.S. at 248.

The moving party bears the initial burden of proving the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. Upon such a showing, the burden shifts to the opposing party to "make a showing sufficient to establish the existence of an element essential to that party's case." *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013) (quoting *Celotex*, 477 U.S. at 322). This burden is not onerous, but the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party "must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Id.* at 587 (quoting Fed. R. Civ. P. 56(e)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

If the parties assert different characterizations of the facts, the Court must view the record in the light most favorable to the non-moving party. *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000). "Although we construe all facts and make all reasonable inferences in the nonmoving party's favor, the moving party may succeed by showing an absence of evidence to support the non-moving party's claims." *Marnocha v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 986 F.3d 711, 718 (7th Cir. 2021) (quoting *Tyburski v. City of Chicago*, 964 F.3d 590, 597 (7th Cir. 2020)).

## ANALYSIS

In Counts I and III of the Amended Complaint, the Estate asserts Fourth Amendment excessive force claims against Mattioli and the City of Milwaukee under 42 U.S.C. §1983 and *Monell v. Department of Social Services*, 346 U.S. 658 (1978). (ECF No. 23 ¶¶65–83, 94–99.) Both claims require proof that Mattioli acted "under color of law" when he used force to restrain Acevedo during their altercation in Mattioli's home. *See Schertz v. Waupaca Cnty.*, 875 F.2d 578, 581 (7th Cir. 1989). Because the undisputed facts confirm that Mattioli was acting in his private capacity and not under color of state law when he used force against Acevedo, the Estate's federal claims fail as a matter of law.

An individual acts "under color of state law" for purposes of Section 1983 when he or she engages in misconduct while exercising power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988). The record confirms that, at the time of the incident, Mattioli was both employed as a Milwaukee police officer, (ECF No. 72 at 2 ¶3; ECF No. 85 ¶¶3–4), and off duty, (ECF No. 72 at 2 ¶7). Neither fact is dispositive. The Seventh Circuit has confirmed that a defendant's "mere status as a policeman" does not necessarily render his actions under color of law. *See Gibson v. City of Chicago*, 910 F.2d 1510, 1516 (7th Cir. 1990). Similarly, a defendant need not have been "actively assigned" or on duty to perform an official action under color of law. *Pickrel v. City of Springfield*, 45 F.3d 1115, 1118 (7th Cir. 1995); *see also Gibson*, 910 F.2d at 1516 n.10. Whether a defendant was acting under color of law instead depends on the nature and context of the specific acts undertaken. *Pickrel*, 45 F.3d at 1118. The defendant must undertake those actions pursuant to "the cloth of state authority." *Hughes v. Meyer*, 880 F.2d 967, 971 (7th Cir. 1989). In other words, he or she must invoke or affirmatively exercise state authority to facilitate or enable the alleged unconstitutional misconduct. *See DiDonato v. Panatera*, 24 F.4th 1156, 1161–62 (7th Cir. 2022). If the state employee does not invoke state authority to facilitate or enable misconduct, there can be no constitutional claim under Section 1983. *See id.*

Analyzing whether a state employee defendant acted under color of law is thus inherently fact-bound, but the Seventh Circuit has laid out several clear lines underpinning the analysis. In *First Midwest Bank, Guardian of Estate of LaPorta v. City of Chicago*, 988 F.3d 978 (7th Cir. 2021), the Seventh Circuit addressed similar claims against an off-duty police officer who engaged in violent conduct against a friend while at home after a night of drinking. In *LaPorta*, the defendant-officer got into a drunken altercation in his own home with his friend after a dispute involving the officer hitting his dog. *Id.* at 983. When the plaintiff yelled for him to stop and announced he was leaving, the officer shot him in the head. *Id.* Following a jury verdict in the plaintiff's favor, the Seventh Circuit vacated the judgment and remanded the case with instructions to enter judgment in favor of the defendants. *Id.* The Court of Appeals held that, based on the facts, the police officer was not acting under color of law when he shot the plaintiff. *Id.* at 987. The Court explained that because the defendant officer's actions were "wholly unconnected to his duties" as an officer and were "those of a private citizen in the course of a purely private social interaction," the defendant was entitled to judgment as a matter of law. *Id.*

In *DiDonato*, the Seventh Circuit affirmed the dismissal of constitutional claims against an off-duty paramedic, who was accused of sexually assaulting a young woman who had a medical emergency at his home. 24 F.4th at 1158. The plaintiff alleged that she had slipped, fallen, and injured her head in the bathtub of the paramedic's home. *Id.* at 1158. The defendant paramedic rinsed the blood from her head, wrapped it in a towel, and then proceeded to sexually assault her. *Id.* The Court of Appeals affirmed the district court's dismissal of the plaintiff's Fourteenth Amendment Due Process claims, concluding that the plaintiff's allegations were insufficient to support a finding that the defendant acted under color of law. *Id.* at 1161. The Court explained that the defendant's state employment as a paramedic and the "overlap" between his job responsibilities and the misconduct alleged did not support a finding that he acted under color of law. *Id.* It noted that the allegations might expose him to state law negligence liability, but the complaint did not plausibly allege that defendant's actions or inactions were a misuse of any power his city employer had bestowed upon him. *Id.* Nor did the allegations suggest that his wrongdoing was made possible because he was "clothed" with authority by virtue of state law. *Id.* The Court further explained that allegations the paramedic was "on call" at the time did not matter because the alleged misconduct was not "facilitated" by any misuse of state power and did not involve the "invocation" of any state authority. *Id.* at 1162.

In contrast to *LaPorta* and *DiDonato*, the Seventh Circuit reversed a district court's dismissal of claims against an off-duty police officer on "color of law" grounds in *Pickrel*. *See* 45 F.3d at 1118. The plaintiff in *Pickrel* alleged that she was wrongfully arrested by an off-duty police officer who worked as a part-time private security guard at a McDonald's restaurant. *Id.* at 1117. According to the complaint, the defendant approached the plaintiff and her father and threatened to arrest them if they did not leave. *Id.* When they refused his instructions, he directed the plaintiff to stand up and announced that she was "under arrest." *Id.* When she did not immediately comply, he then used force to pull her from her booth, stand her up, throw her to the ground, and put her in handcuffs until on-duty police officers took her and her father into custody. *Id.* The Seventh Circuit rejected the district court's conclusion that dismissal was appropriate simply because the officer was off-duty. *Id.* at 1118. The Court of Appeals explained that a jury could find that the defendant acted under color of law given that he was wearing his police uniform (complete with badge and gun), had parked his squad car just outside (advertising his presence as a police officer), and had actually told her he was "arresting" her for resisting a peace officer. *Id.*

at 1118–19. These allegations were sufficient for the plaintiff to proceed with her constitutional claims past the pleading stage. *Id.* at 1119.

Based on these principles and precedents, the Estate's constitutional claims against Mattioli fail because the undisputed facts establish that he was not acting under color of law when he fought with and subdued Acevedo while off duty in his own home on the night and early morning of April 18 and April 19, 2020. Like the defendant in *LaPorta*, Mattioli's actions were "wholly unconnected to his duties" as an officer and were "those of a private citizen in the course of a purely private social interaction." 988 F.3d at 987. While the fight in *LaPorta* related to a dispute over the drunken mistreatment of a pet, and the disagreement here began with a drunken quarrel over a potential theft, in both cases, the defendants were off-duty officers acting as any private citizen might within his or her own home. Although Mattioli's conduct in physically subduing and restraining Acevedo might "overlap" with his duties as a police officer, *DiDonato* makes clear this is insufficient to show that Mattioli was acting under color of law. 24 F.4th at 1161 ("[T]he mere overlap between [] routine job responsibilities and the conduct [] complained of does not mean that [the official] acted under color of state law[.]"). Likewise, nothing in Mattioli's request that the responding officer handcuff Acevedo supports a finding that he was invoking state authority. At most, he was asking for help in turning over a previously violent person to the police. There is no evidence that Mattioli undertook any of his efforts "clothed" with any authority he had as a City of Milwaukee police officer. Nor has the Estate come forward with facts indicating that Mattioli invoked his authority as a police officer in combatting or holding Acevedo down until on-duty police officers arrived to take him into custody.

In response, the Estate points out that Mattioli was wearing a t-shirt with the Milwaukee Police Department logo during the altercation. (ECF No. 72 at 5 ¶¶24–26.) But the shirt was not department-issued. It was a memorial t-shirt recognizing a Milwaukee police officer who had been killed in the line of duty. (*Id.* at 5 ¶¶26–27.) Mattioli's wearing of such a t-shirt to bed in his own home cannot reasonably be understood to suggest that he was clothing himself with police authority when he was responded to Acevedo rummaging through his pants pockets. No record facts suggest that Mattioli used, or that anyone in the house would have understood, the shirt to be a demonstration that Mattioli was acting under color of law. This is a far cry from the full police uniform, including badge, gun and nearby squad car, that the Seventh Circuit held was enough, when presented in connection with the off-duty officer's announcement of an "arrest," to allow the

plaintiff in *Pickrell* to survive a motion to dismiss.  The Estate has had the chance to develop the record in discovery and has presented no evidence that Mattioli's wearing of this t-shirt would have reasonably given anyone the impression he was acting as a police officer in his altercation with Acevedo.

The Estate also points to the fact that Mattioli (truthfully) relayed that he was an off-duty police officer on the 911 call and confirmed this fact to the arresting officers when they arrived. According to the Estate, these facts show that Mattioli affirmatively invoked his authority because "[r]esponding officers deferred to Mattioli's assertion of police authority rather than treating him as a private actor."  (ECF No. 71 at 6–7.)  The record does not support this strained characterization.  Nothing in the 911 call or in the body cam footage of Mattioli's interactions with on-duty officers indicates any attempt by him to "invoke" or assert any police authority.  Rather, the evidence shows that, while Mattioli informed the dispatcher that he was a police officer, Peters told responding officers that Mattioli was a police officer, and, when asked, Mattioli confirmed that fact.  (ECF No. 61-5 at 3:02–3:45.)  Whether responding officers treated Mattioli differently upon that knowledge does not necessarily mean that Mattioli invoked his own police authority. The Estate also insists that Mattioli's identification as an off-duty officer is material because "[a] private citizen never identifies themselves as a police officer."  (ECF No. 86 at 4.)  But police officers "are also private citizens," *see Lindke v. Freed*, 601 U.S. 187, 196 (2024), and, as already explained, a defendant's status as a police officer is insufficient to establish that a person acted under color of law, *Gibson*, 910 F.3d at 1516.  That Mattioli found his status as an off-duty police officer to be relevant background information when talking to the 911 dispatcher does not necessarily mean he invoked his police authority.

The Estate also maintains that, during the 911 call, Mattioli requested "back up," suggesting that he was taking the lead on an official police arrest.  (ECF No. 74 ¶3.)  But this "fact" is not supported by the evidence.  It is true that in answering the complaint, Mattioli admitted, "upon information and belief," that other officers responded to what *the Estate* characterized as "Mattioli's request for back up."  (ECF Nos. 23 ¶14 & 26 ¶14.)  But these are not the words that Mattioli actually used.  (ECF No. 73-1 at 86:24–87:3 (confirming during Mattioli's deposition that, during the 911 call, Mattioli said "I need help"); ECF No. 61-4 at 00:15–00:25 (recording of the 911 call).)  Nothing in the language Mattioli used would support a finding that he was clothing his actions in police authority or otherwise acting under color of law in connection with making

the 911 call, something that any private citizen engaged in a physical altercation with a house guest who refused to leave might do.

Finally, the Estate points to Mattioli's deposition testimony in which he admitted that while fighting with and detaining Acevedo, he went over in his mind the multiple crimes, including physical assault, robbery with the use of force, theft from a person, and property damage, he believed Acevedo had committed.  (ECF No. 91 at 9 ¶33.)  Mattioli's *internal* thoughts are not evidence that he clothed his actions with or invoked any state authority.  As *DiDonato* makes clear, it is a defendant's affirmative statements and actions expressing the use of state power that are central to the color of law analysis.  *See* 24 F.4th at 1162.

In the end, none of the facts cited by the Estate, whether viewed individually or together, are sufficient for a reasonable jury to find that Mattioli acted under color of law in fighting with and restraining Acevedo.  Accordingly, the Estate's federal claims against Mattioli and the City fail as a matter of law.  Given the dismissal of the federal law claims, the Court will relinquish jurisdiction over the Estate's remaining state law claims.  *See Davis v. Cook Cnty.*, 534 F.3d 650, 654 (7th Cir. 2008).  The Court also notes that the Estate may have undercut its ability to pursue its state law claims by failing to follow state law notice requirements.  (*See* ECF No. 72 ¶13; ECF No. 52 at 15–16; ECF No. 64 at 25); *see also* Wis. Stat. §893.80; *Estate of Swayzer v. Milwaukee Cnty.*, No. 16-cv-1703-bhl, 2022 WL 656884, at *21–*22 (E.D. Wis. Mar. 4, 2022).  The Court will not delve into this technical state law issue, however, and will instead leave it for the state courts to address, if necessary.[3]

---

[3] The Court must dispose of three remaining motions: the City's unopposed motion for leave to file a late reply, (ECF No. 88), and two pending motions in limine, (ECF Nos. 66 & 94).  The motion for leave to file a reply will be granted, while the motions in limine will be denied as moot.

**CONCLUSION**

For the reasons stated above,

**IT IS HEREBY ORDERED** that Defendant Mattioli's Motion for Summary Judgment, ECF No. 51, is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Partial Summary Judgment, ECF No. 55, is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant City of Milwaukee's Motion for Summary Judgment, ECF No. 59, is **GRANTED**.

**IT IS FURTHER ORDERED** that the two Motions in Limine, ECF Nos. 66 & 94, are **DENIED as moot**.

**IT IS FURTHER ORDERED** that Defendant City of Milwaukee's Expedited Motion for Leave to File a Reply Brief, ECF No. 88, is **GRANTED**.

Dated at Milwaukee, Wisconsin on March 6, 2026.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

JOSE ACEVEDO as Special Administrator
of the Estate of Joel Acevedo,

        Plaintiff,

        v.

MICHAEL A MATTIOLI,
and the CITY OF MILWAUKEE,

        Defendants.

**JUDGMENT IN A CIVIL CASE**

Case No. 23-cv-0489-bhl

---

☐    **Jury Verdict.**  This action came before the Court for a trial by jury.  The issues have been tried and the jury has rendered its verdict

☒    **Decision by Court.**  This action came before the Court for consideration.  The Court has decided the issues and rendered a decision.

    **IT IS HEREBY ORDERED AND ADJUDGED** that the case is dismissed, and Plaintiff recover nothing.


    Dated at Milwaukee, Wisconsin on March 6, 2026.


                                LINDA M. KLEMM
                                Clerk of Court

                                s/ *Julie D.*
                                (By) Deputy Clerk

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

JOSE ACEVEDO as Special Administrator
of the Estate of Joel Acevedo,

              Plaintiff,

                                     Case No. 23-cv-0489-bhl

    v.

MICHAEL A MATTIOLI,
and the CITY OF MILWAUKEE,[1]

              Defendants.

---

**AMENDED ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

---

This case arises out of the death of Joel Acevedo following a drunken altercation at the home of off-duty Milwaukee Police Officer Michael Mattioli. On the night in question, Acevedo was among a group of friends that Mattioli invited over for drinks and a bonfire. After the men drank heavily and fell asleep in different rooms of the house, Mattioli awoke to find Acevedo in his bedroom rummaging through his pants. Mattioli accused Acevedo of theft and told him to leave, leading to a physical struggle that ended with Mattioli on top of Acevedo and, aided by another friend, holding him down. Acevedo continued to resist even as Mattioli called 911. By the time responding officers arrived, Acevedo did not appear to be breathing and, despite efforts to resuscitate him, he was declared legally brain dead several days later. The administrator of Acevedo's estate (the Estate) now seeks to hold Mattioli and the City of Milwaukee (the City) liable for Acevedo's death under a number of state law tort theories and for federal constitutional violations.

The parties have filed competing motions for summary judgment. Based on the undisputed facts, the Estate's federal constitutional claims fail as a matter of law. The record confirms that Mattioli was acting as a private citizen in connection with the incident, and not "under color of

---

[1] Defendants Robert Roach and Alfonso Morales were dismissed by stipulation on July 24, 2025. (ECF Nos. 5 & 50.)

law," precluding any alleged constitutional violation. The Court will therefore dismiss the Estate's federal claims and relinquish jurisdiction over its remaining state law claims.

## FACTUAL BACKGROUND[2]

At the time of the events in question, Acevedo was an adult resident of the State of Wisconsin. (ECF No. 91 at 1 ¶1.) He was an acquaintance of Mattioli, an adult resident of the State of Wisconsin and, at the relevant time, a member of the Milwaukee Police Department. (ECF No. 72 at 2 ¶3; ECF No. 85 ¶¶3–4.) The City is a municipal corporation with its principal office located in Milwaukee, Wisconsin. (ECF No. 91 at 2 ¶4.)

On April 18, 2020, Mattioli hosted a bonfire at his home that was attended by Acevedo and two other friends, Christopher Peters and Andrew Janowski. (*Id.* at 3 ¶8.) At the time of the party, Mattioli was *not* on duty. (ECF No. 72 at 2 ¶7; ECF No. 91 at 26 ¶56.) The four men spent the night drinking alcohol around a bonfire until it got too cold, at which point they went inside. (ECF No. 91 at 3 ¶¶8–9.) Because they had been drinking, the guests stayed the night in various rooms around Mattioli's home. (*Id.* at 4 ¶13.) Mattioli slept in his bedroom on the second floor. (*Id.* at 4 ¶14.) Janowski went to sleep on a couch in the living room on the main level of the house. (*Id.*) Peters went to sleep in the basement of the house. (*Id.*) It is unclear where Acevedo was or if he ever went to sleep.

In the early morning hours of April 19, 2020, Mattioli awoke to see Acevedo rummaging through his pants pockets. (*Id.* at 4 ¶15.) Mattioli concedes that both he and Acevedo were still intoxicated. (ECF No. 72 at 10 ¶51; ECF No. 91 at 28 ¶61.) When Mattioli asked Acevedo why he was stealing from him, Acevedo became loud, defensive, and angry. (ECF No. 72 at 6 ¶31.) He denied he was stealing anything and then began taking things out of his own pockets and throwing them on Mattioli's bed. (*Id.*) Mattioli got out of bed and told Acevedo to leave. (ECF No. 72 at 6 ¶33.) Acevedo left the room and began walking downstairs while Mattioli followed, continuing to insist that Acevedo leave. (*Id.* at 6 ¶¶33–34; ECF No. 91 at 5 ¶19.)

The noise and skirmishing woke both Janowski and Peters. (ECF No. 72 at 7 ¶¶35–36.) Janowski stood up from the couch but did not immediately intervene. (*Id.* at 7 ¶35.) Peters came upstairs from the basement. (*Id.* at 7 ¶36.) All witnesses confirm that Mattioli and Acevedo were

---

[2] This background is derived primarily from the parties' Proposed Findings of Facts. (ECF Nos. 72, 74, 84, 85, 90, & 91.) Additional details are derived from responding officers' body camera footage, (ECF No. 61-5), which provide objective confirmation of the circumstances, *see Lopez v. Sheriff of Cook Cnty.*, 993 F.3d 981, 985 (7th Cir. 2021).

screaming at each other, with Mattioli accusing Acevedo of stealing and telling him to leave, and Acevedo refusing to go. (*Id.* at 7 ¶37.)

Mattioli ultimately threatened to call the police if Acevedo did not leave. (*Id.* at 7 ¶38.) Acevedo responded by shoving Mattioli in the chest, causing him to take a step backward. (*Id.* at 7 ¶40; ECF No. 91 at 5 ¶26.) Peters also began yelling, and Acevedo responded by punching him in the face, causing him to fall back into the adjoining kitchen. (ECF No. 72 at 8 ¶41; ECF No. 91 at 8 ¶¶27–28.) Acevedo also lost his balance and fell to the ground. (ECF No. 72 at 8 ¶¶41–42; ECF No. 91 at 8 ¶30.) When Acevedo tried to get up, Mattioli got on top of him and used his body weight to keep Acevedo down. (ECF No. 72 at 8 ¶43; ECF No. 91 at 8–9 ¶32.) With everyone now in the kitchen, Janowski joined the fight. (ECF No. 72 at 8 ¶45; ECF No. 91 at 9–10 ¶¶34–35.)

Eventually, Acevedo lay face-down on his stomach with Mattioli on top of him, straddling Acevedo's back with his knees on the ground. (ECF No. 72 at 8–9 ¶46; ECF No. 91 at 14 ¶40.) In holding Acevedo down, Mattioli was positioned with his upper body on top of Acevedo's upper body and his right arm under Acevedo's chin or neck. (ECF No. 91 at 15 ¶42.) The parties dispute whether Mattioli was choking him. (*Id.* at 50 ¶38, 32–34 ¶¶69–71.) Janowski lay across Acevedo's legs to further restrain him. (*Id.* at 15 ¶41.) Despite these efforts, Acevedo continued to try to push off the ground, but each time, Mattioli pushed him back down. (*Id.* at 15 ¶43.)

At 7:29 a.m., Mattioli called 911, telling the dispatcher, "I need help." (*Id.* at 11 ¶36; ECF No. 90 at 7 ¶36; ECF No. 72 at 10 ¶49; ECF No. 61-4 at 00:15–00:25.) He also accurately identified himself as an off-duty police officer. (ECF No. 91 at 11 ¶36; ECF No. 90 at 7 ¶36; ECF No. 72 at 10 ¶49; ECF No. 61-4 at 00:15–00:25.) During the call, Acevedo knocked the phone out of Mattioli's hand, and Peters picked up the phone to inform dispatchers that Acevedo was attacking them and urged dispatchers to send someone quickly. (ECF No. 91 at 12 ¶38.) Acevedo can be heard on the 911 call saying "Let me go. I want to go home." (ECF No. 72 at 10 ¶50; ECF No. 91 at 24 ¶53.) According to Peters and Mattioli, Acevedo continued to resist throughout the 911 call, and both believed he posed a danger to the individuals in the house. (ECF No. 91 at 12–13 ¶¶38–39.) When the call ended, Peters went outside to wait for officers to arrive. (ECF No. 72 at 13 ¶63.)

Around 7:38 a.m., Milwaukee Police Officers Robert Roach and Mark Sheremeta arrived. (ECF No. 91 at 21 ¶49; ECF No. 72 at 13 ¶64.) Peters met Roach at the sidewalk and reported

that Acevedo had been subdued and was inside the house.  (ECF No. 61-5 at 2:38–3:02.)  He then escorted the officers to Mattioli's side door, which led into the kitchen.  (*Id.* at 3:02–3:34.)  During the walk to the house, Peters informed Roach that Mattioli was a police officer.  (*Id.*)  Upon entering, Roach saw Mattioli holding Acevedo down, and Mattioli told him to handcuff Acevedo.  (*Id.* at 3:34–3:44.)  Roach asked which of them was the police officer.  (*Id.* at 3:44–3:47.)  Mattioli responded that he was the officer, after which Roach asked if Acevedo was breathing, and Mattioli said, "I don't know."  (*Id.* at 3:47–3:51.)  Roach then moved closer, indicating he was "making sure [Mattioli] did not have his arm around [Acevedo's] neck," and Mattioli said "oh, yeah."  (*Id.* at 3:51–3:57.)  By that time, Acevedo was not moving.  (*Id.*; ECF No. 91 at 17 ¶46; ECF No. 80-1 at 100:2–9, 104:24–105:9.)

Mattioli moved to sit on Acevedo's back and hold his hands behind him.  (ECF No. 61-5 at 3:55–4:02.)  Roach tapped Acevedo's arm and said "hello," and when Acevedo did not respond, Roach told Mattioli to get up several times, finally saying "Officer, get up."  (*Id.* at 3:58–4:05.)  Mattioli and Janowski got off Acevedo and stepped back, Roach checked Acevedo for a pulse but did not find one, and the officers then rolled Acevedo onto his back to start cardio-pulmonary resuscitation (CPR).  (ECF No. 91 at 22 ¶51; ECF No. 72 at 14 ¶70; ECF No. 61-5 at 4:05–4:58, 6:20–7:48.)  CPR continued until the emergency medical technicians (EMTs) arrived.  (ECF No. 72 at 14 ¶71.)  At 8:01 a.m., the EMTs detected a pulse; Acevedo was then transported to a hospital, but he never regained consciousness.  (*Id.* at 15 ¶¶72–73.)  On April 25, 2020, a week after the incident, Acevedo was pronounced brain dead.  (*Id.* at 15 ¶76.)

## LEGAL STANDARD

Summary judgment is appropriate if the record shows there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The Court must determine whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  A fact is "material" if, under the governing law, it could influence the outcome of the lawsuit.  *Id.* at 248; *Contreras v. City of Chicago*, 119 F.3d 1286, 1291–92 (7th Cir. 1997).  A dispute over a material fact is "genuine"

only if a reasonable trier of fact could find in favor of the non-moving party on the evidence presented. *Liberty Lobby*, 477 U.S. at 248.

The moving party bears the initial burden of proving the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. Upon such a showing, the burden shifts to the opposing party to "make a showing sufficient to establish the existence of an element essential to that party's case." *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013) (quoting *Celotex*, 477 U.S. at 322). This burden is not onerous, but the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party "must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Id.* at 587 (quoting Fed. R. Civ. P. 56(e)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

If the parties assert different characterizations of the facts, the Court must view the record in the light most favorable to the non-moving party. *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000). "Although we construe all facts and make all reasonable inferences in the nonmoving party's favor, the moving party may succeed by showing an absence of evidence to support the non-moving party's claims." *Marnocha v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 986 F.3d 711, 718 (7th Cir. 2021) (quoting *Tyburski v. City of Chicago*, 964 F.3d 590, 597 (7th Cir. 2020)).

**ANALYSIS**

In Counts I and III of the Amended Complaint, the Estate asserts Fourth Amendment excessive force claims against Mattioli and the City of Milwaukee under 42 U.S.C. §1983 and *Monell v. Department of Social Services*, 346 U.S. 658 (1978). (ECF No. 23 ¶¶65–83, 94–99.) Both claims require proof that Mattioli acted "under color of law" when he used force to restrain Acevedo during their altercation in Mattioli's home. *See Schertz v. Waupaca Cnty.*, 875 F.2d 578, 581 (7th Cir. 1989). Because the undisputed facts confirm that Mattioli was acting in his private capacity and not under color of state law when he used force against Acevedo, the Estate's federal claims fail as a matter of law.

An individual acts "under color of state law" for purposes of Section 1983 when he or she engages in misconduct while exercising power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988). The record confirms that, at the time of the incident, Mattioli was both employed as a Milwaukee police officer, (ECF No. 72 at 2 ¶3; ECF No. 85 ¶¶3–4), and off duty, (ECF No. 72 at 2 ¶7). Neither fact is dispositive. The Seventh Circuit has confirmed that a defendant's "mere status as a policeman" does not necessarily render his actions under color of law. *See Gibson v. City of Chicago*, 910 F.2d 1510, 1516 (7th Cir. 1990). Similarly, a defendant need not have been "actively assigned" or on duty to perform an official action under color of law. *Pickrel v. City of Springfield*, 45 F.3d 1115, 1118 (7th Cir. 1995); *see also Gibson*, 910 F.2d at 1516 n.10. Whether a defendant was acting under color of law instead depends on the nature and context of the specific acts undertaken. *Pickrel*, 45 F.3d at 1118. The defendant must undertake those actions pursuant to "the cloth of state authority." *Hughes v. Meyer*, 880 F.2d 967, 971 (7th Cir. 1989). In other words, he or she must invoke or affirmatively exercise state authority to facilitate or enable the alleged unconstitutional misconduct. *See DiDonato v. Panatera*, 24 F.4th 1156, 1161–62 (7th Cir. 2022). If the state employee does not invoke state authority to facilitate or enable misconduct, there can be no constitutional claim under Section 1983. *See id.*

Analyzing whether a state employee defendant acted under color of law is thus inherently fact-bound, but the Seventh Circuit has laid out several clear lines underpinning the analysis. In *First Midwest Bank, Guardian of Estate of LaPorta v. City of Chicago*, 988 F.3d 978 (7th Cir. 2021), the Seventh Circuit addressed similar claims against an off-duty police officer who engaged in violent conduct against a friend while at home after a night of drinking. In *LaPorta*, the defendant-officer got into a drunken altercation in his own home with his friend after a dispute involving the officer hitting his dog. *Id.* at 983. When the plaintiff yelled for him to stop and announced he was leaving, the officer shot him in the head. *Id.* Following a jury verdict in the plaintiff's favor, the Seventh Circuit vacated the judgment and remanded the case with instructions to enter judgment in favor of the defendants. *Id.* The Court of Appeals held that, based on the facts, the police officer was not acting under color of law when he shot the plaintiff. *Id.* at 987. The Court explained that because the defendant officer's actions were "wholly unconnected to his duties" as an officer and were "those of a private citizen in the course of a purely private social interaction," the defendant was entitled to judgment as a matter of law. *Id.*

In *DiDonato*, the Seventh Circuit affirmed the dismissal of constitutional claims against an off-duty paramedic, who was accused of sexually assaulting a young woman who had a medical emergency at his home. 24 F.4th at 1158. The plaintiff alleged that she had slipped, fallen, and injured her head in the bathtub of the paramedic's home. *Id.* at 1158. The defendant paramedic rinsed the blood from her head, wrapped it in a towel, and then proceeded to sexually assault her. *Id.* The Court of Appeals affirmed the district court's dismissal of the plaintiff's Fourteenth Amendment Due Process claims, concluding that the plaintiff's allegations were insufficient to support a finding that the defendant acted under color of law. *Id.* at 1161. The Court explained that the defendant's state employment as a paramedic and the "overlap" between his job responsibilities and the misconduct alleged did not support a finding that he acted under color of law. *Id.* It noted that the allegations might expose him to state law negligence liability, but the complaint did not plausibly allege that defendant's actions or inactions were a misuse of any power his city employer had bestowed upon him. *Id.* Nor did the allegations suggest that his wrongdoing was made possible because he was "clothed" with authority by virtue of state law. *Id.* The Court further explained that allegations the paramedic was "on call" at the time did not matter because the alleged misconduct was not "facilitated" by any misuse of state power and did not involve the "invocation" of any state authority. *Id.* at 1162.

In contrast to *LaPorta* and *DiDonato*, the Seventh Circuit reversed a district court's dismissal of claims against an off-duty police officer on "color of law" grounds in *Pickrel*. *See* 45 F.3d at 1118. The plaintiff in *Pickrel* alleged that she was wrongfully arrested by an off-duty police officer who worked as a part-time private security guard at a McDonald's restaurant. *Id.* at 1117. According to the complaint, the defendant approached the plaintiff and her father and threatened to arrest them if they did not leave. *Id.* When they refused his instructions, he directed the plaintiff to stand up and announced that she was "under arrest." *Id.* When she did not immediately comply, he then used force to pull her from her booth, stand her up, throw her to the ground, and put her in handcuffs until on-duty police officers took her and her father into custody. *Id.* The Seventh Circuit rejected the district court's conclusion that dismissal was appropriate simply because the officer was off-duty. *Id.* at 1118. The Court of Appeals explained that a jury could find that the defendant acted under color of law given that he was wearing his police uniform (complete with badge and gun), had parked his squad car just outside (advertising his presence as a police officer), and had actually told her he was "arresting" her for resisting a peace officer. *Id.*

at 1118–19.  These allegations were sufficient for the plaintiff to proceed with her constitutional claims past the pleading stage.  *Id.* at 1119.

Based on these principles and precedents, the Estate's constitutional claims against Mattioli fail because the undisputed facts establish that he was not acting under color of law when he fought with and subdued Acevedo while off duty in his own home on the night and early morning of April 18 and April 19, 2020.  Like the defendant in *LaPorta*, Mattioli's actions were "wholly unconnected to his duties" as an officer and were "those of a private citizen in the course of a purely private social interaction."  988 F.3d at 987.  While the fight in *LaPorta* related to a dispute over the drunken mistreatment of a pet, and the disagreement here began with a drunken quarrel over a potential theft, in both cases, the defendants were off-duty officers acting as any private citizen might within his or her own home.  Although Mattioli's conduct in physically subduing and restraining Acevedo might "overlap" with his duties as a police officer, *DiDonato* makes clear this is insufficient to show that Mattioli was acting under color of law.  24 F.4th at 1161 ("[T]he mere overlap between [] routine job responsibilities and the conduct [] complained of does not mean that [the official] acted under color of state law[.]").  Likewise, nothing in Mattioli's request that the responding officer handcuff Acevedo supports a finding that he was invoking state authority.  At most, he was asking for help in turning over a previously violent person to the police.  There is no evidence that Mattioli undertook any of his efforts "clothed" with any authority he had as a City of Milwaukee police officer.  Nor has the Estate come forward with facts indicating that Mattioli invoked his authority as a police officer in combatting or holding Acevedo down until on-duty police officers arrived to take him into custody.

In response, the Estate points out that Mattioli was wearing a t-shirt with the Milwaukee Police Department logo during the altercation. (ECF No. 72 at 5 ¶¶24–26.)  But the shirt was not department-issued.  It was a memorial t-shirt recognizing a Milwaukee police officer who had been killed in the line of duty. (*Id.* at 5 ¶¶26–27.)  Mattioli's wearing of such a t-shirt to bed in his own home cannot reasonably be understood to suggest that he was clothing himself with police authority when he was responded to Acevedo rummaging through his pants pockets.  No record facts suggest that Mattioli used, or that anyone in the house would have understood, the shirt to be a demonstration that Mattioli was acting under color of law.  This is a far cry from the full police uniform, including badge, gun and nearby squad car, that the Seventh Circuit held was enough, when presented in connection with the off-duty officer's announcement of an "arrest," to allow the

plaintiff in *Pickrell* to survive a motion to dismiss. The Estate has had the chance to develop the record in discovery and has presented no evidence that Mattioli's wearing of this t-shirt would have reasonably given anyone the impression he was acting as a police officer in his altercation with Acevedo.

The Estate also points to the fact that Mattioli (truthfully) relayed that he was an off-duty police officer on the 911 call and confirmed this fact to the arresting officers when they arrived. According to the Estate, these facts show that Mattioli affirmatively invoked his authority because "[r]esponding officers deferred to Mattioli's assertion of police authority rather than treating him as a private actor." (ECF No. 71 at 6–7.) The record does not support this strained characterization. Nothing in the 911 call or in the body cam footage of Mattioli's interactions with on-duty officers indicates any attempt by him to "invoke" or assert any police authority. Rather, the evidence shows that, while Mattioli informed the dispatcher that he was a police officer, Peters told responding officers that Mattioli was a police officer, and, when asked, Mattioli confirmed that fact. (ECF No. 61-5 at 3:02–3:45.) Whether responding officers treated Mattioli differently upon that knowledge does not necessarily mean that Mattioli invoked his own police authority. The Estate also insists that Mattioli's identification as an off-duty officer is material because "[a] private citizen never identifies themselves as a police officer." (ECF No. 86 at 4.) But police officers "are also private citizens," *see Lindke v. Freed*, 601 U.S. 187, 196 (2024), and, as already explained, a defendant's status as a police officer is insufficient to establish that a person acted under color of law, *Gibson*, 910 F.3d at 1516. That Mattioli found his status as an off-duty police officer to be relevant background information when talking to the 911 dispatcher does not necessarily mean he invoked his police authority.

The Estate also maintains that, during the 911 call, Mattioli requested "back up," suggesting that he was taking the lead on an official police arrest. (ECF No. 74 ¶3.) But this "fact" is not supported by the evidence. It is true that in answering the complaint, Mattioli admitted, "upon information and belief," that other officers responded to what *the Estate* characterized as "Mattioli's request for back up." (ECF Nos. 23 ¶14 & 26 ¶14.) But these are not the words that Mattioli actually used. (ECF No. 73-1 at 86:24–87:3 (confirming during Mattioli's deposition that, during the 911 call, Mattioli said "I need help"); ECF No. 61-4 at 00:15–00:25 (recording of the 911 call).) Nothing in the language Mattioli used would support a finding that he was clothing his actions in police authority or otherwise acting under color of law in connection with making

the 911 call, something that any private citizen engaged in a physical altercation with a house guest who refused to leave might do.

Finally, the Estate points to Mattioli's deposition testimony in which he admitted that while fighting with and detaining Acevedo, he went over in his mind the multiple crimes, including physical assault, robbery with the use of force, theft from a person, and property damage, he believed Acevedo had committed. (ECF No. 91 at 9 ¶33.) Mattioli's *internal* thoughts are not evidence that he clothed his actions with or invoked any state authority. As *DiDonato* makes clear, it is a defendant's affirmative statements and actions expressing the use of state power that are central to the color of law analysis. *See* 24 F.4th at 1162.[3]

In the end, none of the facts cited by the Estate, whether viewed individually or together, are sufficient for a reasonable jury to find that Mattioli acted under color of law in fighting with and restraining Acevedo. Accordingly, the Estate's federal claims against Mattioli and the City fail as a matter of law. Given the dismissal of the federal law claims, the Court will relinquish jurisdiction over the Estate's remaining state law claims. *See Davis v. Cook Cnty.*, 534 F.3d 650, 654 (7th Cir. 2008). The Court also notes that the Estate may have undercut its ability to pursue its state law claims by failing to follow state law notice requirements. (*See* ECF No. 72 ¶13; ECF No. 52 at 15–16; ECF No. 64 at 25); *see also* Wis. Stat. §893.80; *Estate of Swayzer v. Milwaukee Cnty.*, No. 16-cv-1703-bhl, 2022 WL 656884, at *21–*22 (E.D. Wis. Mar. 4, 2022). The Court will not delve into this technical state law issue, however, and will instead leave it for the state courts to address, if necessary.

---

[3] The Estate also points in passing to a *draft* Fire and Police Commission (FPC) charging document alleging a violation of FPC Department Rule 3 (Integrity), Section 3.03, which directs police officers to exercise the powers of arrest only when lawful, necessary, and proportionate. (ECF No. 71 at 4–5.) Contrary to the Estate's characterization, this document does not reflect "official" charges against Mattioli; it is a draft. (*Id.* at 5; ECF No. 84 ¶¶67–68 (citing ECF No. 73-2 (charges from June 15, 2020)); *see also* ECF No. 80-8 at 105:1–106:5 (explaining that the document issued on June 15, 2020 was a draft charging document); 109:17–110:23 (explaining that the FPC charges from July 10, 2020 were the official charges).) The record confirms the FPC did not ultimately charge Mattioli with making an arrest as a police officer or otherwise suggest he acted under color of law. (*See* ECF No. 84 ¶63; *see also* ECF No. 87-3 at 1.) And, in any event, an after-the-fact draft of potential charges does not alter the undisputed facts of the incident or retroactively imbue Mattioli's actions with police authority.

CONCLUSION[4]

For the reasons stated above,

**IT IS HEREBY ORDERED** that Defendant Mattioli's Motion for Summary Judgment, ECF No. 51, is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Partial Summary Judgment, ECF No. 55, is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant City of Milwaukee's Motion for Summary Judgment, ECF No. 59, is **GRANTED**.

**IT IS FURTHER ORDERED** that the two Motions in Limine, ECF Nos. 66 & 94, are **DENIED as moot**.

**IT IS FURTHER ORDERED** that Defendant City of Milwaukee's Expedited Motion for Leave to File a Reply Brief, ECF No. 88, is **GRANTED**.

Dated at Milwaukee, Wisconsin on March 16, 2026.

s/ <em>Brett H. Ludwig</em><br>
BRETT H. LUDWIG<br>
United States District Judge

---

[4] The Court must dispose of three remaining motions: the City's unopposed motion for leave to file a late reply, (ECF No. 88), and two pending motions in limine, (ECF Nos. 66 & 94). The motion for leave to file a reply will be granted, while the motions in limine will be denied as moot.