**No. 26-1555**

---

## UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

---

JOSE ACEVEDO, individually, and as a
Special Administrator of the
ESTATE OF JOEL ACEVEDO,

   *Plaintiff-Appellant,*

v.

MICHAEL MATTIOLI and
CITY OF MILWAUKEE, WISCONSIN,

   *Defendants-Appellees.*

---

On Appeal from the United States District Court
for the Eastern District of Wisconsin, No. 23-cv-00489
The Honorable Brett H. Ludwig, District Judge

---

## OPENING BRIEF AND REQUIRED SHORT APPENDIX
## FOR PLAINTIFF-APPELLANT

---

**The LaMarr Firm, PLLC**
B'Ivory LaMarr, Bar No. 1122469
5718 Westheimer Rd., Suite 1000
Houston, TX 77057
(800) 679-4600, ext. 700
blamarr@bivorylamarr.com

**Jacob Litigation, Inc.**
Devon M. Jacob, Pa. Bar No. 89182
P.O. Box 837
Mechanicsburg, PA 17055-0837
(717) 796-7733
djacob@jacoblitigation.com

**Ben Crump Law, PLLC**
Benjamin L. Crump, D.C. Bar No. 1552623
122 S. Calhoun Street
Tallahassee, FL 32301
(800) 959-1444
court@bencrump.com

*Attorneys for the Plaintiff-Appellant, Jose
Acevedo, individually, and as a Special
Administrator of the Estate of Joel Acevedo*

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 26 1555

Short Caption: Jose Acevedo v. Michael Mattioli, et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☑ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

JOSE ACEVEDO, individually, and as a Special Administrator of the ESTATE OF JOEL ACEVEDO

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

The LaMarr Firm, PLLC: Jacob Litigation, Inc.: and Ben Crump Law, PLLC

(3)  If the party, amicus or intervenor is a corporation:

i)    Identify all its parent corporations, if any; and

N/A

ii)   list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

N/A

(4)  Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)  Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ B'Ivory LaMarr                     Date: 7/2/2026

Attorney's Printed Name: B'Ivory LaMarr

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).     Yes ☑   No ☐

Address: 5718 Westheimer Rd., Suite 1000, Houston, TX 77057

Phone Number: (800) 679 4600, ext. 700                     Fax Number: N/A

E-Mail Address: blamarr@bivorylamarr.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 26 1555

Short Caption: Jose Acevedo v. Michael Mattioli, et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☑　**PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)　The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

JOSE ACEVEDO, individually, and as a Special Administrator of the ESTATE OF JOEL ACEVEDO

(2)　The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

The LaMarr Firm, PLLC: Jacob Litigation, Inc.: and Ben Crump Law, PLLC

(3)　If the party, amicus or intervenor is a corporation:

i)　　Identify all its parent corporations, if any; and

N/A

ii)　　list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

N/A

(4)　Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)　Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Devon M. Jacob　　　　Date: 7/2/2026

Attorney's Printed Name: Devon M. Jacob

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).　Yes ☐　No ☑

Address: P.O. Box 837, Mechanicsburg, PA 17055 0837

Phone Number: (717) 796 7733　　　　Fax Number: N/A

E-Mail Address: djacob@jacoblitigation.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: <u>26 1555</u>

Short Caption: <u>Jose Acevedo v. Michael Mattioli, et al.</u>

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

> [✓]    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
<u>JOSE ACEVEDO, individually, and as a Special Administrator of the ESTATE OF JOEL ACEVEDO</u>

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
<u>The LaMarr Firm, PLLC; Jacob Litigation, Inc.; and Ben Crump Law, PLLC</u>

(3)    If the party, amicus or intervenor is a corporation:

    i)      Identify all its parent corporations, if any; and

         N/A

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

         N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

---

Attorney's Signature: <u>/s/ Benjamin L. Crump</u>      Date: <u>7/2/2026</u>

Attorney's Printed Name: <u>Benjamin L. Crump</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes [ ]   No [✓]

Address: <u>122 S. Calhoun Street, Tallahassee, FL 32301</u>

Phone Number: <u>(800) 959 1444</u>      Fax Number: <u>N/A</u>

E-Mail Address: <u>court@bencrump.com</u>

rev. 12/19 AK

**TABLE OF CONTENTS**

JURISDICTIONAL STATEMENT ................................................................................... 1

STATEMENT CONCERNING ORAL ARGUMENT .................................................... 1

STATEMENT OF THE ISSUES .................................................................................... 2

STATEMENT OF THE CASE......................................................................................... 3

    A.    Factual Background........................................................................................... 3

    B.    Procedural History............................................................................................ 5

SUMMARY OF THE ARGUMENT .............................................................................. 6

STANDARD OF REVIEW .............................................................................................. 8

ARGUMENT...................................................................................................................... 9

    I.    The Undisputed Material Facts Establish That Mattioli Acted Under Color of State Law; At Minimum, a Reasonable Jury Could So Find. ........................................................ 9

      A.    The Record Contains Substantial Evidence That Mattioli Invoked Police Authority During the Incident. ............................................................................. 10

        a.    Mattioli Expressly Invoked Police Authority by Identifying Himself as an Officer During the 911 Call................................................................................. 11

        b.    Mattioli Exercised Police Authority by Physically Restraining Acevedo and Directing Responding Police Officer to Handcuff Him........................................ 12

        c.    The Law Does Not Require a Verbal Announcement for an Arrest to Occur. .............. 12

        d.    Mattioli's Own Arrest-Related Description of His Conduct Supports the Color of Law Inference. ...................................................................................... 13

        e.    Mattioli Acted in Response to Perceived Crimes Committed in His Presence. ......... 14

        f.    MPD Policy and Mattioli's Admissions Support a Reasonable Inference of Off-Duty Police Action.................................................................................... 15

        g.    The FPC Materials are Relevant Circumstantial Evidence of Police Conduct. ......... 16

        h.    Taken Together, the Undisputed Material Facts Establish Color of Law as a Matter of Law; At Minimum, They Permit a Reasonable Jury to Find Color of Law. ...................... 18

      B.    The District Court Misapplied the Governing Off-Duty Police Officer Precedent. ...... 19

      C.    At Minimum, Genuine Disputes of Material Fact Precluded Summary Judgment ....... 24

    II.    The Remaining Summary Judgment Grounds Should Be Addressed on Remand............ 24

CONCLUSION.................................................................................................................. 25

CERTIFICATE OF COMPLIANCE.............................................................................. 25

REQUIRED SHORT APPENDIX .................................................................................. 27

## TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). .................................................... 9

*Barnes v. City of Centralia,* 943 F.3d 826 (7th Cir. 2019). ...................................... 10, 19

*Booker v. Ward,* 905 F. Supp. 483 (N.D. Ill. 1995), *aff'd,* 94 F.3d 1052 (7th Cir. 1996)....... 12, 13

*Coles v. City of Chicago*, 361 F. Supp. 2d 740 (N.D. Ill. 2005).................................... 20

*DiDonato v. Panatera,* 24 F.4th 1156 (7th Cir. 2022)........................................ 7, 20, 22

*Ellison v. United States Postal Serv.,* 84 F.4th 750 (7th Cir. 2023) ................................ 8

*Estate of Sims ex rel. Sims v. County of Bureau*, 506 F.3d 509 (7th Cir. 2007). ........................ 10

*First Midwest Bank, Guardian of Estate of LaPorta v. City of Chicago,* 988 F.3d 978 (7th Cir. 2021)................................................................................................ 7, 23

*Gibson v. City of Chicago,* 910 F.2d 1510 (7th Cir. 1990)................................... 7, 19, 20, 21, 22

*Honaker v. Smith*, 256 F.3d 477 (7th Cir. 2001)...................................................... 10, 19

*Lindke v. Freed*, 601 U.S. 187 (2024)...................................................................... 10

*Lopez v. Vanderwater,* 620 F.2d 1229 (7th Cir. 1980) ................................................ 11

*Lyons v. Adams,* 257 F. Supp. 2d 1125 (N.D. Ill. 2003). ............................................ 20

*Maynard v. City of Chicago,* 755 F. Supp. 3d 1067 (N.D. Ill. 2024). .......................................... 20

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). .................................................. 5, 6, 23, 24

*Payne v. Pauley,* 337 F.3d 767 (7th Cir. 2003)........................................................ 8

*Pickrel v. City of Springfield, Ill.,* 45 F.3d 1115 (7th Cir. 1995) .............................. 7, 8, 10, 20, 21

*Wayland v. OSF Healthcare Sys.,* 94 F.4th 654 (7th Cir. 2024)...................................... 9

*Wilson v. Price,* 624 F.3d 389 (7th Cir. 2010) ................................................... 10, 11, 19

**Statutes**

28 U.S.C. § 1291............................................................................................... 1

28 U.S.C. § 1331............................................................................................... 1

28 U.S.C. § 1367(a) .......................................................................................... 1

42 U.S.C. § 1983............................................................................................... 1, 5, 10

**Rules**

FED. R. APP. P. 4(a)(1)(A) .................................................................................. 1

FED. R. CIV. P. 56(a)........................................................................................... 8

**JURISDICTIONAL STATEMENT**

The United States District Court for the Eastern District of Wisconsin had subject-matter jurisdiction under 28 U.S.C. § 1331 because Plaintiff asserted federal claims pursuant to 42 U.S.C. § 1983 alleging violations of the Fourth and Fourteenth Amendments. The district court also exercised supplemental jurisdiction over Plaintiff's related state law claims pursuant to 28 U.S.C. § 1367(a).

On March 6, 2026, the district court entered an Order on Cross Motions for Summary Judgment granting Defendants' motions for summary judgment, denying Plaintiff's motion for partial summary judgment, dismissing Plaintiff's federal claims, and relinquishing jurisdiction over the remaining state-law claims. A-001–A-011. That same day, the clerk entered judgment dismissing the case and ordering that Plaintiff recover nothing. A-012. On March 16, 2026, the district court entered an Amended Order on Cross Motions for Summary Judgment. A-013–A-023.

Plaintiff filed a Notice of Appeal on March 22, 2026, identifying the Order on Cross Motions for Summary Judgment, Doc. 97; Final Judgment, Doc. 98; and Amended Order on Cross Motions for Summary Judgment, Doc. 99. ECF No. 100. The Notice of Appeal was timely pursuant to FED. R. APP. P. 4(a)(1)(A).

This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

**STATEMENT CONCERNING ORAL ARGUMENT**

Plaintiff–Appellant respectfully requests oral argument. This appeal presents important questions concerning the "color of state law" requirement pursuant to 42 U.S.C. § 1983, including when color of law may be established as a matter of law and when it must be submitted to a jury. The record establishes, or at minimum permits a reasonable jury to find, that Michael Mattioli

1

acted under color of law based on the totality of the circumstances. Mattioli remained a sworn MPD officer; Acevedo and the other guests knew he was a police officer; and Mattioli identified himself as an off-duty police officer during the 911 call. When the dispute concerned alleged theft from Mattioli, Mattioli tried to make Acevedo leave. After Acevedo allegedly punched Christopher Peters, however, Mattioli changed course: he restrained Acevedo, held him for responding police officers, held Acevedo's hands behind him in a handcuffing position, and directed an arriving officer to handcuff him. Mattioli admitted that his off-duty authority was governed by MPD SOP 220.30 and that he intended to act pursuant to his duties under that SOP. He also admitted at deposition that, after the incident, he said he was arresting Acevedo for his conduct. The FPC investigated the incident as a police disciplinary matter.

Because resolution of these issues requires an analysis of Seventh Circuit precedent governing the conduct of off-duty police officers in addition to how evidence should be evaluated for purposes of summary judgment, it is believed that oral argument would assist the Court in resolving this appeal.

## STATEMENT OF THE ISSUES

1.     Whether the district court erred in denying Plaintiff's motion for partial summary judgment on color of law where the undisputed material facts establish that Mattioli possessed police authority and invoked or purported to exercise it: he remained a sworn MPD officer; Acevedo and the other guests knew he was a police officer; he identified himself as an off-duty police officer during the 911 call; he initially tried to make Acevedo leave when the dispute concerned alleged theft from Mattioli; after Acevedo allegedly punched Christopher Peters, Mattioli changed course, restrained Acevedo, held him for responding police, held Acevedo's hands behind him in a handcuffing position, and directed an arriving officer to handcuff him; his

off-duty authority was governed by MPD SOP 220.30; he admitted at deposition that, after the incident, he said he was arresting Acevedo for his conduct; and the FPC investigated the incident as a police disciplinary matter.

2.    Alternatively, whether the district court improperly resolved disputed facts and competing inferences in favor of Defendants, rather than construing the evidence in the light most favorable to Plaintiff as required at summary judgment, in determining that Mattioli's conduct constituted purely private action rather than the invocation or purported exercise of police authority.

## STATEMENT OF THE CASE

### A. Factual Background

At first, when the dispute concerned alleged theft from Mattioli, Mattioli tried to make Acevedo leave the house. Mattioli testified that he told Acevedo, "You need to leave right now," and later continued telling him to "get out" and "leave." SA-004. Mattioli threatened to call police if Acevedo did not leave. A-015.

After Acevedo allegedly punched Christopher Peters, however, Mattioli changed course: he got on top of Acevedo, used his body weight to keep him on the ground, and restrained him until responding police arrived. A-015; SA-005–SA-006; SA-018–SA-019. By that point, Mattioli testified that he was thinking in terms of crimes he believed Acevedo had committed, including assaultive conduct, robbery with use of force, theft from person, and property damage. SA-006. Mattioli admitted that he physically restrained Acevedo until police officers arrived. SA-018–SA-019.

During a 911 call, Mattioli said, "I need help," and identified himself as an off-duty police officer. A-015; ECF No. 61-4 at 00:15–00:25. During the call, Acevedo could be heard saying,

3

"Let me go. I want to go home." A-015; ECF No. 61-4. Milwaukee Police Officers Robert Roach and Mark Sheremeta responded and arrived at Mattioli's residence shortly thereafter. A-015. Upon entering the home, Officer Roach observed Mattioli restraining Acevedo in the kitchen. A-015– A-016. Acevedo was positioned face down on the floor while Mattioli applied his body weight to Acevedo's back and upper body. A-015. Andrew Janowski assisted in restraining Acevedo's legs. A-015. The district court described Mattioli as positioned with his upper body on top of Acevedo's upper body and his right arm under Acevedo's chin or neck. A-015.

When Officer Roach entered the residence, Mattioli told him to handcuff Acevedo. A-016; ECF No. 61-5 at 3:34–3:44. Mattioli then sat on Acevedo's back and held Acevedo's hands behind him in a handcuffing position. A-016; ECF No. 61-5 at 3:55–4:02. Roach told Mattioli to get up, checked Acevedo for a pulse, and officers began CPR. A-016; ECF No. 61-5 at 4:05–4:58, 6:20– 7:48. EMTs later detected a pulse, and Acevedo was transported to the hospital, but he never regained consciousness. A-016. He remained hospitalized for several days before being pronounced dead on April 25, 2020. A-016; SA-039. The Milwaukee County Medical Examiner determined that the cause of death was anoxic encephalopathy due to traumatic asphyxia and classified the manner of death as homicide. SA-039.

MPD SOP 220 is titled "Arrest Authority" and states that its purpose is to define the authority to make arrests and provide guidelines for effecting arrests, both with and without a warrant. SA-044. It defines "police action" to include investigation, arrest, attempted arrest, use of force, rendering aid, and assistance. SA-045. It also contains a section governing "Off-Duty Arrests and Aid." SA-048. Mattioli admitted in discovery that because he was off duty, his responsibility and "authority" would be dictated by MPD SOP 220.30, and he admitted that he

intended to act pursuant to his duties under that SOP. SA-022–SA-023. Mattioli also admitted at deposition that, after the incident, he said he was arresting Acevedo for his conduct. SA-008.

The FPC materials are also part of the record. The June 15 draft FPC charges used arrest-related language including that "[p]er PO Mattioli's own description, he was effecting an arrest on Mr. Acevedo." SA-073. The July 10 final FPC charges did not use the same arrest-rule language, but they referred charges against "POLICE OFFICER MICHAEL MATTIOLI," recited that Mattioli restrained Acevedo, called 911, and "held Acevedo until the police showed up," and referred the citizen complaint for FPC trial, fact finding, and determination of discipline. SA-077– SA-079.

### B. Procedural History

Plaintiff Jose Acevedo, individually and as Special Administrator of the Estate of Joel Acevedo, filed this action in the United States District Court for the Eastern District of Wisconsin pursuant to 42 U.S.C. § 1983, alleging that Defendant Mattioli used excessive force in violation of the Fourth Amendment. The operative complaint alleged that Defendant Officer Robert Roach failed to intervene to stop the use of excessive force and that Alfonso Morales in his official capacity as the Chief of Police and the City of Milwaukee were liable pursuant to *Monell v. Dep't of Soc. Servs*., 436 U.S. 658 (1978). Plaintiff additionally asserted several related state law claims, including assault and battery, intentional infliction of emotional distress, survival, and wrongful death. ECF No. 23. Officer Roach and Chief Morales were later dismissed by stipulation and are not parties to this appeal. A-013 n.1.

Following discovery, Mattioli moved for summary judgment on the merits of the excessive force claim, qualified immunity, causation, and the state-law claims; he expressly did not move for summary judgment on whether he acted under color of law. ECF No. 51; ECF No. 52 at 2, 6–

23. The City moved for summary judgment on color of law, *Monell* liability, scope of employment, and the state law claims. ECF No. 59; ECF No. 64 at 10–24. Plaintiff opposed both motions and moved for partial summary judgment asserting that Mattioli acted under color of law and within the scope of his employment. ECF No. 55; ECF No. 57 at 2–10; ECF Nos. 71, 78.

On March 6, 2026, the district court issued an Order on Cross Motions for Summary Judgment granting Defendants' motions for summary judgment, denying Plaintiff's motion for partial summary judgment, dismissing Plaintiff's federal claims, and relinquishing jurisdiction over the remaining state-law claims. A-001–A-011. That same day, the clerk entered judgment dismissing the case and ordering that Plaintiff recover nothing. A-012. On March 16, 2026, the district court issued an Amended Order on Cross Motions for Summary Judgment, which added a footnote addressing the FPC materials and otherwise reached the same disposition. A-013–A-023.

Plaintiff timely filed a Notice of Appeal on March 22, 2026, from the Order on Cross Motions for Summary Judgment, Doc. 97; Final Judgment, Doc. 98, and Amended Order on Cross Motions for Summary Judgment, Doc. 99. ECF No. 100.

## SUMMARY OF THE ARGUMENT

The district court erred in granting Defendants' motions for summary judgment and in denying Plaintiff's motion for partial summary judgment. The undisputed material facts establish that Mattioli acted under color of law. If this Court concludes, however, that those facts do not establish color of law as a matter of law, they at least support a reasonable inference that Mattioli invoked or purported to exercise police authority. Plaintiff is therefore entitled to reversal either because color of law was established as a matter of law or because any competing reasonable inference had to be resolved by a jury.

The encounter did not have to begin as police action. The material color-of-law facts establish, or at minimum permit a reasonable jury to find, that the incident became an arrest related detention when Mattioli stopped trying merely to make Acevedo leave and instead restrained him for responding police officers. At first, when the dispute concerned alleged theft from Mattioli, Mattioli tried to make Acevedo leave. After Acevedo allegedly punched Christopher Peters, however, Mattioli changed course: he restrained Acevedo, held him for responding police, identified himself as an off-duty police officer during the 911 call, held Acevedo's hands behind him in a handcuffing position, and directed an arriving officer to handcuff him. Mattioli admitted that his off-duty authority was governed by MPD SOP 220.30 and that he intended to act pursuant to his duties under that SOP. He also admitted at deposition that after the incident, he said he was arresting Acevedo for his conduct. The FPC investigation further treated the incident as a police disciplinary matter.

The district court treated those facts as insufficient by weighing them individually and discounting Plaintiff's inferences. That was error. The color of law inquiry turns on the nature of the specific acts performed and the totality of circumstances. A jury could view the same record differently from the district court and conclude that Mattioli was not merely a private citizen using force in his home, but an off-duty police officer invoking or purporting to exercise official authority.

The district court also misapplied the comparator cases. *LaPorta* and *DiDonato* involved private interactions without comparable evidence of arrest-related detention, police identification, handcuffing direction, and off-duty arrest policy. *Gibson* involved an officer formally stripped of police authority. *Pickrel* is the more useful comparator because it involved an off-duty officer in a

7

private setting who nevertheless engaged in arrest related conduct sufficient to support color of law. At minimum, this case presents a jury question under *Pickrel's* specific acts framework.

The FPC evidence does not independently decide the federal color of law question, but it is part of the same totality of circumstances. The June 15 draft charges used arrest related language. The July 10 final charges did not use the same arrest rule language, but still proceeded against "POLICE OFFICER MICHAEL MATTIOLI," recited that Mattioli restrained Acevedo, called 911, and "held Acevedo until the police showed up," and referred the citizen complaint for FPC trial, fact finding, and determination of discipline. Considered with the full color of law record, the FPC materials further support Plaintiff's position that Mattioli invoked or purported to exercise police authority. Because the record establishes color of law as a matter of law or, at minimum, permits a reasonable jury to find color of law, summary judgment should be reversed.

## STANDARD OF REVIEW

This Court reviews a district court's summary judgment decision *de novo*. *Ellison v. United States Postal Serv.*, 84 F.4th 750, 755 (7th Cir. 2023). Summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Because the parties filed cross-motions for summary judgment, this Court considers the motions one at a time. In reviewing the denial of Plaintiff's motion, the Court views the facts and draws reasonable inferences in Defendants' favor. In reviewing the grants of Defendants' motions, the Court views the facts and draws reasonable inferences in Plaintiff's favor. *Ellison,* 84 F.4th at 755.

"Summary judgment is not appropriate 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003)

(quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986)). The court must look therefore at the evidence as a jury might, construing the record in the light most favorable to the nonmovant and avoiding the temptation to decide which party's version of the facts is more likely true. *Id.* "A genuine dispute is present if a reasonable jury could return a verdict for the nonmoving party, and a fact is material if it might bear on the outcome of the case." *Wayland v. OSF Healthcare Sys.,* 94 F.4th 654, 657 (7th Cir. 2024).

## ARGUMENT

### I. The Undisputed Material Facts Establish That Mattioli Acted Under Color of State Law; At Minimum, a Reasonable Jury Could So Find.

Plaintiff's primary position is that the undisputed material facts establish color of law and that the district court should have granted Plaintiff's motion for partial summary judgment on that issue. The material facts show that Mattioli remained a sworn MPD officer; Acevedo and the other guests knew he was a police officer; Mattioli identified himself as an off-duty police officer during the 911 call; Mattioli initially tried to make Acevedo leave when the dispute concerned alleged theft from Mattioli and Acevedo's refusal to leave; after Acevedo allegedly punched Christopher Peters, Mattioli changed course, restrained Acevedo, and held him for responding police officers; Mattioli held Acevedo's hands behind him in a handcuffing position and directed an arriving officer to handcuff him; Mattioli's off-duty authority was governed by MPD SOP 220.30; Mattioli admitted at deposition that after the incident, he said he was arresting Acevedo for his conduct; and the FPC investigated the incident as a police disciplinary matter. Alternatively, when the record is viewed in Plaintiff's favor on Defendants' motions, those same facts at minimum permit a reasonable jury to find that Mattioli invoked or purported to exercise police authority.

9

**A.  The Record Contains Substantial Evidence That Mattioli Invoked Police Authority During the Incident.**

To establish liability under 42 U.S.C. § 1983, a plaintiff must show that the defendant acted "under color of" state law. "Action is taken under color of state law 'when it involves a misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Barnes v. City of Centralia,* 943 F.3d 826, 831 (7th Cir. 2019) (quoting *Wilson v. Price,* 624 F.3d 389, 392 (7th Cir. 2010) (quoting *Honaker v. Smith,* 256 F.3d 477, 484–85 (7th Cir. 2001))). "Whether a particular action was under color of state law depends 'largely on the nature of the specific acts the police officer performed, rather than on merely whether he was actively assigned at the moment to the performance of police duties.'" *Estate of Sims ex rel. Sims v. County of Bureau,* 506 F.3d 509, 516 (7th Cir. 2007) (quoting *Pickrel v. City of Springfield, Illinois,* 45 F.3d 1115, 1118 (7th Cir. 1995)).

The Supreme Court's decision in *Lindke v. Freed*, 601 U.S. 187 (2024), restates the governing state action principles. A public official's conduct is attributable to the State when the official possessed state authority of the relevant kind and purported to exercise that authority. *Id.* at 198–201. Although *Lindke* arose in the social-media context, the Court expressly used arrest authority as an example. The Court explained that misuse of state-conferred authority, including an arrest made with excessive force, remains state action; the official must possess the authority but the particular exercise may violate state or federal law. *Id.* at 199–200.

Here, the material color of law facts establish or at minimum support a reasonable inference that Mattioli invoked or purported to exercise police authority. Mattioli remained a sworn MPD officer. SA-017. Acevedo and the other guests knew he was a police officer. SA-002–SA-003. Mattioli identified himself as an off-duty police officer during the 911 call. A-015; SA-007, SA-018. At first, when the dispute concerned alleged theft from Mattioli, Mattioli tried to make

Acevedo leave. A-015; SA-004. After Acevedo allegedly punched Christopher Peters, however, Mattioli changed course: he got on top of Acevedo, used his body weight to keep him on the ground, and restrained him until responding police arrived. A-015; SA-005–SA-006; SA-018–SA-019. He held Acevedo's hands behind him in a handcuffing position and directed Officer Roach to handcuff him. A-016; SA-020–SA-021. His off-duty authority was governed by MPD SOP 220.30. SA-022–SA-023; SA-044, SA-048–SA-049. He also admitted at deposition that, after the incident, he said he was arresting Acevedo for his conduct. SA-008. The FPC investigation further treated the incident as a police-disciplinary matter. SA-072-SA-079.

### a. Mattioli Expressly Invoked Police Authority by Identifying Himself as an Officer During the 911 Call.

First, on April 19, 2020, Mattioli called 911, identified himself as an off-duty police officer, and said, "I need help." A-015; SA-007, SA-018. By identifying himself as a police officer while requesting a police response, a reasonable jury could find that Mattioli invoked or purported to invoke the authority of his position and signaled to responding officers that the situation involved law enforcement activity rather than a purely private dispute.

The same inference is reinforced by evidence that the people present knew Mattioli was a police officer. Mattioli testified that Acevedo knew he was a police officer, that everyone at the gathering knew he was a police officer, and that he was wearing a memorial shirt with an MPD badge insignia. SA-002–SA-003, SA-018. A jury does not need a redundant formal announcement to infer invocation of authority from the totality of Mattioli's words and conduct.

This conclusion is consistent with Seventh Circuit precedent. In *Lopez*, this Court held that a state official may act under color of state law even when exceeding delegated authority, so long as the official is "cloaked with official power" and "purports to be acting under color of official right." *Lopez v. Vanderwater*, 620 F.2d 1229, 1236 (7th Cir. 1980); see also *Wilson*, 624 F.3d at

11

394 (applying that principle). Here, a reasonable jury could find that Mattioli did that: he identified himself as an off-duty police officer during an active restraint and sought police assistance while continuing to detain Acevedo for responding officers. A-015–A-016; SA-007, SA-018–SA-019. His words are circumstantial evidence that he was invoking or purporting to exercise official authority, not merely acting as a private individual.

### b. Mattioli Exercised Police Authority by Physically Restraining Acevedo and Directing Responding Police Officer to Handcuff Him.

Second, Mattioli physically restrained Acevedo while awaiting responding officers and maintained control over him until those officers arrived. SA-018–SA-019. When officers entered the residence, Mattioli had Acevedo pinned in a prone position on the kitchen floor while applying body weight with his arm positioned under Acevedo's chin or neck, and another individual restrained Acevedo's legs. A-015; SA-019. Mattioli testified that the bodyweight method he used to keep Acevedo on the ground was learned "[b]asically from experience on the police force," and that restraining a person on their stomach with bodyweight was a tactic he had used before as a police officer, while on duty, in the presence of other police officers. SA-008–SA-009.

Rather than relinquishing control upon the officers' arrival, Mattioli continued to act in a manner consistent with a law enforcement officer effectuating an arrest. A-016; SA-020–SA-021. When Officer Roach entered, Mattioli told him to handcuff Acevedo. A-016; SA-020–SA-021. Mattioli then sat on Acevedo's back and held Acevedo's hands behind him in a handcuffing position before Roach told Mattioli to get up. A-016. A reasonable jury could view that sequence as arrest related detention, not merely private force.

### c. The Law Does Not Require a Verbal Announcement for an Arrest to Occur.

Third, the court relied on the absence of a formal verbal declaration of arrest. A-020–A-021. But an arrest does not require magic words. As Booker explains, "[a]n arrest can occur

12

without a police officer formally announcing that the person is under arrest." *Booker v. Ward,* 905 F. Supp. 483, 490 (N.D. Ill. 1995), *aff'd,* 94 F.3d 1052 (7th Cir. 1996). MPD SOP 220 likewise defines arrest as the "[t]aking or detaining of a person by word or action into custody so as to subject their liberty to the actual control and will of the person making the arrest," and states that "no formal declaration of arrest is required." SA-044. That conclusion is reinforced by Mattioli's own testimony. He testified that even when he is on duty, in full uniform, and arrests someone, he does not always say, "you are under arrest." SA-016. Here, Mattioli restrained Acevedo for responding police officers, directed Officer Roach to handcuff him, and relied on crimes he believed Acevedo had committed. A-015–A-016; SA-018–SA-021. Those facts establish, or at minimum permit a reasonable jury to find, arrest-related detention.

### d. Mattioli's Own Arrest-Related Description of His Conduct Supports the Color of Law Inference.

The record also contains Mattioli's own arrest-related description of his conduct. At deposition, Mattioli was asked: "And after the incident when you were asked, you explained you were arresting him for his conduct; correct?" He answered: "I did say that, yes." SA-008. The June 15 draft FPC charges similarly stated that, "[p]er PO Mattioli's own description, he was effecting an arrest on Mr. Acevedo," and that his "arrest attempt resulted in great bodily harm." SA-073.

These statements are probative because they are not merely Plaintiff's characterization of the restraint. They reflect Mattioli's own arrest related description of what he was doing. A reasonable jury could consider that evidence with the 911 call, restraint for responding police officers, handcuffing directive, SOP 220.30 admissions, and FPC materials in determining whether Mattioli invoked or purported to exercise police authority.

### e.    Mattioli Acted in Response to Perceived Crimes Committed in His Presence.

Fifth, the record reflects that Mattioli believed crimes had been committed in his presence and restrained Acevedo on that basis. Mattioli stated that Acevedo had stolen from him and assaulted another individual during the encounter. SA-005–SA-006, SA-018. Mattioli acknowledged that he restrained Acevedo to prevent him from leaving until police arrived; conduct consistent with effectuating a detention or arrest based on a perceived offense. SA-007–SA-008, SA-018–SA-019. An off-duty police officers acting in response to perceived crimes committed in his presence and restraining a suspect until the police officers he summoned arrive, are actions closely associated with law enforcement responsibilities.

Standing alone, the fact that Mattioli believed crimes occurred would not establish color of law. But the timing and changed conduct matters. At first, when the dispute concerned alleged theft from Mattioli, Mattioli tried to make Acevedo leave the house. A-015; SA-004. After Acevedo allegedly punched Christopher Peters, however, Mattioli changed course: he got on top of Acevedo, used his body weight to keep him on the ground, and restrained him until responding police officers arrived. A-015; SA-005–SA-006; SA-018–SA-019; SA-078. By that point, Mattioli testified that he was thinking in terms of crimes he believed Acevedo had committed, including physical assaultive conduct, robbery with use of force, theft from person, and property damage. SA-006. The change in conduct after observing alleged crimes committed against a third-party, considered along with Mattioli's 911 police identification, handcuffing directive, placement of Acevedo's hands in handcuffing position, SOP 220.30 admissions, and deposition admission that he said he was arresting Acevedo for his conduct, supports Plaintiff's position that Mattioli invoked or was purporting to exercise law enforcement authority.

14

### f.  MPD Policy and Mattioli's Admissions Support a Reasonable Inference of Off-Duty Police Action.

Sixth, the record includes MPD Standard Operating Procedure 220.30 governing off-duty arrests and aid, which expressly authorizes off-duty officers to arrest or provide aid or assistance when responding to an emergency or when taking action they would be authorized to take under the same circumstances while on duty. SA-048. The SOP separately defines "police action" to include investigation, arrest, attempted arrest, use of force, rendering aid, and assistance. SA-045.

The policy further provides that an off-duty member may take such action when the member is acting under circumstances that would justify the same action within Milwaukee County while on duty. SA-048. It also provides that any member, whether on-duty or off-duty, acting under the specified statutory authority is considered to be acting in an official capacity for purposes of civil and criminal liability under Wisconsin law. SA-049.

Consistent with this framework, Mattioli admitted in his written discovery responses that he "intended to act pursuant to his duties under [MPD SOP 220.30]." As reflected in the excerpt of his response reproduced below, Mattioli further acknowledged that his "authority" at the time was dictated by MPD SOP 220.30 governing off-duty arrests and aid. SA-022–SA-023.

> 29.    Please admit that at the time of the incident involving Joel Acevedo, MICHAEL MATTIOLI was acting pursuant to his authority as a sworn police officer employed by the Milwaukee Police Department.
>
> RESPONSE: Objection. This request seeks a legal determination and is impermissibly vague as to the term "pursuant to his authority...." Subject to and without waiving the objection, admit only that Defendant Mattioli was employed by the Milwaukee Police Department at the time of the incident, but was off-duty, and thus his responsibility and "authority" would be dictated by MPD Standard Operating Procedure 220.30 "off-duty arrests and aid." As to the remaining requests, admit only that Defendant Mattioli intended to act pursuant to his duties under said SOP.

15

This admission is highly probative of Mattioli's intentions and belief regarding the nature of his conduct and supports a reasonable inference that he intended and believed he was acting pursuant to his authority as a police officer rather than as a private citizen. When considered alongside the policy itself, this evidence reinforces that Mattioli's conduct was undertaken within a structure that governs official police action, even while off duty, and at minimum creates a dispute of material fact for the jury.

Alcohol consumption does not eliminate this inference. SOP 220 regulated and limited off-duty action after alcohol consumption, but it did not strip an off-duty officer of all police authority. SA-049. If Mattioli violated those limitations, that supports Plaintiff's misuse of authority theory; it does not require affirmance on the ground that no police authority was invoked or purportedly exercised.

### g. The FPC Materials are Relevant Circumstantial Evidence of Police Conduct.

Seventh, the FPC materials are relevant circumstantial evidence that official police oversight authorities treated the incident as a police-disciplinary matter. The FPC investigates citizen complaints and may evaluate off-duty conduct under police-disciplinary rules. SA-061, SA-077–SA-079. Both the MPD and the FPC undertook formal investigations into Mattioli's actions arising from this incident. SA-060–SA-061, SA-064. Plaintiff does not contend that the FPC decided the color of law issue. The point is narrower: official police oversight authorities evaluated the incident under police rules concerning officer conduct, restraint, use of force, arrest authority, and discipline. SA-061, SA-065, SA-072–SA-079.

The testimony of FPC Executive Director Griselda Aldrete confirms that the investigation sought to determine what had occurred that might warrant discipline for Officer Mattioli. SA-061.

When questioned about the June 15 draft's arrest-related language, Aldrete repeatedly stated that the document spoke for itself. SA-069–SA-070.

Q.　　And part of that investigation was that Mr. Mattioli in his admission of effectuating an arrest did not comport with departmental policy, correct?

MR. STANFORD:　Same objections.

Q.　I'm sorry.

A.　　Yeah, the document speaks for itself.　If we wrote it at the time and the investigator and that's what we presented to the commissioners, ultimately, they have the ultimate discretion to issue those charges.

Q.　Okay.

As it relates to the charges regarding Mr. Mattioli's action, this Rule No. 3 -- in order to violate number 3, there has to be a violation of a departmental policy; is that correct?

A.　　In order to violate any SOP policy there has to be a perceived violation.

Q.　And it has to be a perceived violation of an officer, correct?

A.　　By any member of the fire or police department.

Q.　That was acting on duty, correct?

A.　　Sure.

The June 15 draft FPC charges used arrest related language. They charged Rule 3, Section 3.03, concerning police members' exercise of powers of arrest, search, seizure, and surveillance, and stated that, "[p]er PO Mattioli's own description, he was effecting an arrest on Mr. Acevedo." SA-073. They also charged restraint related rules. SA-074–SA-075. The draft stated that Mattioli's "arrest attempt resulted in great bodily harm." SA-073. While the July 10 final FPC charges did not use the same arrest rule language, they still referred charges against "POLICE OFFICER MICHAEL MATTIOLI," recited that Mattioli restrained Acevedo, called 911, and "held Acevedo

until the police showed up," and referred the citizen complaint for FPC trial, fact finding, and determination of discipline. SA-077–SA-079.

The district court discounted the FPC evidence because the June 15 document was a draft and because the final charges did not expressly charge Mattioli with making an arrest as a police officer or acting under color of law. A-022. But Plaintiff did not need the FPC to decide the federal issue. Rather, a reasonable jury could consider the draft charges, final charges, Aldrete testimony, MPD policy, 911 call, restraint, handcuffing directive, and surrounding circumstances together and find that Mattioli invoked or purported to exercise police authority.

### h. Taken Together, the Undisputed Material Facts Establish Color of Law as a Matter of Law; At Minimum, They Permit a Reasonable Jury to Find Color of Law.

Eighth, the material facts bearing on color of law are undisputed or, at minimum, support Plaintiff's reasonable inference. Mattioli remained a sworn MPD officer. SA-017. Acevedo and the other guests knew he was a police officer. SA-002–SA-003, SA-018. Mattioli identified himself as an off-duty police officer during the 911 call. A-015; SA-007, SA-018. Before Officer Roach entered the home, Peters told him that Mattioli was a police officer. After entering and seeing Mattioli holding Acevedo down, Officer Roach asked which person was the officer, and Mattioli confirmed that he was. A-015–A-016.

At first, when the dispute concerned alleged theft from Mattioli and Acevedo's refusal to leave, Mattioli tried to make Acevedo leave the house. A-015; SA-004. After Acevedo allegedly punched Christopher Peters, however, Mattioli changed course: he got on top of Acevedo, used his body weight to keep him on the ground, and restrained him until responding police officers arrived. A-015; SA-005–SA-006; SA-018–SA-019; SA-078. By that point, Mattioli testified that

18

he was thinking in terms of crimes he believed Acevedo had committed, including physical assaultive conduct, robbery with use of force, theft from person, and property damage. SA-006.

In responding to written discovery, Mattioli acknowledged that his off-duty "authority" was governed by SOP 220.30 and admitted that he intended to act pursuant to his duties under that SOP. SA-022–SA-023. Mattioli held Acevedo's hands behind him in a handcuffing position and told Officer Roach to handcuff him. A-016; SA-020–SA-021. He admitted at deposition that, after the incident, he said he was arresting Acevedo for his conduct. SA-008.

The FPC materials further corroborate Plaintiff's characterization because they treated the incident as a police-disciplinary matter, including draft arrest-related charges and final charges against "POLICE OFFICER MICHAEL MATTIOLI." SA-073, SA-077–SA-079. Defendants dispute the legal characterization and inferences arising from these facts, but not the occurrence of the central acts themselves. Under the totality of these circumstances, Mattioli possessed and purported to exercise police authority, establishing color of law as a matter of law. At minimum, the same circumstances permit a reasonable jury to reach that conclusion.

## B. The District Court Misapplied the Governing Off-Duty Police Officer Precedent.

The district court's conclusion that Mattioli did not act under color of state law rests on a misapplication of controlling precedent addressing when off-duty officers act under color of law. As previously stated, "[a]ction is taken under color of state law 'when it involves a misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Barnes,* 943 F.3d at 831 (quoting *Wilson,* 624 F.3d at 392 (quoting *Honaker,* 256 F.3d at 484–85)). A police officer's off-duty status does not resolve the question of whether he or she acted under color of state law. *See Gibson v. City of Chicago*, 910 F.2d 1510, 1517 (7th Cir. 1990). Indeed, "'no bright line distinguishes a police officer's personal pursuits

19

from actions taken under color of state law.'" *Maynard v. City of Chicago*, 755 F. Supp. 3d 1067, 1071 (N.D. Ill. 2024) (quoting *Coles v. City of Chicago,* 361 F. Supp. 2d 740, 748 (N.D. Ill. 2005)). This Court has emphasized "the necessity of a rigorous fact-bound inquiry." *DiDonato v. Panatera,* 24 F.4th 1156, 1160 (7th Cir. 2022). The "accouterments of state authority, such as the police uniform, patrol car, badge or a gun, are not dispositive." *Lyons v. Adams*, 257 F. Supp. 2d 1125, 1132 (N.D. Ill. 2003). Instead, "the essential inquiry is whether the police officer's actions related in some way to the performance of a police duty." *Id*. (citing *Gibson*, 910 F.2d at 1517).

The district court departed from this standard by placing undue weight on factors that are not dispositive under the law, namely, that Mattioli was off duty, in his home, and not wearing a traditional police uniform. A-020–A-021. By elevating those considerations, the court effectively supplanted the governing inquiry with a categorical rule that off-duty conduct in a private setting is presumptively private.

The district court cited *Pickrel v. City of Springfield, Ill.,* 45 F.3d 1115 (7th Cir. 1995), which is the closest Seventh Circuit comparator; although it arose at the pleading stage. There, the off-duty officer was working private security, but the plaintiff alleged that he wore his police uniform and badge, carried his gun, parked his marked squad car outside, threatened arrest, announced that the plaintiff was "under arrest," used force, handcuffed her, and charged her with resisting a peace officer. *Id.* at 1117–19. This Court held those allegations were sufficient because the district court's off-duty/private-employment rationale "only skim[med] the surface," and the color of law inquiry turns "largely on the nature of the specific acts" performed. *Id.* at 1118–19.

As in *Pickrel*, the district court was required to consider Mattioli's arrest related acts in the aggregate. Mattioli remained a sworn MPD officer; Acevedo and the other guests knew he was a police officer; Mattioli identified himself as an off-duty police officer during the 911 call; he

20

initially tried to make Acevedo leave when the dispute concerned alleged theft from Mattioli; after Acevedo allegedly punched Christopher Peters, Mattioli changed course, restrained Acevedo, and held him for responding police; Mattioli held Acevedo's hands behind him in a handcuffing position and directed Officer Roach to handcuff him; Mattioli's off-duty authority was governed by MPD SOP 220.30; Mattioli admitted at deposition that, after the incident, he said he was arresting Acevedo for his conduct; and the FPC investigation treated the incident as a police-disciplinary matter. A-015–A-016; SA-002–SA-003; SA-005–SA-008; SA-018–SA-023; SA-044–SA-049; SA-073, SA-077–SA-079. Under *Pickrel*'s specific acts framework, those facts establish color of law or, at minimum, preclude summary judgment for Defendants.

The district court cited *Gibson v. City of Chicago,* 910 F.2d 1510, 1512–13 (7th Cir. 1990). *Gibson* does not support affirmance because it involved an officer who had been stripped of police authority. In *Gibson,* a police officer had been placed on medical leave after being declared mentally unfit for duty; the police department issued a written order prohibiting him from carrying a firearm or other deadly weapon, prohibiting him from exercising arrest powers or any other police power, and requiring him to surrender his star, shield, and police identification card. *Id.* at 1512–13, 1517–18 (7th Cir. 1990). Even though the police officer later identified himself as a police officer, told Gibson he was under arrest, and shot him, this Court held that the police officer was not acting under color of law because he had no police authority to exercise or misuse. *Id.* at 1517–18.

Mattioli was not in that same posture. He remained a sworn MPD officer. SA-017. MPD SOP 220 recognized and regulated off-duty arrest authority and did not categorically divest off-duty officers of all police authority after alcohol consumption or personal involvement. SA-044, SA-048–SA-049. If Mattioli violated SOP 220's limits, that supports Plaintiff's position that he

improperly invoked or purported to exercise police authority; it does not require the conclusion that no police authority was invoked. Unlike *Gibson,* this case involves an off-duty police officer who still possessed police authority and invoked it or purported to exercise it in an arrest related detention.

The district court cited *DiDonato v. Panatera*, 24 F.4th 1156 (7th Cir. 2022). *DiDonato* supports the governing legal framework but not the district court's ruling. In *DiDonato,* the defendant was a City of Chicago paramedic, but the alleged misconduct occurred in his own home during a private encounter. The plaintiff alleged that she slipped in the bathtub, fell, injured her head, and that defendant rinsed blood from her head and wrapped it in a towel, but did not call 911, take her to the hospital, or provide other medical care. *Id.* at 1158, 1161. She also alleged that he sexually assaulted her. *Id.* at 1158. The Seventh Circuit affirmed dismissal because the parties encountered each other as private persons in defendant's home in the context of their personal relationship, the alleged misconduct was not facilitated by state authority, and the allegations did not show that defendant invoked or purported to exercise state authority. *Id.* at 1161–62.

That distinction supports Plaintiff. Plaintiff does not rely on occupational overlap alone. Unlike in *DiDonato*, this record contains evidence that Mattioli remained a sworn MPD officer; Acevedo and the other guests knew he was a police officer; Mattioli identified himself as an off-duty police officer during the 911 call; Mattioli initially tried to make Acevedo leave when the dispute concerned alleged theft from Mattioli; after Acevedo allegedly punched Christopher Peters, Mattioli changed course, restrained Acevedo, and held him for responding police; Mattioli held Acevedo's hands behind him in a handcuffing position and directed Officer Roach to handcuff him; Mattioli's off-duty authority was governed by MPD SOP 220.30; Mattioli admitted at deposition that, after the incident, he said he was arresting Acevedo for his conduct; and the FPC

investigation treated the incident as a police-disciplinary matter. A-015–A-016; SA-002–SA-003; SA-005–SA-009; SA-018–SA-023; SA-044–SA-049; SA-073, SA-077–SA-079. Those facts establish, or at minimum permit a reasonable jury to infer, that Mattioli purported to exercise police authority rather than merely engaging in private force.

The district court cited *First Midwest Bank, Guardian of Estate of LaPorta v. City of Chicago*, 988 F.3d 978 (7th Cir. 2021). *LaPorta*, however, is materially different. *LaPorta* proceeded on the undisputed premise that the police officer was off duty and not acting under color of law when he shot LaPorta after a night of drinking. *Id.* at 987. The appellate issue was whether the City could nevertheless be liable under *Monell* for that private violence. *Id.* at 982–87.

Unlike in *LaPorta*, color of law is disputed, and the record contains material facts absent from *LaPorta*. Mattioli remained a sworn MPD officer; Acevedo and the other guests knew he was a police officer; Mattioli identified himself as an off-duty police officer during the 911 call; Mattioli initially tried to make Acevedo leave when the dispute concerned alleged theft from Mattioli; after Acevedo allegedly punched Christopher Peters, Mattioli changed course, restrained Acevedo, and held him for responding police; Mattioli held Acevedo's hands behind him in a handcuffing position and directed Officer Roach to handcuff him; Mattioli's off-duty authority was governed by MPD SOP 220.30; Mattioli admitted at deposition that, after the incident, he said he was arresting Acevedo for his conduct; and the FPC investigation treated the incident as a police-disciplinary matter. A-015–A-016; SA-002–SA-003; SA-005–SA-009; SA-018–SA-023; SA-044–SA-049; SA-073, SA-077–SA-079. These materially different facts preclude treating this case as private violence from beginning to end.

23

**C. At Minimum, Genuine Disputes of Material Fact Precluded Summary Judgment**

The absence of testimony from Acevedo that he understood himself to be under arrest is also not dispositive. Acevedo cannot testify because he is deceased. A-016; SA-039. Plaintiff may rely on circumstantial evidence showing the full totality: Mattioli remained a sworn MPD officer; Acevedo and the other guests knew he was a police officer; Mattioli identified himself as an off-duty police officer during the 911 call; Mattioli initially tried to make Acevedo leave when the dispute concerned alleged theft from Mattioli; after Acevedo allegedly punched Christopher Peters, Mattioli changed course, restrained Acevedo, and held him for responding police; Mattioli held Acevedo's hands behind him in a handcuffing position and directed Officer Roach to handcuff him; Mattioli's off-duty authority was governed by MPD SOP 220.30; Mattioli admitted at deposition that, after the incident, he said he was arresting Acevedo for his conduct; and the FPC investigation treated the incident as a police-disciplinary matter. A-015–A-016; SA-002–SA-003, SA-005–SA-008, SA-018–SA-023, SA-044–SA-049, SA-073, SA-077–SA-079. The question is not whether any single fact is dispositive, but whether the totality of the circumstances establishes color of law or, at minimum, permits a reasonable jury to infer that Mattioli invoked or purported to exercise police authority.

**II.  The Remaining Summary Judgment Grounds Should Be Addressed on Remand.**

Mattioli's summary judgment motion did not contest color of law. ECF No. 52 at 2, 6–23. It instead argued that his force was objectively reasonable, that he was entitled to qualified immunity, that Plaintiff could not establish causation, and that the state law claims failed. The City separately argued that Plaintiff's *Monell* claim failed even if Mattioli acted under color of law and sought a ruling that Mattioli acted outside the scope of employment. ECF No. 64 at 17–24. Plaintiff opposed each of those grounds. ECF Nos. 71, 78.

24

The district court, however, did not decide those alternative issues. It dismissed the federal claims on the threshold conclusion that Mattioli did not act under color of law and relinquished jurisdiction over the state law claims. A-022–A-023. Reversal of that threshold ruling therefore requires vacatur of the judgments entered for both Mattioli and the City. The unresolved grounds involve factual and legal questions that should be addressed by the district court in the first instance. Thus, the proper disposition is remand for further proceedings.

## CONCLUSION

For the foregoing reasons, Plaintiff-Appellant respectfully requests that this Court reverse the denial of Plaintiff's motion for partial summary judgment insofar as it sought a ruling that Mattioli acted under color of law, vacate the summary judgments entered for Defendants, and remand for further proceedings. Alternatively, the Court should hold that the record at minimum permits a reasonable jury to find that Mattioli acted under color of law, vacate the judgments, and remand for further proceedings. The Court should also direct the district court to reconsider supplemental jurisdiction over the related state-law claims.

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) and Circuit Rule 32(c) because it contains 7,291 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and Circuit Rule 32(b) because it was prepared using Microsoft Word in Times New Roman, 12-point font, a proportionally spaced typeface.

25

Respectfully submitted on June 29, 2026,

**The LaMarr Firm, PLLC**

By: /s/ B'Ivory LaMarr, Bar No. 1122469
5718 Westheimer Rd., Suite 1000
Houston, TX 77057
(800) 679-4600, ext. 700
blamarr@bivorylamarr.com

**Jacob Litigation, Inc.**

By: /s/ Devon M. Jacob, Pa. Bar No. 89182
P.O. Box 837
Mechanicsburg, PA 17055-0837
(717) 796-7733
djacob@jacoblitigation.com

**Ben Crump Law, PLLC**

Benjamin L. Crump, D.C. Bar No. 1552623
122 S. Calhoun Street
Tallahassee, FL 32301
(800) 959-1444
court@bencrump.com

*Attorneys for the Plaintiff-Appellant, Jose Acevedo, individually, and as a Special Administrator of the Estate of Joel Acevedo*

26

**REQUIRED SHORT APPENDIX**

## I.     Table of Contents

Order on Cross Motions for Summary Judgment (ECF No. 97)...........................................A-001

Judgment in a Civil Case (ECF No. 98) ................................................................................A-012

Amended Order on Cross Motions for Summary Judgment (ECF No. 99) ...........................A-013

## II.     Certificate of Required Short Appendix Compliance

Pursuant to Circuit Rule 30(d), I certify that this Required Short Appendix, and the Separate Appendix filed contemporaneously with this brief, contain all materials required by Circuit Rule 30(a) and (b).

Respectfully submitted on June 29, 2026,

**The LaMarr Firm, PLLC**

By: /s/ B'Ivory LaMarr, Bar No. 1122469
5718 Westheimer Rd., Suite 1000
Houston, TX 77057
(800) 679-4600, ext. 700
blamarr@bivorylamarr.com

**Jacob Litigation, Inc.**

By: /s/ Devon M. Jacob, Pa. Bar No. 89182
P.O. Box 837
Mechanicsburg, PA 17055-0837
(717) 796-7733
djacob@jacoblitigation.com

**Ben Crump Law, PLLC**

Benjamin L. Crump, D.C. Bar No. 1552623
122 S. Calhoun Street
Tallahassee, FL 32301
(800) 959-1444
court@bencrump.com

*Attorneys for the Plaintiff-Appellant, Jose Acevedo, individually, and as a Special Administrator of the Estate of Joel Acevedo*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

JOSE ACEVEDO as Special Administrator
of the Estate of Joel Acevedo,

                 Plaintiff,

                                         Case No. 23-cv-0489-bhl

       v.

MICHAEL A MATTIOLI,
and the CITY OF MILWAUKEE,[1]

                 Defendants.

---

**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

---

       This case arises out of the death of Joel Acevedo following a drunken altercation at the home of off-duty Milwaukee Police Officer Michael Mattioli. On the night in question, Acevedo was among a group of friends that Mattioli invited over for drinks and a bonfire. After the men drank heavily and fell asleep in different rooms of the house, Mattioli awoke to find Acevedo in his bedroom rummaging through his pants. Mattioli accused Acevedo of theft and told him to leave, leading to a physical struggle that ended with Mattioli on top of Acevedo and, aided by another friend, holding him down. Acevedo continued to resist even as Mattioli called 911. By the time responding officers arrived, Acevedo did not appear to be breathing and, despite efforts to resuscitate him, he was declared legally brain dead several days later. The administrator of Acevedo's estate (the Estate) now seeks to hold Mattioli and the City of Milwaukee (the City) liable for Acevedo's death under a number of state law tort theories and for federal constitutional violations.

       The parties have filed competing motions for summary judgment. Based on the undisputed facts, the Estate's federal constitutional claims fail as a matter of law. The record confirms that Mattioli was acting as a private citizen in connection with the incident, and not "under color of

---

[1] Defendants Robert Roach and Alfonso Morales were dismissed by stipulation on July 24, 2025. (ECF Nos. 5 & 50.)

law," precluding any alleged constitutional violation.  The Court will therefore dismiss the Estate's federal claims and relinquish jurisdiction over its remaining state law claims.

## FACTUAL BACKGROUND[2]

At the time of the events in question, Acevedo was an adult resident of the State of Wisconsin.  (ECF No. 91 at 1 ¶1.)  He was an acquaintance of Mattioli, an adult resident of the State of Wisconsin and, at the relevant time, a member of the Milwaukee Police Department.  (ECF No. 72 at 2 ¶3; ECF No. 85 ¶¶3–4.)  The City is a municipal corporation with its principal office located in Milwaukee, Wisconsin.  (ECF No. 91 at 2 ¶4.)

On April 18, 2020, Mattioli hosted a bonfire at his home that was attended by Acevedo and two other friends, Christopher Peters and Andrew Janowski.  (*Id.* at 3 ¶8.)  At the time of the party, Mattioli was *not* on duty.  (ECF No. 72 at 2 ¶7; ECF No. 91 at 26 ¶56.)  The four men spent the night drinking alcohol around a bonfire until it got too cold, at which point they went inside.  (ECF No. 91 at 3 ¶¶8–9.)  Because they had been drinking, the guests stayed the night in various rooms around Mattioli's home.  (*Id.* at 4 ¶13.)  Mattioli slept in his bedroom on the second floor.  (*Id.* at 4 ¶14.)  Janowski went to sleep on a couch in the living room on the main level of the house.  (*Id.*)  Peters went to sleep in the basement of the house.  (*Id.*)  It is unclear where Acevedo was or if he ever went to sleep.

In the early morning hours of April 19, 2020, Mattioli awoke to see Acevedo rummaging through his pants pockets.  (*Id.* at 4 ¶15.)  Mattioli concedes that both he and Acevedo were still intoxicated.  (ECF No. 72 at 10 ¶51; ECF No. 91 at 28 ¶61.)  When Mattioli asked Acevedo why he was stealing from him, Acevedo became loud, defensive, and angry.  (ECF No. 72 at 6 ¶31.)  He denied he was stealing anything and then began taking things out of his own pockets and throwing them on Mattioli's bed.  (*Id.*)  Mattioli got out of bed and told Acevedo to leave.  (ECF No. 72 at 6 ¶33.)  Acevedo left the room and began walking downstairs while Mattioli followed, continuing to insist that Acevedo leave.  (*Id.* at 6 ¶¶33–34; ECF No. 91 at 5 ¶19.)

The noise and skirmishing woke both Janowski and Peters.  (ECF No. 72 at 7 ¶¶35–36.)  Janowski stood up from the couch but did not immediately intervene.  (*Id.* at 7 ¶35.)  Peters came upstairs from the basement.  (*Id.* at 7 ¶36.)  All witnesses confirm that Mattioli and Acevedo were

---

[2] This background is derived primarily from the parties' Proposed Findings of Facts.  (ECF Nos. 72, 74, 84, 85, 90, & 91.)  Additional details are derived from responding officers' body camera footage, (ECF No. 61-5), which provide objective confirmation of the circumstances, *see Lopez v. Sheriff of Cook Cnty.*, 993 F.3d 981, 985 (7th Cir. 2021).

screaming at each other, with Mattioli accusing Acevedo of stealing and telling him to leave, and Acevedo refusing to go.  (*Id.* at 7 ¶37.)

Mattioli ultimately threatened to call the police if Acevedo did not leave.  (*Id.* at 7 ¶38.) Acevedo responded by shoving Mattioli in the chest, causing him to take a step backward.  (*Id.* at 7 ¶40; ECF No. 91 at 5 ¶26.)  Peters also began yelling, and Acevedo responded by punching him in the face, causing him to fall back into the adjoining kitchen.  (ECF No. 72 at 8 ¶41; ECF No. 91 at 8 ¶¶27–28.)  Acevedo also lost his balance and fell to the ground.  (ECF No. 72 at 8 ¶¶41–42; ECF No. 91 at 8 ¶30.)  When Acevedo tried to get up, Mattioli got on top of him and used his body weight to keep Acevedo down.  (ECF No. 72 at 8 ¶43; ECF No. 91 at 8–9 ¶32.)  With everyone now in the kitchen, Janowski joined the fight.  (ECF No. 72 at 8 ¶45; ECF No. 91 at 9–10 ¶¶34–35.)

Eventually, Acevedo lay face-down on his stomach with Mattioli on top of him, straddling Acevedo's back with his knees on the ground.  (ECF No. 72 at 8–9 ¶46; ECF No. 91 at 14 ¶40.) In holding Acevedo down, Mattioli was positioned with his upper body on top of Acevedo's upper body and his right arm under Acevedo's chin or neck.  (ECF No. 91 at 15 ¶42.)  The parties dispute whether Mattioli was choking him.  (*Id.* at 50 ¶38, 32–34 ¶¶69–71.)  Janowski lay across Acevedo's legs to further restrain him.  (*Id.* at 15 ¶41.)  Despite these efforts, Acevedo continued to try to push off the ground, but each time, Mattioli pushed him back down.  (*Id.* at 15 ¶43.)

At 7:29 a.m., Mattioli called 911, telling the dispatcher, "I need help."  (*Id.* at 11 ¶36; ECF No. 90 at 7 ¶36; ECF No. 72 at 10 ¶49; ECF No. 61-4 at 00:15–00:25.)  He also accurately identified himself as an off-duty police officer.  (ECF No. 91 at 11 ¶36; ECF No. 90 at 7 ¶36; ECF No. 72 at 10 ¶49; ECF No. 61-4 at 00:15–00:25.)  During the call, Acevedo knocked the phone out of Mattioli's hand, and Peters picked up the phone to inform dispatchers that Acevedo was attacking them and urged dispatchers to send someone quickly.  (ECF No. 91 at 12 ¶38.)  Acevedo can be heard on the 911 call saying "Let me go.  I want to go home."  (ECF No. 72 at 10 ¶50; ECF No. 91 at 24 ¶53.)  According to Peters and Mattioli, Acevedo continued to resist throughout the 911 call, and both believed he posed a danger to the individuals in the house.  (ECF No. 91 at 12–13 ¶¶38–39.)  When the call ended, Peters went outside to wait for officers to arrive.  (ECF No. 72 at 13 ¶63.)

Around 7:38 a.m., Milwaukee Police Officers Robert Roach and Mark Sheremeta arrived. (ECF No. 91 at 21 ¶49; ECF No. 72 at 13 ¶64.)  Peters met Roach at the sidewalk and reported

that Acevedo had been subdued and was inside the house. (ECF No. 61-5 at 2:38–3:02.) He then escorted the officers to Mattioli's side door, which led into the kitchen. (*Id.* at 3:02–3:34.) During the walk to the house, Peters informed Roach that Mattioli was a police officer. (*Id.*) Upon entering, Roach saw Mattioli holding Acevedo down, and Mattioli told him to handcuff Acevedo. (*Id.* at 3:34–3:44.) Roach asked which of them was the police officer. (*Id.* at 3:44–3:47.) Mattioli responded that he was the officer, after which Roach asked if Acevedo was breathing, and Mattioli said, "I don't know." (*Id.* at 3:47–3:51.) Roach then moved closer, indicating he was "making sure [Mattioli] did not have his arm around [Acevedo's] neck," and Mattioli said "oh, yeah." (*Id.* at 3:51–3:57.) By that time, Acevedo was not moving. (*Id.*; ECF No. 91 at 17 ¶46; ECF No. 80-1 at 100:2–9, 104:24–105:9.)

Mattioli moved to sit on Acevedo's back and hold his hands behind him. (ECF No. 61-5 at 3:55–4:02.) Roach tapped Acevedo's arm and said "hello," and when Acevedo did not respond, Roach told Mattioli to get up several times, finally saying "Officer, get up." (*Id.* at 3:58–4:05.) Mattioli and Janowski got off Acevedo and stepped back, Roach checked Acevedo for a pulse but did not find one, and the officers then rolled Acevedo onto his back to start cardio-pulmonary resuscitation (CPR). (ECF No. 91 at 22 ¶51; ECF No. 72 at 14 ¶70; ECF No. 61-5 at 4:05–4:58, 6:20–7:48.) CPR continued until the emergency medical technicians (EMTs) arrived. (ECF No. 72 at 14 ¶71.) At 8:01 a.m., the EMTs detected a pulse; Acevedo was then transported to a hospital, but he never regained consciousness. (*Id.* at 15 ¶¶72–73.) On April 25, 2020, a week after the incident, Acevedo was pronounced brain dead. (*Id.* at 15 ¶76.)

## LEGAL STANDARD

Summary judgment is appropriate if the record shows there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must determine whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A fact is "material" if, under the governing law, it could influence the outcome of the lawsuit. *Id.* at 248; *Contreras v. City of Chicago*, 119 F.3d 1286, 1291–92 (7th Cir. 1997). A dispute over a material fact is "genuine"

only if a reasonable trier of fact could find in favor of the non-moving party on the evidence presented. *Liberty Lobby*, 477 U.S. at 248.

The moving party bears the initial burden of proving the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. Upon such a showing, the burden shifts to the opposing party to "make a showing sufficient to establish the existence of an element essential to that party's case." *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013) (quoting *Celotex*, 477 U.S. at 322). This burden is not onerous, but the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party "must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Id.* at 587 (quoting Fed. R. Civ. P. 56(e)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

If the parties assert different characterizations of the facts, the Court must view the record in the light most favorable to the non-moving party. *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000). "Although we construe all facts and make all reasonable inferences in the nonmoving party's favor, the moving party may succeed by showing an absence of evidence to support the non-moving party's claims." *Marnocha v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 986 F.3d 711, 718 (7th Cir. 2021) (quoting *Tyburski v. City of Chicago*, 964 F.3d 590, 597 (7th Cir. 2020)).

### ANALYSIS

In Counts I and III of the Amended Complaint, the Estate asserts Fourth Amendment excessive force claims against Mattioli and the City of Milwaukee under 42 U.S.C. §1983 and *Monell v. Department of Social Services*, 346 U.S. 658 (1978). (ECF No. 23 ¶¶65–83, 94–99.) Both claims require proof that Mattioli acted "under color of law" when he used force to restrain Acevedo during their altercation in Mattioli's home. *See Schertz v. Waupaca Cnty.*, 875 F.2d 578, 581 (7th Cir. 1989). Because the undisputed facts confirm that Mattioli was acting in his private capacity and not under color of state law when he used force against Acevedo, the Estate's federal claims fail as a matter of law.

An individual acts "under color of state law" for purposes of Section 1983 when he or she engages in misconduct while exercising power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988).   The record confirms that, at the time of the incident, Mattioli was both employed as a Milwaukee police officer, (ECF No. 72 at 2 ¶3; ECF No. 85 ¶¶3–4), and off duty, (ECF No. 72 at 2 ¶7).   Neither fact is dispositive.   The Seventh Circuit has confirmed that a defendant's "mere status as a policeman" does not necessarily render his actions under color of law.   *See Gibson v. City of Chicago*, 910 F.2d 1510, 1516 (7th Cir. 1990).   Similarly, a defendant need not have been "actively assigned" or on duty to perform an official action under color of law.   *Pickrel v. City of Springfield*, 45 F.3d 1115, 1118 (7th Cir. 1995); *see also Gibson*, 910 F.2d at 1516 n.10. Whether a defendant was acting under color of law instead depends on the nature and context of the specific acts undertaken.   *Pickrel*, 45 F.3d at 1118.   The defendant must undertake those actions pursuant to "the cloth of state authority."   *Hughes v. Meyer*, 880 F.2d 967, 971 (7th Cir. 1989).   In other words, he or she must invoke or affirmatively exercise state authority to facilitate or enable the alleged unconstitutional misconduct.   *See DiDonato v. Panatera*, 24 F.4th 1156, 1161–62 (7th Cir. 2022).   If the state employee does not invoke state authority to facilitate or enable misconduct, there can be no constitutional claim under Section 1983.   *See id*.

Analyzing whether a state employee defendant acted under color of law is thus inherently fact-bound, but the Seventh Circuit has laid out several clear lines underpinning the analysis.   In *First Midwest Bank, Guardian of Estate of LaPorta v. City of Chicago*, 988 F.3d 978 (7th Cir. 2021), the Seventh Circuit addressed similar claims against an off-duty police officer who engaged in violent conduct against a friend while at home after a night of drinking.   In *LaPorta*, the defendant-officer got into a drunken altercation in his own home with his friend after a dispute involving the officer hitting his dog.   *Id.* at 983.   When the plaintiff yelled for him to stop and announced he was leaving, the officer shot him in the head.   *Id.*   Following a jury verdict in the plaintiff's favor, the Seventh Circuit vacated the judgment and remanded the case with instructions to enter judgment in favor of the defendants.   *Id.*   The Court of Appeals held that, based on the facts, the police officer was not acting under color of law when he shot the plaintiff.   *Id.* at 987. The Court explained that because the defendant officer's actions were "wholly unconnected to his duties" as an officer and were "those of a private citizen in the course of a purely private social interaction," the defendant was entitled to judgment as a matter of law.   *Id.*

In *DiDonato*, the Seventh Circuit affirmed the dismissal of constitutional claims against an off-duty paramedic, who was accused of sexually assaulting a young woman who had a medical emergency at his home. 24 F.4th at 1158. The plaintiff alleged that she had slipped, fallen, and injured her head in the bathtub of the paramedic's home. *Id.* at 1158. The defendant paramedic rinsed the blood from her head, wrapped it in a towel, and then proceeded to sexually assault her. *Id.* The Court of Appeals affirmed the district court's dismissal of the plaintiff's Fourteenth Amendment Due Process claims, concluding that the plaintiff's allegations were insufficient to support a finding that the defendant acted under color of law. *Id.* at 1161. The Court explained that the defendant's state employment as a paramedic and the "overlap" between his job responsibilities and the misconduct alleged did not support a finding that he acted under color of law. *Id.* It noted that the allegations might expose him to state law negligence liability, but the complaint did not plausibly allege that defendant's actions or inactions were a misuse of any power his city employer had bestowed upon him. *Id.* Nor did the allegations suggest that his wrongdoing was made possible because he was "clothed" with authority by virtue of state law. *Id.* The Court further explained that allegations the paramedic was "on call" at the time did not matter because the alleged misconduct was not "facilitated" by any misuse of state power and did not involve the "invocation" of any state authority. *Id.* at 1162.

In contrast to *LaPorta* and *DiDonato*, the Seventh Circuit reversed a district court's dismissal of claims against an off-duty police officer on "color of law" grounds in *Pickrel*. *See* 45 F.3d at 1118. The plaintiff in *Pickrel* alleged that she was wrongfully arrested by an off-duty police officer who worked as a part-time private security guard at a McDonald's restaurant. *Id.* at 1117. According to the complaint, the defendant approached the plaintiff and her father and threatened to arrest them if they did not leave. *Id.* When they refused his instructions, he directed the plaintiff to stand up and announced that she was "under arrest." *Id.* When she did not immediately comply, he then used force to pull her from her booth, stand her up, throw her to the ground, and put her in handcuffs until on-duty police officers took her and her father into custody. *Id.* The Seventh Circuit rejected the district court's conclusion that dismissal was appropriate simply because the officer was off-duty. *Id.* at 1118. The Court of Appeals explained that a jury could find that the defendant acted under color of law given that he was wearing his police uniform (complete with badge and gun), had parked his squad car just outside (advertising his presence as a police officer), and had actually told her he was "arresting" her for resisting a peace officer. *Id.*

at 1118–19.  These allegations were sufficient for the plaintiff to proceed with her constitutional claims past the pleading stage.  *Id.* at 1119.

Based on these principles and precedents, the Estate's constitutional claims against Mattioli fail because the undisputed facts establish that he was not acting under color of law when he fought with and subdued Acevedo while off duty in his own home on the night and early morning of April 18 and April 19, 2020.  Like the defendant in *LaPorta*, Mattioli's actions were "wholly unconnected to his duties" as an officer and were "those of a private citizen in the course of a purely private social interaction."  988 F.3d at 987.  While the fight in *LaPorta* related to a dispute over the drunken mistreatment of a pet, and the disagreement here began with a drunken quarrel over a potential theft, in both cases, the defendants were off-duty officers acting as any private citizen might within his or her own home.  Although Mattioli's conduct in physically subduing and restraining Acevedo might "overlap" with his duties as a police officer, *DiDonato* makes clear this is insufficient to show that Mattioli was acting under color of law.  24 F.4th at 1161 ("[T]he mere overlap between [] routine job responsibilities and the conduct [] complained of does not mean that [the official] acted under color of state law[.]").  Likewise, nothing in Mattioli's request that the responding officer handcuff Acevedo supports a finding that he was invoking state authority.  At most, he was asking for help in turning over a previously violent person to the police.  There is no evidence that Mattioli undertook any of his efforts "clothed" with any authority he had as a City of Milwaukee police officer.  Nor has the Estate come forward with facts indicating that Mattioli invoked his authority as a police officer in combatting or holding Acevedo down until on-duty police officers arrived to take him into custody.

In response, the Estate points out that Mattioli was wearing a t-shirt with the Milwaukee Police Department logo during the altercation.  (ECF No. 72 at 5 ¶¶24–26.)  But the shirt was not department-issued.  It was a memorial t-shirt recognizing a Milwaukee police officer who had been killed in the line of duty.  (*Id.* at 5 ¶¶26–27.)  Mattioli's wearing of such a t-shirt to bed in his own home cannot reasonably be understood to suggest that he was clothing himself with police authority when he was responded to Acevedo rummaging through his pants pockets.  No record facts suggest that Mattioli used, or that anyone in the house would have understood, the shirt to be a demonstration that Mattioli was acting under color of law.  This is a far cry from the full police uniform, including badge, gun and nearby squad car, that the Seventh Circuit held was enough, when presented in connection with the off-duty officer's announcement of an "arrest," to allow the

plaintiff in *Pickrell* to survive a motion to dismiss.  The Estate has had the chance to develop the record in discovery and has presented no evidence that Mattioli's wearing of this t-shirt would have reasonably given anyone the impression he was acting as a police officer in his altercation with Acevedo.

The Estate also points to the fact that Mattioli (truthfully) relayed that he was an off-duty police officer on the 911 call and confirmed this fact to the arresting officers when they arrived. According to the Estate, these facts show that Mattioli affirmatively invoked his authority because "[r]esponding officers deferred to Mattioli's assertion of police authority rather than treating him as a private actor."  (ECF No. 71 at 6–7.)  The record does not support this strained characterization.  Nothing in the 911 call or in the body cam footage of Mattioli's interactions with on-duty officers indicates any attempt by him to "invoke" or assert any police authority.  Rather, the evidence shows that, while Mattioli informed the dispatcher that he was a police officer, Peters told responding officers that Mattioli was a police officer, and, when asked, Mattioli confirmed that fact.  (ECF No. 61-5 at 3:02–3:45.)  Whether responding officers treated Mattioli differently upon that knowledge does not necessarily mean that Mattioli invoked his own police authority. The Estate also insists that Mattioli's identification as an off-duty officer is material because "[a] private citizen never identifies themselves as a police officer."  (ECF No. 86 at 4.)  But police officers "are also private citizens," *see Lindke v. Freed*, 601 U.S. 187, 196 (2024), and, as already explained, a defendant's status as a police officer is insufficient to establish that a person acted under color of law, *Gibson*, 910 F.3d at 1516.  That Mattioli found his status as an off-duty police officer to be relevant background information when talking to the 911 dispatcher does not necessarily mean he invoked his police authority.

The Estate also maintains that, during the 911 call, Mattioli requested "back up," suggesting that he was taking the lead on an official police arrest.  (ECF No. 74 ¶3.)  But this "fact" is not supported by the evidence.  It is true that in answering the complaint, Mattioli admitted, "upon information and belief," that other officers responded to what *the Estate* characterized as "Mattioli's request for back up."  (ECF Nos. 23 ¶14 & 26 ¶14.)  But these are not the words that Mattioli actually used.  (ECF No. 73-1 at 86:24–87:3 (confirming during Mattioli's deposition that, during the 911 call, Mattioli said "I need help"); ECF No. 61-4 at 00:15–00:25 (recording of the 911 call).)  Nothing in the language Mattioli used would support a finding that he was clothing his actions in police authority or otherwise acting under color of law in connection with making

the 911 call, something that any private citizen engaged in a physical altercation with a house guest who refused to leave might do.

Finally, the Estate points to Mattioli's deposition testimony in which he admitted that while fighting with and detaining Acevedo, he went over in his mind the multiple crimes, including physical assault, robbery with the use of force, theft from a person, and property damage, he believed Acevedo had committed. (ECF No. 91 at 9 ¶33.) Mattioli's *internal* thoughts are not evidence that he clothed his actions with or invoked any state authority. As *DiDonato* makes clear, it is a defendant's affirmative statements and actions expressing the use of state power that are central to the color of law analysis. *See* 24 F.4th at 1162.

In the end, none of the facts cited by the Estate, whether viewed individually or together, are sufficient for a reasonable jury to find that Mattioli acted under color of law in fighting with and restraining Acevedo. Accordingly, the Estate's federal claims against Mattioli and the City fail as a matter of law. Given the dismissal of the federal law claims, the Court will relinquish jurisdiction over the Estate's remaining state law claims. *See Davis v. Cook Cnty.*, 534 F.3d 650, 654 (7th Cir. 2008). The Court also notes that the Estate may have undercut its ability to pursue its state law claims by failing to follow state law notice requirements. (*See* ECF No. 72 ¶13; ECF No. 52 at 15–16; ECF No. 64 at 25); *see also* Wis. Stat. §893.80; *Estate of Swayzer v. Milwaukee Cnty.*, No. 16-cv-1703-bhl, 2022 WL 656884, at *21–*22 (E.D. Wis. Mar. 4, 2022). The Court will not delve into this technical state law issue, however, and will instead leave it for the state courts to address, if necessary.[3]

---

[3] The Court must dispose of three remaining motions: the City's unopposed motion for leave to file a late reply, (ECF No. 88), and two pending motions in limine, (ECF Nos. 66 & 94). The motion for leave to file a reply will be granted, while the motions in limine will be denied as moot.

## CONCLUSION

For the reasons stated above,

**IT IS HEREBY ORDERED** that Defendant Mattioli's Motion for Summary Judgment, ECF No. 51, is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Partial Summary Judgment, ECF No. 55, is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant City of Milwaukee's Motion for Summary Judgment, ECF No. 59, is **GRANTED**.

**IT IS FURTHER ORDERED** that the two Motions in Limine, ECF Nos. 66 & 94, are **DENIED as moot**.

**IT IS FURTHER ORDERED** that Defendant City of Milwaukee's Expedited Motion for Leave to File a Reply Brief, ECF No. 88, is **GRANTED**.

Dated at Milwaukee, Wisconsin on March 6, 2026.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JOSE ACEVEDO as Special Administrator
of the Estate of Joel Acevedo,

      Plaintiff,

                               **JUDGMENT IN A CIVIL CASE**

      v.                             Case No. 23-cv-0489-bhl

MICHAEL A MATTIOLI,
and the CITY OF MILWAUKEE,

      Defendants.

☐    **Jury Verdict.** This action came before the Court for a trial by jury. The issues have been tried and the jury has rendered its verdict

☒    **Decision by Court.** This action came before the Court for consideration. The Court has decided the issues and rendered a decision.

    **IT IS HEREBY ORDERED AND ADJUDGED** that the case is dismissed, and Plaintiff recover nothing.

    Dated at Milwaukee, Wisconsin on March 6, 2026.

                                 LINDA M. KLEMM
                                 Clerk of Court

                                 s/ *Julie D.*
                                 (By) Deputy Clerk

**A-012**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JOSE ACEVEDO as Special Administrator
of the Estate of Joel Acevedo,

          Plaintiff,

                                        Case No. 23-cv-0489-bhl

     v.

MICHAEL A MATTIOLI,
and the CITY OF MILWAUKEE,[1]

          Defendants.

---

**AMENDED ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

---

This case arises out of the death of Joel Acevedo following a drunken altercation at the home of off-duty Milwaukee Police Officer Michael Mattioli. On the night in question, Acevedo was among a group of friends that Mattioli invited over for drinks and a bonfire. After the men drank heavily and fell asleep in different rooms of the house, Mattioli awoke to find Acevedo in his bedroom rummaging through his pants. Mattioli accused Acevedo of theft and told him to leave, leading to a physical struggle that ended with Mattioli on top of Acevedo and, aided by another friend, holding him down. Acevedo continued to resist even as Mattioli called 911. By the time responding officers arrived, Acevedo did not appear to be breathing and, despite efforts to resuscitate him, he was declared legally brain dead several days later. The administrator of Acevedo's estate (the Estate) now seeks to hold Mattioli and the City of Milwaukee (the City) liable for Acevedo's death under a number of state law tort theories and for federal constitutional violations.

The parties have filed competing motions for summary judgment. Based on the undisputed facts, the Estate's federal constitutional claims fail as a matter of law. The record confirms that Mattioli was acting as a private citizen in connection with the incident, and not "under color of

---

[1] Defendants Robert Roach and Alfonso Morales were dismissed by stipulation on July 24, 2025. (ECF Nos. 5 & 50.)

law," precluding any alleged constitutional violation.  The Court will therefore dismiss the Estate's federal claims and relinquish jurisdiction over its remaining state law claims.

## FACTUAL BACKGROUND[2]

At the time of the events in question, Acevedo was an adult resident of the State of Wisconsin.  (ECF No. 91 at 1 ¶1.)  He was an acquaintance of Mattioli, an adult resident of the State of Wisconsin and, at the relevant time, a member of the Milwaukee Police Department.  (ECF No. 72 at 2 ¶3; ECF No. 85 ¶¶3–4.)  The City is a municipal corporation with its principal office located in Milwaukee, Wisconsin.  (ECF No. 91 at 2 ¶4.)

On April 18, 2020, Mattioli hosted a bonfire at his home that was attended by Acevedo and two other friends, Christopher Peters and Andrew Janowski.  (*Id.* at 3 ¶8.)  At the time of the party, Mattioli was *not* on duty.  (ECF No. 72 at 2 ¶7; ECF No. 91 at 26 ¶56.)  The four men spent the night drinking alcohol around a bonfire until it got too cold, at which point they went inside.  (ECF No. 91 at 3 ¶¶8–9.)  Because they had been drinking, the guests stayed the night in various rooms around Mattioli's home.  (*Id.* at 4 ¶13.)  Mattioli slept in his bedroom on the second floor.  (*Id.* at 4 ¶14.)  Janowski went to sleep on a couch in the living room on the main level of the house.  (*Id.*)  Peters went to sleep in the basement of the house.  (*Id.*)  It is unclear where Acevedo was or if he ever went to sleep.

In the early morning hours of April 19, 2020, Mattioli awoke to see Acevedo rummaging through his pants pockets.  (*Id.* at 4 ¶15.)  Mattioli concedes that both he and Acevedo were still intoxicated.  (ECF No. 72 at 10 ¶51; ECF No. 91 at 28 ¶61.)  When Mattioli asked Acevedo why he was stealing from him, Acevedo became loud, defensive, and angry.  (ECF No. 72 at 6 ¶31.)  He denied he was stealing anything and then began taking things out of his own pockets and throwing them on Mattioli's bed.  (*Id.*)  Mattioli got out of bed and told Acevedo to leave.  (ECF No. 72 at 6 ¶33.)  Acevedo left the room and began walking downstairs while Mattioli followed, continuing to insist that Acevedo leave.  (*Id.* at 6 ¶¶33–34; ECF No. 91 at 5 ¶19.)

The noise and skirmishing woke both Janowski and Peters.  (ECF No. 72 at 7 ¶¶35–36.)  Janowski stood up from the couch but did not immediately intervene.  (*Id.* at 7 ¶35.)  Peters came upstairs from the basement.  (*Id.* at 7 ¶36.)  All witnesses confirm that Mattioli and Acevedo were

---

[2] This background is derived primarily from the parties' Proposed Findings of Facts.  (ECF Nos. 72, 74, 84, 85, 90, & 91.)  Additional details are derived from responding officers' body camera footage, (ECF No. 61-5), which provide objective confirmation of the circumstances, *see Lopez v. Sheriff of Cook Cnty.*, 993 F.3d 981, 985 (7th Cir. 2021).

screaming at each other, with Mattioli accusing Acevedo of stealing and telling him to leave, and Acevedo refusing to go. (*Id.* at 7 ¶37.)

Mattioli ultimately threatened to call the police if Acevedo did not leave. (*Id.* at 7 ¶38.) Acevedo responded by shoving Mattioli in the chest, causing him to take a step backward. (*Id.* at 7 ¶40; ECF No. 91 at 5 ¶26.) Peters also began yelling, and Acevedo responded by punching him in the face, causing him to fall back into the adjoining kitchen. (ECF No. 72 at 8 ¶41; ECF No. 91 at 8 ¶¶27–28.) Acevedo also lost his balance and fell to the ground. (ECF No. 72 at 8 ¶¶41–42; ECF No. 91 at 8 ¶30.) When Acevedo tried to get up, Mattioli got on top of him and used his body weight to keep Acevedo down. (ECF No. 72 at 8 ¶43; ECF No. 91 at 8–9 ¶32.) With everyone now in the kitchen, Janowski joined the fight. (ECF No. 72 at 8 ¶45; ECF No. 91 at 9–10 ¶¶34–35.)

Eventually, Acevedo lay face-down on his stomach with Mattioli on top of him, straddling Acevedo's back with his knees on the ground. (ECF No. 72 at 8–9 ¶46; ECF No. 91 at 14 ¶40.) In holding Acevedo down, Mattioli was positioned with his upper body on top of Acevedo's upper body and his right arm under Acevedo's chin or neck. (ECF No. 91 at 15 ¶42.) The parties dispute whether Mattioli was choking him. (*Id.* at 50 ¶38, 32–34 ¶¶69–71.) Janowski lay across Acevedo's legs to further restrain him. (*Id.* at 15 ¶41.) Despite these efforts, Acevedo continued to try to push off the ground, but each time, Mattioli pushed him back down. (*Id.* at 15 ¶43.)

At 7:29 a.m., Mattioli called 911, telling the dispatcher, "I need help." (*Id.* at 11 ¶36; ECF No. 90 at 7 ¶36; ECF No. 72 at 10 ¶49; ECF No. 61-4 at 00:15–00:25.) He also accurately identified himself as an off-duty police officer. (ECF No. 91 at 11 ¶36; ECF No. 90 at 7 ¶36; ECF No. 72 at 10 ¶49; ECF No. 61-4 at 00:15–00:25.) During the call, Acevedo knocked the phone out of Mattioli's hand, and Peters picked up the phone to inform dispatchers that Acevedo was attacking them and urged dispatchers to send someone quickly. (ECF No. 91 at 12 ¶38.) Acevedo can be heard on the 911 call saying "Let me go. I want to go home." (ECF No. 72 at 10 ¶50; ECF No. 91 at 24 ¶53.) According to Peters and Mattioli, Acevedo continued to resist throughout the 911 call, and both believed he posed a danger to the individuals in the house. (ECF No. 91 at 12–13 ¶¶38–39.) When the call ended, Peters went outside to wait for officers to arrive. (ECF No. 72 at 13 ¶63.)

Around 7:38 a.m., Milwaukee Police Officers Robert Roach and Mark Sheremeta arrived. (ECF No. 91 at 21 ¶49; ECF No. 72 at 13 ¶64.) Peters met Roach at the sidewalk and reported

that Acevedo had been subdued and was inside the house. (ECF No. 61-5 at 2:38–3:02.) He then escorted the officers to Mattioli's side door, which led into the kitchen. (*Id.* at 3:02–3:34.) During the walk to the house, Peters informed Roach that Mattioli was a police officer. (*Id.*) Upon entering, Roach saw Mattioli holding Acevedo down, and Mattioli told him to handcuff Acevedo. (*Id.* at 3:34–3:44.) Roach asked which of them was the police officer. (*Id.* at 3:44–3:47.) Mattioli responded that he was the officer, after which Roach asked if Acevedo was breathing, and Mattioli said, "I don't know." (*Id.* at 3:47–3:51.) Roach then moved closer, indicating he was "making sure [Mattioli] did not have his arm around [Acevedo's] neck," and Mattioli said "oh, yeah." (*Id.* at 3:51–3:57.) By that time, Acevedo was not moving. (*Id.*; ECF No. 91 at 17 ¶46; ECF No. 80-1 at 100:2–9, 104:24–105:9.)

Mattioli moved to sit on Acevedo's back and hold his hands behind him. (ECF No. 61-5 at 3:55–4:02.) Roach tapped Acevedo's arm and said "hello," and when Acevedo did not respond, Roach told Mattioli to get up several times, finally saying "Officer, get up." (*Id.* at 3:58–4:05.) Mattioli and Janowski got off Acevedo and stepped back, Roach checked Acevedo for a pulse but did not find one, and the officers then rolled Acevedo onto his back to start cardio-pulmonary resuscitation (CPR). (ECF No. 91 at 22 ¶51; ECF No. 72 at 14 ¶70; ECF No. 61-5 at 4:05–4:58, 6:20–7:48.) CPR continued until the emergency medical technicians (EMTs) arrived. (ECF No. 72 at 14 ¶71.) At 8:01 a.m., the EMTs detected a pulse; Acevedo was then transported to a hospital, but he never regained consciousness. (*Id.* at 15 ¶¶72–73.) On April 25, 2020, a week after the incident, Acevedo was pronounced brain dead. (*Id.* at 15 ¶76.)

## LEGAL STANDARD

Summary judgment is appropriate if the record shows there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must determine whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A fact is "material" if, under the governing law, it could influence the outcome of the lawsuit. *Id.* at 248; *Contreras v. City of Chicago*, 119 F.3d 1286, 1291–92 (7th Cir. 1997). A dispute over a material fact is "genuine"

only if a reasonable trier of fact could find in favor of the non-moving party on the evidence presented. *Liberty Lobby*, 477 U.S. at 248.

The moving party bears the initial burden of proving the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. Upon such a showing, the burden shifts to the opposing party to "make a showing sufficient to establish the existence of an element essential to that party's case." *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013) (quoting *Celotex*, 477 U.S. at 322). This burden is not onerous, but the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party "must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Id.* at 587 (quoting Fed. R. Civ. P. 56(e)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

If the parties assert different characterizations of the facts, the Court must view the record in the light most favorable to the non-moving party. *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000). "Although we construe all facts and make all reasonable inferences in the nonmoving party's favor, the moving party may succeed by showing an absence of evidence to support the non-moving party's claims." *Marnocha v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 986 F.3d 711, 718 (7th Cir. 2021) (quoting *Tyburski v. City of Chicago*, 964 F.3d 590, 597 (7th Cir. 2020)).

### ANALYSIS

In Counts I and III of the Amended Complaint, the Estate asserts Fourth Amendment excessive force claims against Mattioli and the City of Milwaukee under 42 U.S.C. §1983 and *Monell v. Department of Social Services*, 346 U.S. 658 (1978). (ECF No. 23 ¶¶65–83, 94–99.) Both claims require proof that Mattioli acted "under color of law" when he used force to restrain Acevedo during their altercation in Mattioli's home. *See Schertz v. Waupaca Cnty.*, 875 F.2d 578, 581 (7th Cir. 1989). Because the undisputed facts confirm that Mattioli was acting in his private capacity and not under color of state law when he used force against Acevedo, the Estate's federal claims fail as a matter of law.

An individual acts "under color of state law" for purposes of Section 1983 when he or she engages in misconduct while exercising power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988). The record confirms that, at the time of the incident, Mattioli was both employed as a Milwaukee police officer, (ECF No. 72 at 2 ¶3; ECF No. 85 ¶¶3–4), and off duty, (ECF No. 72 at 2 ¶7). Neither fact is dispositive. The Seventh Circuit has confirmed that a defendant's "mere status as a policeman" does not necessarily render his actions under color of law. *See Gibson v. City of Chicago*, 910 F.2d 1510, 1516 (7th Cir. 1990). Similarly, a defendant need not have been "actively assigned" or on duty to perform an official action under color of law. *Pickrel v. City of Springfield*, 45 F.3d 1115, 1118 (7th Cir. 1995); *see also Gibson*, 910 F.2d at 1516 n.10. Whether a defendant was acting under color of law instead depends on the nature and context of the specific acts undertaken. *Pickrel*, 45 F.3d at 1118. The defendant must undertake those actions pursuant to "the cloth of state authority." *Hughes v. Meyer*, 880 F.2d 967, 971 (7th Cir. 1989). In other words, he or she must invoke or affirmatively exercise state authority to facilitate or enable the alleged unconstitutional misconduct. *See DiDonato v. Panatera*, 24 F.4th 1156, 1161–62 (7th Cir. 2022). If the state employee does not invoke state authority to facilitate or enable misconduct, there can be no constitutional claim under Section 1983. *See id*.

Analyzing whether a state employee defendant acted under color of law is thus inherently fact-bound, but the Seventh Circuit has laid out several clear lines underpinning the analysis. In *First Midwest Bank, Guardian of Estate of LaPorta v. City of Chicago*, 988 F.3d 978 (7th Cir. 2021), the Seventh Circuit addressed similar claims against an off-duty police officer who engaged in violent conduct against a friend while at home after a night of drinking. In *LaPorta*, the defendant-officer got into a drunken altercation in his own home with his friend after a dispute involving the officer hitting his dog. *Id.* at 983. When the plaintiff yelled for him to stop and announced he was leaving, the officer shot him in the head. *Id.* Following a jury verdict in the plaintiff's favor, the Seventh Circuit vacated the judgment and remanded the case with instructions to enter judgment in favor of the defendants. *Id.* The Court of Appeals held that, based on the facts, the police officer was not acting under color of law when he shot the plaintiff. *Id.* at 987. The Court explained that because the defendant officer's actions were "wholly unconnected to his duties" as an officer and were "those of a private citizen in the course of a purely private social interaction," the defendant was entitled to judgment as a matter of law. *Id.*

In *DiDonato*, the Seventh Circuit affirmed the dismissal of constitutional claims against an off-duty paramedic, who was accused of sexually assaulting a young woman who had a medical emergency at his home. 24 F.4th at 1158. The plaintiff alleged that she had slipped, fallen, and injured her head in the bathtub of the paramedic's home. *Id.* at 1158. The defendant paramedic rinsed the blood from her head, wrapped it in a towel, and then proceeded to sexually assault her. *Id.* The Court of Appeals affirmed the district court's dismissal of the plaintiff's Fourteenth Amendment Due Process claims, concluding that the plaintiff's allegations were insufficient to support a finding that the defendant acted under color of law. *Id.* at 1161. The Court explained that the defendant's state employment as a paramedic and the "overlap" between his job responsibilities and the misconduct alleged did not support a finding that he acted under color of law. *Id.* It noted that the allegations might expose him to state law negligence liability, but the complaint did not plausibly allege that defendant's actions or inactions were a misuse of any power his city employer had bestowed upon him. *Id.* Nor did the allegations suggest that his wrongdoing was made possible because he was "clothed" with authority by virtue of state law. *Id.* The Court further explained that allegations the paramedic was "on call" at the time did not matter because the alleged misconduct was not "facilitated" by any misuse of state power and did not involve the "invocation" of any state authority. *Id.* at 1162.

In contrast to *LaPorta* and *DiDonato*, the Seventh Circuit reversed a district court's dismissal of claims against an off-duty police officer on "color of law" grounds in *Pickrel*. *See* 45 F.3d at 1118. The plaintiff in *Pickrel* alleged that she was wrongfully arrested by an off-duty police officer who worked as a part-time private security guard at a McDonald's restaurant. *Id.* at 1117. According to the complaint, the defendant approached the plaintiff and her father and threatened to arrest them if they did not leave. *Id.* When they refused his instructions, he directed the plaintiff to stand up and announced that she was "under arrest." *Id.* When she did not immediately comply, he then used force to pull her from her booth, stand her up, throw her to the ground, and put her in handcuffs until on-duty police officers took her and her father into custody. *Id.* The Seventh Circuit rejected the district court's conclusion that dismissal was appropriate simply because the officer was off-duty. *Id.* at 1118. The Court of Appeals explained that a jury could find that the defendant acted under color of law given that he was wearing his police uniform (complete with badge and gun), had parked his squad car just outside (advertising his presence as a police officer), and had actually told her he was "arresting" her for resisting a peace officer. *Id.*

at 1118–19.  These allegations were sufficient for the plaintiff to proceed with her constitutional claims past the pleading stage.  *Id.* at 1119.

Based on these principles and precedents, the Estate's constitutional claims against Mattioli fail because the undisputed facts establish that he was not acting under color of law when he fought with and subdued Acevedo while off duty in his own home on the night and early morning of April 18 and April 19, 2020.  Like the defendant in *LaPorta*, Mattioli's actions were "wholly unconnected to his duties" as an officer and were "those of a private citizen in the course of a purely private social interaction."  988 F.3d at 987.  While the fight in *LaPorta* related to a dispute over the drunken mistreatment of a pet, and the disagreement here began with a drunken quarrel over a potential theft, in both cases, the defendants were off-duty officers acting as any private citizen might within his or her own home.  Although Mattioli's conduct in physically subduing and restraining Acevedo might "overlap" with his duties as a police officer, *DiDonato* makes clear this is insufficient to show that Mattioli was acting under color of law.  24 F.4th at 1161 ("[T]he mere overlap between [] routine job responsibilities and the conduct [] complained of does not mean that [the official] acted under color of state law[.]").  Likewise, nothing in Mattioli's request that the responding officer handcuff Acevedo supports a finding that he was invoking state authority.  At most, he was asking for help in turning over a previously violent person to the police.  There is no evidence that Mattioli undertook any of his efforts "clothed" with any authority he had as a City of Milwaukee police officer.  Nor has the Estate come forward with facts indicating that Mattioli invoked his authority as a police officer in combatting or holding Acevedo down until on-duty police officers arrived to take him into custody.

In response, the Estate points out that Mattioli was wearing a t-shirt with the Milwaukee Police Department logo during the altercation.  (ECF No. 72 at 5 ¶¶24–26.)  But the shirt was not department-issued.  It was a memorial t-shirt recognizing a Milwaukee police officer who had been killed in the line of duty.  (*Id.* at 5 ¶¶26–27.)  Mattioli's wearing of such a t-shirt to bed in his own home cannot reasonably be understood to suggest that he was clothing himself with police authority when he was responded to Acevedo rummaging through his pants pockets.  No record facts suggest that Mattioli used, or that anyone in the house would have understood, the shirt to be a demonstration that Mattioli was acting under color of law.  This is a far cry from the full police uniform, including badge, gun and nearby squad car, that the Seventh Circuit held was enough, when presented in connection with the off-duty officer's announcement of an "arrest," to allow the

plaintiff in *Pickrell* to survive a motion to dismiss. The Estate has had the chance to develop the record in discovery and has presented no evidence that Mattioli's wearing of this t-shirt would have reasonably given anyone the impression he was acting as a police officer in his altercation with Acevedo.

The Estate also points to the fact that Mattioli (truthfully) relayed that he was an off-duty police officer on the 911 call and confirmed this fact to the arresting officers when they arrived. According to the Estate, these facts show that Mattioli affirmatively invoked his authority because "[r]esponding officers deferred to Mattioli's assertion of police authority rather than treating him as a private actor." (ECF No. 71 at 6–7.) The record does not support this strained characterization. Nothing in the 911 call or in the body cam footage of Mattioli's interactions with on-duty officers indicates any attempt by him to "invoke" or assert any police authority. Rather, the evidence shows that, while Mattioli informed the dispatcher that he was a police officer, Peters told responding officers that Mattioli was a police officer, and, when asked, Mattioli confirmed that fact. (ECF No. 61-5 at 3:02–3:45.) Whether responding officers treated Mattioli differently upon that knowledge does not necessarily mean that Mattioli invoked his own police authority. The Estate also insists that Mattioli's identification as an off-duty officer is material because "[a] private citizen never identifies themselves as a police officer." (ECF No. 86 at 4.) But police officers "are also private citizens," *see Lindke v. Freed*, 601 U.S. 187, 196 (2024), and, as already explained, a defendant's status as a police officer is insufficient to establish that a person acted under color of law, *Gibson*, 910 F.3d at 1516. That Mattioli found his status as an off-duty police officer to be relevant background information when talking to the 911 dispatcher does not necessarily mean he invoked his police authority.

The Estate also maintains that, during the 911 call, Mattioli requested "back up," suggesting that he was taking the lead on an official police arrest. (ECF No. 74 ¶3.) But this "fact" is not supported by the evidence. It is true that in answering the complaint, Mattioli admitted, "upon information and belief," that other officers responded to what *the Estate* characterized as "Mattioli's request for back up." (ECF Nos. 23 ¶14 & 26 ¶14.) But these are not the words that Mattioli actually used. (ECF No. 73-1 at 86:24–87:3 (confirming during Mattioli's deposition that, during the 911 call, Mattioli said "I need help"); ECF No. 61-4 at 00:15–00:25 (recording of the 911 call).) Nothing in the language Mattioli used would support a finding that he was clothing his actions in police authority or otherwise acting under color of law in connection with making

the 911 call, something that any private citizen engaged in a physical altercation with a house guest who refused to leave might do.

Finally, the Estate points to Mattioli's deposition testimony in which he admitted that while fighting with and detaining Acevedo, he went over in his mind the multiple crimes, including physical assault, robbery with the use of force, theft from a person, and property damage, he believed Acevedo had committed. (ECF No. 91 at 9 ¶33.) Mattioli's *internal* thoughts are not evidence that he clothed his actions with or invoked any state authority. As *DiDonato* makes clear, it is a defendant's affirmative statements and actions expressing the use of state power that are central to the color of law analysis. *See* 24 F.4th at 1162.[3]

In the end, none of the facts cited by the Estate, whether viewed individually or together, are sufficient for a reasonable jury to find that Mattioli acted under color of law in fighting with and restraining Acevedo. Accordingly, the Estate's federal claims against Mattioli and the City fail as a matter of law. Given the dismissal of the federal law claims, the Court will relinquish jurisdiction over the Estate's remaining state law claims. *See Davis v. Cook Cnty.*, 534 F.3d 650, 654 (7th Cir. 2008). The Court also notes that the Estate may have undercut its ability to pursue its state law claims by failing to follow state law notice requirements. (*See* ECF No. 72 ¶13; ECF No. 52 at 15–16; ECF No. 64 at 25); *see also* Wis. Stat. §893.80; *Estate of Swayzer v. Milwaukee Cnty.*, No. 16-cv-1703-bhl, 2022 WL 656884, at *21–*22 (E.D. Wis. Mar. 4, 2022). The Court will not delve into this technical state law issue, however, and will instead leave it for the state courts to address, if necessary.

---

[3] The Estate also points in passing to a *draft* Fire and Police Commission (FPC) charging document alleging a violation of FPC Department Rule 3 (Integrity), Section 3.03, which directs police officers to exercise the powers of arrest only when lawful, necessary, and proportionate. (ECF No. 71 at 4–5.) Contrary to the Estate's characterization, this document does not reflect "official" charges against Mattioli; it is a draft. (*Id.* at 5; ECF No. 84 ¶¶67–68 (citing ECF No. 73-2 (charges from June 15, 2020)); *see also* ECF No. 80-8 at 105:1–106:5 (explaining that the document issued on June 15, 2020 was a draft charging document); 109:17–110:23 (explaining that the FPC charges from July 10, 2020 were the official charges).) The record confirms the FPC did not ultimately charge Mattioli with making an arrest as a police officer or otherwise suggest he acted under color of law. (*See* ECF No. 84 ¶63; *see also* ECF No. 87-3 at 1.) And, in any event, an after-the-fact draft of potential charges does not alter the undisputed facts of the incident or retroactively imbue Mattioli's actions with police authority.

**CONCLUSION**[4]

For the reasons stated above,

**IT IS HEREBY ORDERED** that Defendant Mattioli's Motion for Summary Judgment, ECF No. 51, is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Partial Summary Judgment, ECF No. 55, is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant City of Milwaukee's Motion for Summary Judgment, ECF No. 59, is **GRANTED**.

**IT IS FURTHER ORDERED** that the two Motions in Limine, ECF Nos. 66 & 94, are **DENIED as moot**.

**IT IS FURTHER ORDERED** that Defendant City of Milwaukee's Expedited Motion for Leave to File a Reply Brief, ECF No. 88, is **GRANTED**.

Dated at Milwaukee, Wisconsin on March 16, 2026.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge

---

[4] The Court must dispose of three remaining motions: the City's unopposed motion for leave to file a late reply, (ECF No. 88), and two pending motions in limine, (ECF Nos. 66 & 94).  The motion for leave to file a reply will be granted, while the motions in limine will be denied as moot.