No. 26-1555

_____

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE SEVENTH CIRCUIT**

_____

JOSE ACEVEDO, individually, and as Special Administrator
of the ESTATE OF JOEL ACEVEDO,

Plaintiff-Appellant,

v.

MICHAEL MATTIOLI and CITY OF MILWAUKEE,

Defendant-Appellees.

_____

On Appeal from the United States District Court
for the Eastern District of Wisconsin, No. 23-cv-0489
The Honorable Brett H. Ludwig, Presiding

_____

**BRIEF OF DEFENDANT-APPELLEE CITY OF MILWAUKEE**

_____

EVAN GOYKE
City Attorney

Clint B. Muche
Assistant City Attorney for the City of Milwaukee
State Bar No. 1131629
Attorneys for Defendants-Appellants

Milwaukee City Attorney's Office
800 City Hall
200 East Wells Street
Milwaukee, WI 53202
Telephone: (414) 286-2601
Fax: (414) 286-8550

## DISCLOSURE STATEMENT

In accordance with Circuit Rule 26.1, the Defendant-Appellee City of Milwaukee submits the following:

(1)     The full name of every party that the attorney represents in the case: City of Milwaukee

(2)     The names of all law firms whose partners or associates have appeared for the parties in the case or are expected to appear for the parties in this court: MILWAUKEE CITY ATTORNEY'S OFFICE, EVAN C. GOYKE, CITY ATTORNEY, represented by Assistant City Attorney Clint B. Muche.

(3)     If the party to amicus is a corporation:

   i)     Identify all its parent corporations, if any: Not applicable.

   ii)     List any publicly held company that owns 10% or more of the parties' or amicus' stock: Not applicable.

(4)     Attorney's signature: Dated July 28, 2026

s/ Clint B. Muche
CLINT B. MUCHE
Assistant City Attorney
Wisconsin State Bar No. 1131629

Please indicate whether you are *Counsel of Record* for the above-listed parties pursuant to Circuit Rule 3(d): Yes.

Address:     200 East Wells Street
City Hall 800
Milwaukee, WI 53202
Tel: 414-286-2601
Fax: 414-286-8550
Email: cmuche@milwaukee.gov

i

# TABLE OF CONTENTS

DISCLOSURE STATEMENT ............................................................................i

TABLE OF CONTENTS.................................................................................. ii

TABLE OF AUTHORITIES ......................................................................iii-vi

JURISDICTIONAL STATEMENT ..................................................................1

STATEMENT OF THE ISSUES.......................................................................2

STATEMENT OF THE CASE .........................................................................2

SUMMARY OF ARGUMENT .........................................................................8

STANDARD OF REVIEW ..............................................................................8

ARGUMENT ...................................................................................................10

    I.  **THE UNDISPUTED FACTS SHOW THAT MATTIOLI DID NOT ACT UNDER COLOR OF LAW.**...............................................................10

        A.  Whether The Undisputed Facts Show That Mattioli Acted Under Color State Law is a Question of Law..............................................10

        B.  Plaintiff-Appellant Misidentifies Questions of Legal Significance as Questions of Fact..................................................................12

        C.  Mattioli Did Not Rely Upon or Exploit Official Authority During the Incident. ........................................................................16

        D.  Mattioli Did Not Invoke Official Authority by Word or Deed During the Incident. ....................................................................21

CONCLUSION................................................................................................29

CERTIFICATE OF SERVICE .......................................................................30

CERTIFICATE OF COMPLIANCE...............................................................31

# TABLE OF AUTHORITIES

**Cases**                                                                                       **Page**

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242, 106 S. Ct. 2505 (1986)...................................................................9

*Barnes v. City of Centralia*,
  943 F.3d 826 (7th Cir. 2019) ........................................................ 12, 18, 20-23

*Blum v. Yaretsky*,
  457 U.S. 991, 102 S. Ct. 2777 (1982)................................................................11

*Celotex Corp. v. Catrett*,
  477 U.S. 317, 106 S. Ct. 2548 (1986)..................................................................9

*CNH Indus. Am. LLC v. Jones Lang Lasalle Ams., Inc.*,
  882 F.3d 692 (7th Cir. 2018) ............................................................................18

*Contreras v. City of Chicago*,
  119 F.3d 1286 (7th Cir. 1997) ............................................................................9

*Cuyler v. Sullivan*,
  446 U.S. 335, 100 S. Ct. 1708 (1980)................................................................11

*DiDonato v. Panatera*,
  24 F.4th 1156, 1161-62 (7th Cir. 2022)................................................. 24, 26-28

*Donald v. Polk County*,
  836 F.3d 376, 379 (7th Cir. 1988) ....................................................................23

*Estate of Sims ex rel. Sims v. County of Bureau*,
  506 F.3d 509 (7th Cir. 2007) ...................................................................... 20-23

*First Midwest Bank, Guardian of Estate of LaPorta v. City of Chicago*,
  988 F.3d 978 (7th Cir. 2021) ...................................................................... 12, 26-27

*Flynn v. Consol. City of Indianapolis and Marion Cnty.*,
  148 F.4th 565 (7th Cir. 2025) .............................................................................9

*Gibson v. City of Chicago*,
  910 F.2d 1510 (7th Cir. 1990) ......................................................................13, 24

*Henry v. Hulett*,
   969 F.3d 769 (7th Cir. 2020) ....................................................................18

*Honaker v. Smith*,
   256 F.3d 477 (7th Cir. 2001) ....................................................................12

*King v. Hendricks County Comm'r*,
   954 F.3d 981 (7th Cir. 2020) ......................................................................9

*Latuszkin v. City of Chicago*,
   250 F.3d 502 (7th Cir. 2001) ..............................................................17, 24

*Linke v. Freed*,
   601 U.S. 187, 201 (2024)..........................................................................24

*Lopez v. Sherriff's of Cook Cnty.*,
   993 F.3d 981 (7th Cir. 2021) ......................................................................4

*MacKey v. Rising,*
   106 F.4th 552 (6th Cir. 2024) ..................................................................11

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574, 106 S. Ct. 1348 (1986)......................................................8, 9

*Neuens v. City of Columbus*,
   303 F.3d 667 (6th Cir. 2002) ....................................................................11

*Pickrel v. City of Springfield,*
   45 F.3d 1115 (7th Cir. 1995) ......................................................... 13, 25-26

*Platts v. Barthelemy*,
   641 F.App'x 624 (7th Cir. 2016) ..............................................................12

*Polk County v. Dodson*,
   454 U.S. 312 (1981)..................................................................................24

*Schertz v. Waupaca Cnty.*,
   875 F.2d 578, 581 (7th Cir. 1989) ............................................................23

*Silva v. Wisconsin*,
   917 F.3d 546 (7th Cir. 2019) ....................................................................10

*Spencer v. Lee*,
   864 F.2d 1376 (7th Cir. 1989) ...............................................................21

*State of Wisconsin v. Slawek*,
   114 Wis. 2d 332, 338 N.W.2d 120 (Ct. App. 1983)............................................19

*Trahanas v. Northwestern Univ.*,
   64 F.4th 842 (7th Cir. 2023) ...................................................................9

*United States v. Christian*,
   342 F.3d 744 (7th Cir. 2023) ...........................................18-19, 21-23

*United States v. Colbert*,
   172 F.3d 594 (8th Cir. 1999) ...........................................18-19, 21-23

*United States v. Tarpley*, 945 F.2d 806, 809 (5th Cir. 1991),
   *cert denied,* 504 U.S. 917, 112 S. Ct. 1960 (1992).................18-19, 21-23

*Waukegan Potawatomi Casino, LLC v. City of Waukegan*,
   128 F.4th 871 (7th Cir. 2025) ...........................................................10, 16

*West v. Atkins*,
   487 U.S. 42, 49 (1989)............................................................................24

*Williams v. State of Wisconsin*,
   45 Wis. 2d 44, 172 N.W.2d 31 (1969)................................................14

*Wilson v. Price*,
   624 F.3d 389 (7th Cir. 2010) ...............................................................11

*Yassin v. Weyker*,
   39 F.4th 1086 (8th Cir. 2022) ...............................................................11

**Federal and Relevant State Rules**

Circuit Rule 26.1 ...................................................................................i

Circuit Rule 3(d) ....................................................................................i

28 U.S.C. § 1291.....................................................................................2

28 U.S.C. § 1331.....................................................................................1

28 U.S.C. § 1343 ...........................................................................................1

28 U.S.C. § 1367 ..........................................................................................2

42 U.S.C. §1983 ............................................................... 1, 11, 19-24, 28

**Other Authorities**　　　　　　　　　　　　　　　　　　　　**Page**

5 Am. Jur. 2d *Arrest § 47* (2003) ..........................................................13

## JURISDICTIONAL STATEMENT

Plaintiff-Appellant Jose Acevedo's jurisdictional statement is not complete and correct.[1]

Plaintiff-Appellant's amended complaint asserted state and federal claims against Defendants Michael Mattioli, City of Milwaukee, Alfonso Morales, and Robert Roach. (R. 23).[2] Plaintiff-Appellant's complaint raised federal claims under the Fourth and Fourteenth Amendments (i.e., excessive force, failure-to-intervene, and *Monell* liability) pursuant to 42 U.S.C. § 1983. The district court had federal question jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331 and 1343.

Plaintiff-Appellant's amended complaint additionally raised state law claims (i.e., assault and battery, intentional infliction of emotional distress, and survivorship/wrongful death) arising from the same case or controversy. (R. 23). Defendants City of Milwaukee, Robert Roach, and Alfonso Morales filed an answer and crossclaim for declaratory judgment that Defendant Michael Mattioli did not act under color of state law or within the scope of his employment at any relevant time. (R. 28). Mattioli filed an answer to Plaintiff-Appellant's operative complaint, *see* R.

---

[1] Defendant-Appellee City of Milwaukee will refer herein to Plaintiff-Appellant Jose Acevedo as "Plaintiff-Appellant," as distinguished from his son Joel Acevedo ("Acevedo"), i.e., the decedent in the underlying incident.

[2] Citations to the record on appeal are to "R." followed by the district court docket number, and (where appropriate) a page number. Citations to the short appendix are to "SA" followed by the page number. Citations to documents filed in this appeal are to "ECF No." followed by the Seventh Circuit docket number.

26, and an answer and crossclaim against the City of Milwaukee. (R. 35). The district court had supplemental jurisdiction over these claims pursuant to 28 U.S.C. § 1367.

The district court issued an Order granting Defendants' motions for summary judgment, denying Plaintiff's motion for partial summary judgment, dismissing Plaintiff's federal claims, and relinquishing jurisdiction over Plaintiff's remaining state-law claims on March 6, 2026. (R. 97; SA 1-11) The trial court entered judgment the same day. (SA 12). The trial court issued an amended order and decision on March 16, 2026. (R. 99; SA 13-23). Plaintiff-Appellant timely appealed on March 22, 2026. (R. 100). This court has jurisdiction over Plaintiff-Appellant's appeal pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1.    Whether genuine issues of material fact precluded the trial court from ruling on the parties' cross-motions at summary judgment?

District Court Answer: No.

2.    Whether Plaintiff-Appellant identified specific acts by Mattioli plausibly demonstrating that he affirmatively invoked or misused state authority prior to or during the incident?

District Court Answer: No.

## STATEMENT OF THE CASE

### 1.    Procedural History:

Plaintiff-Appellant filed an initial complaint in the Eastern District of Wisconsin on April 14, 2023, *see* R. 1, and an amended complaint (the "operative

2

complaint") on December 21, 2023. (R. 23). The operative complaint asserts state and federal claims against Defendants Michael Mattioli, City of Milwaukee, Alfonso Morales, and Robert Roach, On January 11, 2024, Defendants City of Milwaukee, Alfonso Morales, and Robert Roach filed an Answer to plaintiff's operative complaint and crossclaim for declaratory judgment that Defendant Michael Mattioli did not act under color of state law or in the scope of his employment during the incident. (R. 28). Defendant-Appellee Michael Mattioli (Mattioli), who was represented by separate counsel throughout this litigation, filed an answer to Plaintiff-Appellant's operative complaint and an answer and crossclaim against the City of Milwaukee. (R. 4, 17-18, 25-26, and 35).

The parties filed a joint stipulation dismissing Defendants Robert Roach and Alfonso Morales with prejudice on July 24, 2025, *see* R. 50, and these defendants were terminated from this suit prior to summary judgment.

Mattioli filed a motion for summary judgment, proposed findings of fact, and brief in support in August 2025. (R. 51-52 and 68-69). The City of Milwaukee filed its motion for summary judgment, proposed findings of fact, proposed jury instructions, and brief in support on August 1, 2025. (R. 58-60, and 64). Plaintiff-Appellant cross-moved for partial summary judgment on the issues of "color of law" and "scope of employment." (R. 55-57).

3

The district court issued an Order granting summary judgment for all defendants on Plaintiff-Appellant's federal claims and relinquishing jurisdiction over Plaintiff-Appellant's state law claims on March 6, 2026, *see* R. 97 (SA 1-11), and issued an amended Order on March 16, 2026. (R. 99; SA 13-23). This appeal followed.

## 2.    Factual History:

The core facts of this incident are undisputed.[3]  On Saturday, April 18, 2020, Mattioli invited three friends, i.e., Christopher Peters, Andrew Janowski, and Joel Acevedo, to his house in Milwaukee. (R. 99, 1, 2; SA 13-14; *see also* R. 72, ¶¶ 14-15; R. 79, ¶ 8). All four men consumed alcohol and spent the night at Mattioli's house. (R. 99, 1, 2; SA 13-14; *see also* R. 72, ¶ 19; R. 79, ¶ 13). At some point, Janowksi went to sleep on a couch in the living room, Peters went to the basement, and Mattioli went to his bedroom on the second floor. (R. 99, 1, 2; SA 13-14; *see also* R. 72, ¶¶ 17, 23; R. 79, ¶ 14). It is unknown where Acevedo was, or whether he slept. (R. 99, 2; SA 14).

Early the next morning Acevedo and Mattioli began to argue in the second-floor bedroom. (R. 99, 2; SA 14; R. 72, ¶¶ 28-30; 79, ¶ 15). Mattioli told Acevedo to leave, and Acevedo began walking down the stairs with Mattioli following behind

---

[3] *See* R. 99, 2 n.2 (SA 14): "This background is derived primarily from the parties' Proposed Findings of Facts. (ECF Nos. 72, 74, 84, 85, 90 & 1). Additional details are derived from the responding officers' body camera footage, (ECF No. 61-5), which provide objective confirmation of the circumstances, *see Lopez v. Sheriff's of Cook Cnty.*, 993 F.3d 981, 985 (7th Cir. 2021)."

4

him. (R. 99, 2; SA 14; *see also* R. 72, ¶ 33-34; R. 79, ¶ 19). Mattioli repeatedly told Acevedo to leave but Acevedo refused. (R. 99, 2-3; SA 14-15; *see also* R. 72, ¶ 34, 37; R. 79, ¶ 19). Their arguing woke Janowksi and Peters. (R. 99, 2-3; SA 14-15). Janowksi heard Mattioli tell Acevedo to leave, stating "If you don't, I'm going to call the police." (R. 99, 3; SA 15).

The verbal argument escalated into a physical altercation, when Acevedo shoved Mattioli in the chest and then struck Peters in the face. (R. 99, 3; SA 15; *see also* R. 79, ¶¶ 27-28). Acevedo then fell, and Mattioli got on top of him and used his body weight to keep him down. (R. 99, 3; SA 15; *see also* R. 72, ¶ 43; R. 79, ¶ 44 (Mattioli held Acevedo down because he "didn't want him to get up and keep punching people.")).

Eventually, Mattioli and Janowski wrestled Acevedo to the kitchen floor. (R. 99, 3; SA 15; *see also* R. 72, ¶ 45; R. 79, ¶ 40). Acevedo was on his stomach with Mattioli on top of him and Janowksi laying across his legs. (R. 99, 3; SA 15; *see also* R. 72, ¶ 46, R. 79, ¶¶ 40-41). Acevedo was trying to push off the ground, but Mattioli kept pushing him back down. (R. 99, 3; SA 15).

At 7:29 a.m., Mattioli called 911 from his cell phone telling the operator, "I'm an off-duty officer, and I need help at my house." (R. 99, 3; SA 15; *see also* R. 72, ¶ 49). Acevedo, who was struggling during the call, knocked Mattioli's phone from his hand and Peters picked it up. (R. 99, 3; SA 15; *see also* R. 27 ¶¶ 60-61; R. 79, ¶

38). Peters told the operator "This man is attacking us"—meaning Mattioli, Janowksi, and himself. (R. 72, ¶ 62). Peters and Mattioli both testified that they believed Acevedo posed a continuing danger to everyone present. (R. 99, 3; SA 15). When the call ended, Peters went outside to wait for officers to arrive. (*Id.*).

Officer Robert Roach and Officer Mark Sheremeta arrived outside Mattioli's private residence around 7:38 a.m. (R. 99, 3; SA 15; *see also* 79, ¶ 49). They saw Peters outside with visible injuries to his face. (R. 72., ¶ 65). Peters told them that Acevedo was "subdued" inside, and led them to a side entrance into the kitchen. (R. 99, 3-4; SA 15-16; *see also* R. 72, ¶¶ 66-67; R. 79, ¶ 49). Peters also informed Roach that Mattioli was a police officer. (R. 99, 4; SA 16). When Roach entered Mattioli's kitchen, he saw Mattioli and Janowksi on top of Acevedo. (R. 99, 4; SA 16*see also* R. 72, ¶ 68). Acevedo was not moving at this time. (R. 99, 4; SA 16).

Roach asked who was the police officer, and Mattioli responded that he was. (*Id.*). Then Roach asked Mattioli whether Acevedo was breathing, and he (Mattioli) responded, "I don't know." (*Id.*). Roached moved closer, explaining he was "making sure [Mattioli] did not have his arm around [Acevedo's] neck," and Mattioli responded, "oh, yeah." (*Id.*). Then Mattioli moved to sit on Acevedo's back and hold his hands behind him. (*Id.*).

Roach tried to rouse Acevedo, but when he did not respond he told Mattioli to get up several times, finally commanding him, "Officer, get up." (R. 99, 4; SA

6

16). After Mattioli and Janowski got up, Roach checked Acevedo's pulse but did not find one. (*Id.*; *see also* R. 79, ¶ 51). Roach and Sheremeta then rolled Acevedo onto his back and started cardio-pulmonary resuscitation (CPR). (R. 99, 4; SA 16; *see also* R. 79, ¶ 51). Acevedo never regained consciousness; he was pronounced brain dead on April 25, 2020. (R. 99, ¶ 4; SA 16).

The parties additionally do not dispute that Mattioli held Acevedo down because "he was throwing punches at people, and I wanted to keep him on the ground so he couldn't do that anymore until the police could show up and arrest him," *see* R. 72, ¶ 54; that Mattioli never stated that Acevedo was under arrest or ordered him to stop resisting, *see id.*, ¶ 56; and that Janowksi involved himself to prevent Acevedo from harming others—but not because Mattioli directed him to do so. (*Id.*, ¶ 57). In addition, Mattioli specifically denied that he contemplated making an arrest on behalf of the City of Milwaukee during the incident. (*Id.*, ¶ 58).

The parties also agree about certain contextual facts, including that: Mattioli was employed by the City of Milwaukee as a police officer prior to the incident, *see id.*, ¶ 3; he was not scheduled for duty on either Saturday, April 18, or Sunday, April 19, 2020, *see id.*, ¶ 7; and, he wore the same t-shirt bearing police department insignia on Saturday night and during the incident the following morning. (*Id.*, ¶¶ 24-26). It is further undisputed that the Milwaukee Police Department (MPD) had

7

adopted standard operating procedures concerning arrest authority and uses of force. (R. 72, ¶¶ 79, 84 and 87; *see also* R. 61-1 and 61-2).

## SUMMARY OF ARGUMENT

Plaintiff-Appellant must establish that Mattioli acted under color of state law to prevail upon his federal claims. The ultimate question whether those undisputed facts establish that Mattioli acted "under color of state law" is a question of law. The historical facts surrounding the incident are undisputed. Because the evidentiary record lacks specific facts supporting the conclusion Mattioli invoked or misused official authority prior to or during the incident, the defendants—including the City of Milwaukee—are entitled to judgment as a matter of law on Plaintiff-Appellant's federal claims. This Court should affirm the district court's decision granting summary judgment for the defendants.

## STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a)). Put another way, "there is no genuine issue for trial," when the record as a whole could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 106 S. Ct. 1348 (1986) (internal quotation and citation omitted).

A "material" fact is one that is outcome-determinative under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505 (1986); *Contreras v. City of Chicago*, 119 F.3d 1286, 1291-92 (7th Cir. 1997) (noting that disputes about nonessential facts do not preclude entry of summary judgment). A dispute is not "genuine," unless a reasonable factfinder could find for the nonmoving party based on record as a whole. *Liberty Lobby*, 477 U.S. at 248; *Trahanas v. Northwestern Univ.*, 64 F.4th 842, 852 (7th Cir. 2023).

The moving party bears the initial burden to show the absence of any genuine issues of material fact and entitlement to judgment as a matter of law. *Anderson*, 477 U.S. at 256; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 325, 106 S. Ct. 2548 (1986) (noting the movant may meet his burden by showing "there is an absence of evidence to support the non-moving party's case."). But then it shifts: to survive summary judgment, the opposing party "must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) (emphasis original)).

The decision granting summary judgment is subject to *de novo* review. *King v. Hendricks County Comm'r*, 954 F.3d 981, 984 (7th Cir. 2020). Although the court must construe the facts in the light most favorable to the nonmovant (i.e., the Plaintiff-Appellant, herein) and draw all reasonable inferences in his favor, *see Flynn v. Consol. City of Indianapolis and Marion Cnty.*, 148 F.4th 565, 567 (7th Cir.

2025), this does not require the court to draw every conceivable inference Plaintiff-Appellant proposes. *Waukegan Potawatomi Casino, LLC v. City of Waukegan*, 128 F.4th 871, 873 (7th Cir. 2025) (citation omitted). This Court may affirm the decision below upon any basis supported by the record as a whole, provided that the issue was adequately presented before the trial court. *Id.* (citing *Silva v. Wisconsin*, 917 F.3d 546, 558 (7th Cir. 2019)).

## ARGUMENT

### I.     THE UNDISPUTED FACTS SHOW THAT MATTIOLI DID NOT ACT UNDER COLOR OF STATE LAW.

Plaintiff-Appellant advanced several arguments in support of his motion for summary judgment and/or opposition to defendants' motions for summary judgment. For the most part, he makes the same claims on appeal. He asserts that the following facts support the conclusion that Mattioli acted under color of state law: (1) he identified himself as an "off-duty officer," *see* Pl.'s Br., 11-12; (2) physically restrained Acevedo, *see id.*, 12-13; (3) made statements after-the-fact, *see id.,* 13; (4) believed that Acevedo committed crimes, *see id.*, 14; and City policymakers determined that (5) department policies applied to him, *see id.*, 15-16; and (6) the Fire and Police Commission (FPC) investigated the incident. (*Id.*, 16-18).

These factors do not establish—either individually or collectively—that Mattioli invoked or misused official authority during the incident, and as such the

10

district court correctly held that Plaintiff-Appellant failed to meet his burden to establish each essential element of his claims. This Court should affirm.

A.    **Whether The Undisputed Facts Show That Mattioli Acted Under Color of State Law is a Question of Law.**

Whether a defendant in a civil § 1983 action acted under color of state law presents a mixed question of law and fact. *MacKey v. Rising*, 106 F.4th 552, 564 (6th Cir. 2024) (citing *Neuens v. City of Columbus*, 303 F.3d 667, 670 (6th Cir. 2002). *See also Yassin v. Weyker*, 39 F.4th 1086, 1089 n.2 (8th Cir. 2022) (collecting cases). If the historical facts are established or, at least, the material facts are undisputed, the ultimate question whether those facts meet the statutory proscription "under color of state law" presents a question of law. *Yassin*, 39 F.4th at 1089-90. *See also Cuyler v. Sullivan*, 446 U.S. 335, 342, 100 S. Ct. 1708 (1980) (holding that an appellate court need not defer to a lower court's conclusion that 'state action' was not established because that determination "requires application of legal principles to the historical facts of [the] case."); *Blum v. Yaretsky*, 457 U.S. 991, 1009 n. 20, 102 S. Ct. 2777 (1982) (equating "state action" with "the 'under color of law' requirement of § 1983").

Although this Court has not had occasion to say so in so many words, its prior precedents recognize this principle. *Wilson v. Price*, 624 F.3d 389 (7th Cir. 2010), held that: "[a] state officer's conduct does not constitute acting under color of state law unless it is related in some way to the performance of the duties of the state

11

office.'" *Id.*, at 392 (quoting *Honaker v. Smith*, 256 F.3d 477, 485 (7th Cir. 2001)). And, in *Platts v. Barthelemy*, 641 F.App'x 624 (7th Cir. 2016), this Court reaffirmed that "[w]ithout evidence that the attacker used his government position and resources or purported to enforce any law, the attack was not under color of law." *Id.*, at 627. In *Barnes v. City of Centralia*, 943 F.3d 826 (7th Cir. 2019), this Court analyzed the historic facts surrounding the defendant-officer's involvement in the plaintiff's arrest and prosecution and concluded, as a matter of law, that he acted as a private citizen—not an investigating officer. *Id.*, at 831-32. Finally, in *First Midwest Bank, Guardian of Estate of LaPorta v. City of Chicago* ("*LaPorta*"), 988 F.3d 978 (7th Cir. 2021), this Court vacated the jury's verdict for the plaintiff and remanded with instructions to enter judgment for the defendant-officer because his actions were "those of a private citizen in the course of a purely private social interaction." *Id.*, at 987.

The question, whether "[a] jury could view the same record differently [than] the district court and conclude that Mattioli was not merely a private citizen," is the wrong frame. (Pl.'s Opening Br., 7). The proper questions are whether any genuine fact disputes remain for trial, and if not, whether defendants are entitled to judgment as a matter of law. The historic facts of this incident are undisputed and Plaintiff-Appellant identifies no genuine issues of material fact on appeal. This Court should affirm the judgment below granting summary judgment for the defendants.

**B.      Plaintiff-Appellant Misidentifies Questions of Legal Significance as Questions of Fact.**

The district court found that at the time of the incident Mattioli was employed as a Milwaukee police officer and off duty. (R. 99, 6; SA 18). It held that neither fact was dispositive under the circumstances. (*Id.*). Certain other contextual facts flow from the fact that Mattioli was a Milwaukee police officer at the time of the incident; Plaintiff-Appellant asserts that the district court gave these facts too little weight. (Pl.'s Opening Br., 7, 20). Because the district court acknowledged these circumstances and afforded them due weight in its legal analysis, this Court should also conclude that the defendants are entitled to summary judgment and affirm the judgment below.

Plaintiff-Appellant asserts that Mattioli admitted he was governed by MPD policy. (Pl.'s Opening Br., 7, 9). This assertion is not necessarily supported by the record as a whole, *see* ECF No. 13 ("Pl.'s App"), 22-23, and it does not have the legal significance Plaintiff-Appellant ascribes to it in any event. State and federal law recognize that a law enforcement officer has official authority "whether the officer is in or out of uniform or is officially 'on duty' or 'off duty.'" *See* 5 Am. Jur. 2d *Arrest § 47* (2003). *Compare Gibson v. City of Chicago*, 910 F.2d 1510, 1516 (7th Cir. 1990) (denying that one's "mere status as a policeman" renders all of his actions under color of state law), *with Pickrel v. City of Springfield*, 45 F.3d 1115, 1118 (7th Cir. 1995) (holding that an off-duty officer could act under color of state

law if his conduct invoked official authority). *See also Williams v. State of Wisconsin*, 45 Wis. 2d 44, 48, 172 N.W.2d 31 (1969) (holding that when an off-duty police officer happened upon a fight and intervened to break it up, "he was no longer off duty" after taking action in his official capacity).

In recognition of this, Milwaukee Police Department (MPD) Standard Operating Procedure 220 (SOP § 220) contains guidelines regarding exercising arrest authority while off-duty. (R. 73-9; Pl.'s App. 44-52). It is undisputed that SOP § 220.30 applied to Mattioli during the incident, in the sense that Mattioli was a sworn Milwaukee police officer at the time and SOP § 220, by its terms, applies to members whether on- or off-duty. Similarly, insomuch as SOP § 220.30 defines limitations and expectations with respect to exercising arrest authority <u>and</u> interacting with on-duty personnel, it is broadly true that the policy governed Mattioli's conduct during the 911 call and after Officer Roach and Officer Sheremeta arrived. Therefore, it is academic whether Mattioli "admitted" he was governed by the policy during the incident—he was (at least to some extent).

However, it does not follow that because Mattioli was subject to SOP 220.30 during the incident that he invoked official authority or made an arrest in his capacity as a Milwaukee police officer. In the same vein, that the FPC investigated the incident and proposed and adopted disciplinary charges against Mattioli arising from it does not establish that he acted under color of law during the incident. As the

14

district court correctly observed, the FPC's "after-the-fact draft of potential charges does not alter the undisputed facts of the incident or retroactively imbue Mattioli's actions with police authority." (R. 99, 10 n.3; SA 22).

Other decisionmakers' legal conclusions about Mattioli's actions are not a part of the totality of the circumstances of the incident. *Contra* Pl.'s Br., 8. Such determinations are neither binding, nor probative of the issues presented in this case. Plaintiff-Appellant asserts that its relevant that "official police oversight authorities evaluated the incident under police rules." (Pl.'s Opening Br., 17-18). That an investigation occurred is undisputed. The record lacks information about what the investigator considered or why she proposed the draft charges that she did. And, in any event, as the district court correctly found the "FPC did not ultimately charge Mattioli with making an arrest as a police officer or otherwise suggest he acted under color of law." (R. 99, 10 n.3; SA 22).

In short, neither the applicability of MPD standard operating procedures to Mattioli during the incident nor that Mattioli was investigated and subject to subsequent discipline raise genuine issues of historical fact. The fact of these matters is undisputed. What the parties dispute is whether they support a reasonable inference that Mattioli invoked police authority during the incident. Neither the applicability of department regulations, nor the fact that the FPC contemplated

15

discipline are relevant to the legal conclusion whether Mattioli invoked state authority during the incident.

Similarly, the district court engaged with Plaintiff-Appellant's argument that Mattioli claimed official authority during the 911 call by truthfully identifying himself as an off-duty police officer. (R. 99, 9-10; SA 21-22). Again, what was said is undisputed—Plaintiff-Appellant only challenges the district court's conclusion about what those words signify. Although courts must draw all ***reasonable*** inferences in the nonmovant's favor, it need not adopt every proposed inference. *Waukegan Potawatomi Casino, LLC*, 128 F.4th at 873. The district court found that "nothing in the 911 call or in the body cam[era] footage of Mattioli's interactions with on-duty officers indicates any attempt by him to 'invoke' or assert police authority." (R. 99, 9; SA 21). Because Plaintiff-Appellant's proposed inference was not supported by the record as a whole—more particularly the undisputable recordings themselves—the district court did not draw his proposed conclusion. *See id*. ("That Mattioli found his status as an off-duty police officer to be relevant background information … does not necessarily mean that he invoked his police authority."). This was legally sound and this Court should reach the same conclusion.

The district court properly weighed these facts. That Mattioli was subject to investigation and potential discipline by his employer, like the fact that he was

16

employed as a police officer, establishes nothing more than that he *could* have invoked official authority during the incident. The district court correctly observed that, as a matter of law, after-the-fact conclusions by disciplinary bodies do not alter the undisputed facts themselves or retroactively convert private action into state action. (R. 99, 10 n.3). Similarly, Mattioli's truthful statement to the 911 dispatcher that he was an off-duty police officer is merely cumulative of the undisputed fact that he possessed police authority. *Hughes v. Meyer*, 880 F.2d 967, 971 (7th Cir. 1989) (citing *Askew v. Bloemker*, 548 F.2d 673, 677 (7th Cir. 1976)) (holding that officers did not act under color of state law simply because one identified himself as a police officer during the complained of event).

The district court rightly held that Mattioli did not invoke police authority based upon his actual words and deeds, i.e., his specific acts, during the incident. *Latuszkin v. City of Chicago*, 250 F.3d 502, 505-506 (7th Cir. 2001). This Court should affirm.

### C. Mattioli Did Not Rely Upon or Exploit Official Authority During the Incident.

Plaintiff-Appellant's opening brief asserts that the district court misapplied controlling precedent because "action is taken under color of state law 'when it involves a misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" (Pl's Opening

17

Br., 19-23 (citing *Barnes*, 943 F.3d at 831)).[4] Plaintiff did not distinguish between invoking state authority and misusing state authority at summary judgment. (R. 57, 71, and 78). Similarly, he does not meaningfully develop this argument on appeal. (Pl's. Opening Br., *passim*). As such, this Court need not reach its merits. *CNH Indus. Am. LLC v. Jones Lang Lasalle Ams., Inc.*, 882 F.3d 692, 705 (7th Cir. 2018) (holding "we typically will not entertain an argument raised for the first time on appeal[.]"). Nonetheless, the City touched upon this issue below and will respond briefly here. (R. 64, 11-15; R. 83, 3-4).

Prior precedents establish that courts may find that an official acted under color of state law when their misconduct was caused or facilitated by exploiting (i.e., misusing) the state authority that he or she possessed. *See, e.g., United States v. Christian*, 342 F.3d 744, 746-752 (7th Cir. 2023) (holding that a defendant-officer acted under color of law when pursuing a personal vendetta because he was in uniform, on duty, and was aided by other officers in committing the complained of assault); *United States v. Colbert*, 172 F.3d 594, 596 (8th Cir. 1999) (finding action under color of state law by misuse of official authority where the defendant-officer used his office to gain access to a prisoner in non-public cell to commit criminal misconduct); *United States v. Tarpley*, 945 F.2d 806, 809 (5th Cir. 1991), *cert*

---

[4] When an argument is not adequately presented to the court below, this Court may be deemed it waived or forfeited on appeal. *Henry v. Hulett*, 969 F.3d 769, 785-86 (7th Cir. 2020) (stating that this Court "will not consider the merits" of legal arguments raised for the first time on appeal);

*denied,* 504 U.S. 917, 112 S. Ct. 1960 (1992) (concluding the defendant-sheriff acted under color of state law when he enlisted the aid of other deputies, assaulted his wife's former lover with his service revolver, and used a department squad car to drive his victim out of town). The remainder of this section will focus upon whether Mattioli misused his official authority; the final section will discuss whether Mattioli invoked state authority.

If this Court were to engage with the misuse-of-authority theory of liability, the undisputed facts establish that Mattioli did not exploit or rely upon official authority during the incident. Wisconsin citizens have both statutory and common law rights to act in self-defense and defense of others. (R. 64, 15). Wis. Stat. § 939.48(1) establishes a statutory privilege to use force in self-defense. This privilege also applies to defenses of others. *See* Wis. Stat. § 939.48(4). Moreover, Wisconsin courts have long-recognized its citizens possess a common law right to make a citizen's arrest. *See, e.g., State of Wisconsin v. Slawek*, 114 Wis. 2d 332, 335, 338 N.W.2d 120 (Ct. App. 1983) (citation omitted).

*Christian, Tarpley*, and *Colbert* illustrate the distinction between invoking official authority on the one hand, and misusing it on the other. In each of these cases the defendant-officer argued that there was insufficient evidence that they invoked official authority and countervailing evidence that their conduct was motivated by personal animus, but those courts ruled that their conduct was undertaken under

color of law because official authority provided the means and opportunity for their misconduct.

In the § 1983 context, this Court previously considered whether state action by misuse-of-authority occurred in *Estate of Sims ex rel. Sims v. County of Bureau*, 506 F.3d 509 (7th Cir. 2007) ("*Estate of Sims*"). That case concerned a reporter (Sims) who was investigating a local sheriff (Johnson) for alleged misconduct in office. *Id.*, 506 F.3d at 512-513. Johnson wrote a public letter falsely accusing her husband of criminal misconduct to intimidate Sims not to publish her story. *Id.* Then Johnson, who was on duty at the time, drove to Sims' home to confront her. *Id.*, at 513. This Court affirmed dismissal for failure to state a claim because the complaint allegations, even in the light most favorable to the plaintiffs, revealed that Johnson was "trying to protect a personal interest." *Id.*, at 516.

This Court's decision in *Barnes* is also helpful. In that case, a police officer (Peebles) reported that a citizen had threatened him and/or his family online. *Id.*, 943 F.3d at 829. Peebles spoke with an assistant state's attorney, who advised him that he could file a report like any private citizen. *Id.* Peebles then called a sergeant, who dispatched another officer to his house to take a report. *Id.* The plaintiff (Barnes) was subsequently arrested and charged with intimidation, but after the prosecutor's office dropped the charges, Barnes sued Peebles and the City of Centralia under 42 U.S.C. § 1983. *Id.*, at 830. After the district court granted summary judgment for the

20

defendants because Peebles was acting a private citizen when he made his report, this Court affirmed. *Id.*, at 834. The *Barnes* Court reasoned that "Peebles acted as a private citizen complaining about a purported crime, distinct and apart from his job as a police officer[,]" because he reported the incident to another officer, who exercised charging discretion, and did not influence the subsequent prosecution. *Id.*, at 831.

This case compares favorably to *Estate of Sims* and *Barnes*, and is readily distinguishable from *Christian, Tarpley*, and *Colbert*. First, it is well-established that private citizens in Wisconsin—including private citizens who happen to be employed as public officials—have statutory and common law rights to self-defense, defense of others, and to make a citizen's arrest. In *Spencer v. Lee*, 864 F.2d 1376, 1380 (7th Cir. 1989), this Court held that one "who makes a citizen's arrest is not transformed into a state actor by handing over the arrested person to the police[.]" *Id.*, at 1382.

The misuse-of-authority theory fails at the outset because none of Mattioli's conduct required official authority beyond that possessed by an ordinary citizen. Unlike the defendant-officers in *Christian, Tarpley*, and *Colbert*, Mattioli's conduct occurred inside his own private residence. Mattioli was involved in a physical struggle with Acevedo as a participant and possessed all of the rights of any private citizen under similar circumstances. *Barnes*, 943 F.3d at 831 (holding that § 1983

21

"does not cover disputes between private citizens, even if one happens to be an officer."). That he restrained Acevedo to protect himself and others did not require him to possess police powers under state law. That he called 911 and requested help does not suggest that acted differently or exercised any authority beyond that possessed by every private citizen in like circumstances. *Barnes*, 943 F.3d at 831 ("Law enforcement officers, like all other citizens, may invoke the state's protection without rendering themselves liable under § 1983."). Whereas the defendant-officers in *Christian, Tarpley*, and *Colbert* exploited their position to gain access to their victim, the same cannot be said about this case.

Second, there is no evidence that Mattioli leveraged his official position during the incident. Unlike in *Christian, Tarpley*, and *Colbert*, where the defendant-officer's misconduct was facilitated by and accomplished with the assistance of other public officials, Mattioli acted alone (at first) and (later) with the assistance of a personal friend. There is additionally no evidence that he ordered Janowksi to hold Acevedo's legs or Peters to take over the 911 call. That all three victims got involved, of their own accord, further compels the conclusion that each (including Mattioli) acted to protect his own personal interests.

In *Estate of Sims*, the plaintiffs argued that Johnson went to Sims' home to "investigate" the criminal allegations in the letter and used his official position to gain entry. *Id.*, 506 F.3d at 516. Both the district court and this Court rejected that

22

argument as implausible. *Id.* Plaintiff-Appellant here similarly suggests Mattioli switched to investigating Acevedo for potential criminal charges during the incident. (Pl.'s Opening Br., 7). But the Court need not speculate about Mattioli's thought process because he testified that making an arrest on behalf of the City of Milwaukee was not something he considered at the time. (R. 75, 7-11). The undisputed facts show that Mattioli's role was limited to reporting potential crimes to the proper authorities (as in *Barnes*), and protecting himself and others until they arrived as any private citizen may do.

This Court should affirm because Mattioli's conduct did not require official authority and state action by misuse-of-authority requires evidence that the defendant-officers' conduct was made possible by his or her official authority. This theory fails as a matter of law based upon the record as a whole and consistent with *Christian, Tarpley*, *Colbert*, and *Estate of Sims* and *Barnes*.

### D.    Mattioli Did Not Invoke Official Authority by Word or Deed During the Incident.

Counts I and III of Plaintiff-Appellant's amended complaint make claims under 42 U.S.C. § 1983 based on the Fourth Amendment against Mattioli and the City of Milwaukee respectively. (R. 99, 5; SA 17). To prevail on these claims, the Plaintiff-Appellant must demonstrate that Mattioli acted "under color of state law." *Schertz v. Waupaca Cnty.*, 875 F.2d 578, 581 (7th Cir. 1989) (citing *Donald v. Polk County*, 836 F.3d 376, 379 (7th Cir. 1988)).

23

The Supreme Court has recognized that whether a public official acts under color of state law for § 1983 purposes is a question of law. *See, e.g., Polk County v. Dodson*, 454 U.S. 312 (1981) (reversing the lower court's determination that a state-employed public defender acted under color state law for § 1983 purposes under the circumstances). And, more recently, it reaffirmed that "an official must not only have state authority—he must purport to use it" for § 1983 liability to attach. *Linke v. Freed*, 601 U.S. 187, 201 (2024).

To "purport to" is to claim, profess or give the impression of being or doing something. *See* https://www.dictionary.com/browse/purport (Last accessed July 28, 2026). Thus, whether Mattioli invoked or purported to act pursuant to state authority depends on whether his words or deeds "clothed [his conduct] with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (1989).

This Court has provided guidance for distinguishing private action from state action. Whether particular conduct constitutes state or private action depends on the "nature of the specific acts performed." *Latuszkin*, 250 F.3d at 505-506. "[S]tatus as a policeman" is necessary, but not sufficient. *Gibson*, 910 F.2d at 1516. The ultimate question is, whether the defendant-officer "invoke[d] or affirmatively exercise[d] state authority to facilitate or enable the alleged unconstitutional conduct?" *See* R. 99, 6; SA 18 (citing *DiDonato v. Panatera*, 24 F.4th 1156, 1161-62 (7th Cir. 2022)).

Plaintiff-Appellant identifies *Pickrel* as the most analogous Circuit precedent, but the undisputed facts of this case are easily distinguishable. (Pl.'s Opening Br., 20). Unlike Mattioli, the defendant-officer in *Pickrel* was in full uniform, with his gun and his badge, threatened arrest, announced the plaintiff was "under arrest," handcuffed her, and charged her with resisting a peace officer. *Id.*, 45 F.3d at 1117-19. There is no evidence that Mattioli threated to arrest Acevedo. To the contrary, the only evidence is that he threatened to call the police <u>and</u> whereas threatening to make an arrest plausibly invokes one's own authority, threatening to call the police does the opposite: it conveys that the speaker intends to summon others with authority. Likewise, there is no evidence in this case that Mattioli ever told Acevedo he was under arrest, secured him with handcuffs, or filed formal charges. In total, the only real similarity is that Mattioli, like the defendant-officer in *Pickrel*, was employed by a municipal police force but off-duty. *Id.*

*Pickrel* is a poor fit for a second reason. Whereas that case followed after the plaintiff's suit was dismissed, *see Pickrel*, 45 F.3d at 1116-17, here the district court granted summary judgment based upon the fully-developed evidentiary record. (R. 99, 5). The decision in *Pickrel* faulted the district court for holding that a plaintiff could never establish state action when the defendant-officer was off-duty, and concluded that the defendant-officer "*could* have been acting under color of state law" under the circumstances alleged. *Id.*, at 1118 (emphasis added).

Simply put, the City of Milwaukee does not and did not argue below that Mattioli could not have acted under color of law because he was off-duty—but that the record as a whole contains no evidence that he did. Similarly, the district court did not categorically conclude that Mattioli could not have acted under color of state law, but that after developing the record through discovery Plaintiff-Appellant was unable to show that Mattioli *did* invoke state authority based upon his undisputed conduct prior to and during the incident. (R. 99, 8-10; SA 20-22). As such, the district court's ruling is not in conflict with *Pickrel*.

In ruling upon the parties' cross-motions, the district court correctly applied more directly applicable Circuit precedents including *LaPorta* and *DiDonato*. Like this case, *LaPorta* arose from an act of violence committed by an off-duty police officer during a private dispute inside his own home. *Id.*, 988 F.3d at 987. In *LaPorta*, this Court held that "[the defendant-officer] was not acting under color of state law when he shot LaPorta … [because his] actions were those of a private citizen in the course of a purely private social interaction." *Id.*

The similarities between this case and *LaPorta* are obvious. Mattioli, like the defendant-officer in *LaPorta*, was off-duty and had been drinking and socializing with friends before the incident. *Id.*, at 983. In both instances, the complained of conduct took place inside the defendant-officer's private residence, began as a personal disagreement, and escalated into violence. *Id.* Although the trial court in

26

*LaPorta* denied the defendant-city's motion for summary judgment and its later motion for judgment as a matter of law, this Court reversed holding that "LaPorta suffered a common-law injury, not a constitutional one." *Id.*, at 991. Here, the district court correctly applied *LaPorta*'s holding and rationale in concluding that Mattioli likewise did not act under color of state law. (R. 99, 5; SA 17). This Court should reach the same conclusion.

The main thrust of Plaintiff-Appellant's opening brief is that Mattioli's conduct, i.e., wrestling Acevedo to the ground and holding him there until officers arrived, looks like something an officer might do while on the job. This Court addressed a similar argument in *DiDonato*, where it held that "the mere overlap between [the defendant-official's] routine job responsibilities" and the conduct complained of ***was not enough*** to establish that the defendant acted under color of law. *Id.*, 24 F.4th at 1161. The *DiDonato* Court further explained that the trial court properly analyzed the context in which the complained of conduct arose in reaching its conclusion. *Id.*, at 1161 (affirming dismissal for failure to plausibly allege state action because "the events in question all occurred in the privacy of the [defendant-official's] home and … in the context of [the parties'] personal relationship.").

Plaintiff-Appellant argues that this Court should find that Mattioli invoked official authority because he later characterized what happened as an arrest and testified that he believed that Acevedo had committed arrestable offenses. These

arguments miss the mark. Mattioli's after-the-fact characterization is fundamentally no different than the FPC's interpretation: incapable of altering the undisputed facts of the incident itself. (R. 99, 10 n.2; SA 22). Similarly, Mattioli's "*internal* thoughts are not evidence that he … invoked any state authority." (R. 99, 10; SA 22).

The argument rests upon Plaintiff-Appellant's misunderstanding about what constitutes the totality of all relevant circumstances. As discussed, *supra*, the relevant facts bearing on whether Mattioli invoked police authority during the incident are the historic facts of the incident itself. Likewise, because "invoking" official authority is akin to holding oneself out as acting pursuant to official authority, one's unspoken views do not move the needle.

In *DiDonato* this Court held that, "even if the alleged conduct resembles job-related tasks the official performs at the state's behest[,]" § 1983 liability will not lie unless the defendant-official's actions were "cloaked" with official authority. *Id.*, at 1161. That rule governs the result in this case. The district court correctly held that that the defendants were entitled to judgment as a matter of law because the undisputed facts do not plausibly support an inference that Mattioli invoked official authority during the incident—and the mere overlap between private conduct and official duties is insufficient to show action under color of state law. Consistent with *DiDonato*, this Court should affirm.

## CONCLUSION

Based on the foregoing arguments and authorities, Defendants-Appellees hereby respectfully request that Honorable Court affirm the judgment entered below.

Dated and signed at Milwaukee, Wisconsin this 28th day of July, 2026.

EVAN C. GOYKE
City Attorney

s/ Clint B. Muche
CLINT B. MUCHE
Assistant City Attorney
WI State Bar No. 1131629

*Attorneys for Defendant-Appellee*
*City of Milwaukee*

ADDRESS:
200 East Wells Street, Room 800
Milwaukee, WI 53202
Telephone: (414) 286-6192
Fax: (414) 286-8550
Email: cmuche@milwaukee.gov

29

## CERTIFICATION OF SERVICE

I hereby certify that on July 29, 2026, I electronically filed the foregoing in searchable PDF format with the Clerk of Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I further certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated and signed at Milwaukee, Wisconsin this 29th day of July, 2026.

s/Clint B. Muche_____
CLINT B. MUCHE

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32, I certify that:

This brief complies with the type-volume limitation of Cir. R. 32(c) because it contains 6,973 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Cir. R. 32(b) for a brief produced with a proportionally spaced font using the 2016 version of Microsoft Word in 14-point Times New Roman font.

Dated and signed at Milwaukee, Wisconsin this 28th day of July, 2026.

s / Clint B. Muche
CLINT B. MUCHE