No. 26-1555

UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

JOSE ACEVEDO, Individually, and as a
Special Administrator of the
ESTATE OF JOEL ACEVEDO,

               Plaintiff-Appellant,

v.

MICHAEL MATTIOLI and
CITY OF MILWAUKEE, WISCONSIN,

               Defendants-Appellees.

On Appeal from the United States District Court
For the Eastern District of Wisconsin
Case No. 23-cv-00489
The Honorable Judge Bret H. Ludwig

**BRIEF OF THE DEFENDANT-APPELLEE, MICHAEL MATTIOLI**

**WIRTH + BAYNARD**
Jasmyne M. Baynard
Attorneys for the Defendant-Appellee,
Michael Mattioli

9898 West Bluemound Road, Suite 2
Wauwatosa, Wisconsin 53226
(414) 291-7979

Save As     Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 26-1555

Short Caption: Jose Acevedo v. Michael Mattioli, et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ]     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
 Michael Mattioli
_____

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
 WIRTH + BAYNARD
_____

(3)     If the party, amicus or intervenor is a corporation:

    i)          Identify all its parent corporations, if any; and

          N/A

    ii)         list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

          N/A

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

     N/A

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

     N/A

Attorney's Signature: /s/ Jasmyne M. Baynard     Date: 07/29/2026

Attorney's Printed Name:   Jasmyne M. Baynard

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).     **Yes** [✔] **No** [ ]

Address:   9898 W Bluemound Road - Suite 2

     Wauwatosa, WI 53226

Phone Number:  (414) 291-7979     Fax Number:  N/A

E-Mail Address:  jmb@wbattys.com

rev. 12/19 AK

**TABLE OF CONTENTS**

CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

TABLE OF AUTHORITIES .................................................................................iii

JURISDICTIONAL STATEMENT......................................................................1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ...........................2

STATEMENT OF THE CASE .............................................................................2

    Factual Background............................................................................................2

    Procedural History.............................................................................................6

SUMMARY OF THE ARGUMENT.....................................................................8

STANDARD OF REVIEW ..................................................................................9

ARGUMENT .....................................................................................................10

    I.    THE COURT SHOULD AFFIRM SUMMARY JUDGMENT DISMISSING THE FEDERAL CLAIMS AGAINST MATTIOLI UPON ALL GROUNDS PRESENTED TO THE DISTRICT COURT...........................................................12

        A.  Mattioli Did Not Use Excessive Force Against Acevedo ...............................12

        B.  The Federal Claims Are Precluded by the Doctrine of Qualified Immunity....14

    II.   SUMMARY DISMISSAL OF THE STATE LAW CLAIMS AGAINST MATTIOLI IS APPROPRIATE ...........................................................................16

        A.  The District Court Did Not Abuse Its Discretion in Relinquishing Supplemental Jurisdiction ..................................................................................16

        B.  Should This Court Elect to Reach the State-Law Claims, The Claims Fail as a Matter of Law and on the Merits .........................................................17

            1.   The State Law Claims Fail to Comply with Wis. Stat. § 893.80's Notice Requirements ..................................................................................17

            2.   The State Law Claims are Precluded by State Discretionary Immunity and Privilege..............................................................................19

3.  The State Law Claims Fail on the Merits Because Mattioli Did
Not Act Intentionally.................................................................................21

CONCLUSION ........................................................................................................23

CERTIFICATE OF COMPLIANCE WITH FRAP RULE 32(a)(7), FRAP RULE 32(g),
AND CIR. R. 32(c) ..................................................................................................24

PROOF OF SERVICE .............................................................................................25

## TABLE OF AUTHORITIES

**Cases**

*Anderson v. Creighton*
   483 U.S. 635 (1987) ..................................................................................................14

*Anderson v. Liberty Lobby, Inc.*
   477 U.S. 242 (1986) ....................................................................................................9

*Avina v. Bohlen*
   882 F.3d 674 (7th Cir. 2018) ....................................................................................12

*Barnes v. City of Centralia*
   943 F.3d 826 (7th Cir. 2019) ......................................................................................8

*Baranowski v. City of Milwaukee*
   70 Wis. 2d 684 (1975) ..............................................................................................21

*Carlson v. Pepin*
   167 Wis. 2d 345 (Ct. App. 1982) ..............................................................................18

*Casteel v. Vaade*
   167 Wis. 2d 1 (1992) ................................................................................................18

*Celotex Corp. v. Catrett*
   477 U.S. 317 (1986) ...............................................................................................9, 10

*Chelios v. Heavener*
   520 F.3d 678 (7th Cir. 2008) ....................................................................................10

*Cibulka v. City of Madison*
   992 F.3d 633 (7th Cir. 2021) ...............................................................................13, 15

*Colby v. Columbia Cnty.*
   202 Wis. 2d 342 (1996) ............................................................................................18

*Cyrus v. Town of Mukwonago*
   624 F.3d 856 (7th Cir. 2010) ....................................................................................15

*de Lima Silva v. Dep't of Corr.*
   917 F.3d 546 (7th Cir. 2019) ....................................................................................11

*Ellison v. U.S. Postal Serv.*
   84 F.4th 750 (7th Cir. 2023) .....................................................................................10

*Estate of Perry v. Wenzel*
   872 F.3d 439 (7th Cir. 2017) ....................................................................................19

*Estate of Phillips v. City of Milwaukee*
   123 F.3d 586 (7th Cir. 1997) ...............................................................................13, 15

*Estate of Swayzer v. Milwaukee Cnty.*
  No. 16-cv-1703-bhl, 2022 WL 656884 (E.D. Wis. Mar. 4, 2022)....................................19

*Estate of Thomson v. Behn*
  No. 25-2827, 2026 U.S. App. LEXIS 20127 (7th Cir. July 9, 2026)..........................11, 13

*Goodman v. Nat'l Sec. Agency, Inc.*
  621 F.3d 651 (7th Cir. 2010)..................................................................................10

*Graham v. Connor*
  490 U.S. 386 (1989) .............................................................................................12

*Greenbank v. Great Am. Assurance Co.*
  47 F.4th 618 (7th Cir. 2022)..................................................................................11

*Harvey v. Town of Merrillville*
  649 F.3d 526 (7th Cir. 2011)..................................................................................17

*Horton v. Pobjecky*
  883 F.3d 941 (7th Cir. 2018).................................................................................9, 14

*King v. Hendricks Cnty. Comm'r*
  954 F.3d 981 (7th Cir. 2020)..................................................................................10

*Kofler v. Florence*
  216 Wis. 2d 41 (Ct. App. 1997) .............................................................................21

*Lodl v. Progressive N. Ins. Co.*
  2002 WI 71, 253 Wis. 2d 323, 646 N.W.2d 314........................................................20, 22

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*
  475 U.S. 574 (1986) ..............................................................................................10, 14

*Miller v. Gonzalez*
  761 F.3d 822 (7th Cir. 2014)..................................................................................15, 16

*Probst v. Winnebago Co.*
  225 Wis. 2d 753 (Ct. App. 1999) ...........................................................................18

*Redwood v. Dobson*
  476 F.3d 462 (7th Cir. 2007)..................................................................................17

*Royal v. Norris*
  776 F. App'x 354 (7th Cir. 2019) ...........................................................................16

*Scott v. Savers Prop. & Cas. Ins. Co.*
  2003 WI 60, 262 Wis. 2d 127, 663 N.W.2d 715........................................................20

*Spiegel v. Cortese*
  196 F.3d 717 (7th Cir. 1999)..................................................................................14

*Thorp v. Town of Lebanon*
  2000 WI 60, 235 Wis. 2d 610, 612 N.W.2d 59..........................................................18

*Tilmon, United States v.*
19 F.3d 1221 (7th Cir. 1994)..................................................................................13, 15

*Townsend v. Neenah Joint Sch. Dist.*
358 Wis. 2d 618 (Ct. App. 2014) .....................................................................19

*Vandervelden v. Victoria*
177 Wis. 2d 243 (Ct. App. 1993) .....................................................................20

*Willow Creek Ranch, LLC v. Town of Shelby*
2000 WI 56, 235 Wis. 2d 409, 611 N.W.2d 693...............................................20

*Williams Elecs. Games, Inc. v. Garrity*
479 F.3d 904 (7th Cir. 2007)...........................................................................10

*Wilson v. City of Milwaukee*
138 F. Supp. 2d 1126 (E.D. Wis. 2001) ......................................................19, 20

*Wirsing v. Krzeminski*
61 Wis. 2d 513 (1973)..........................................................................20, 21, 22

*Wright v. Associated Ins. Cos.*
29 F.3d 1244 (7th Cir. 1994)...........................................................................17

**Statutes**

28 U.S.C. § 1291 ...............................................................................................1

28 U.S.C. § 1331 ...............................................................................................1

28 U.S.C. § 1367(a)...........................................................................................1

28 U.S.C. § 1367(c)(3) ...............................................................................10, 16

28 U.S.C. § 1391(b) ...........................................................................................1

42 U.S.C. § 1983 .....................................................................................1, 7, 11

Wis. Stat. § 893.80(1d)..............................................................................17, 18, 19

Wis. Stat. § 939.48(1), (4).............................................................................9, 22

**Rules**

Fed. R. App. P. 28(b) .........................................................................................1

Fed. R. App. P. 32(a)(7).....................................................................................24

Fed. R. App. P. 32(g)........................................................................................24

7th Cir. R. 32(c)..............................................................................................24

Fed. R. Civ. P. 56(a)........................................................................................10

## **Other Authorities**

Wis. JI-Civil 2004 ......................................................................................21, 22

Wis. JI-Civil 2005 ...........................................................................................22

Wis. JI-Civil 2008 ................................................................................20, 21, 22

Wis. JI-Civil 2725 ...........................................................................................22

## JURISDICTIONAL STATEMENT

Plaintiff-Appellant Jose Acevedo's jurisdictional statement is not complete and correct. See Fed. R. App. P. 28(b).

The conduct alleged in the complaint occurred in Milwaukee, Wisconsin, within the Eastern District of Wisconsin, and venue vested in the District Court for the Eastern District of Wisconsin pursuant to 28 U.S.C. § 1391(b). (R. 23)

The District Court had jurisdiction over the federal claims pursuant to 28 U.S.C. § 1331 because relief was sought under 42 U.S.C. § 1983 for violations of the Fourth Amendment, and exercised supplemental jurisdiction over the related state-law claims pursuant to 28 U.S.C. § 1367(a).

Following discovery, Mattioli moved for summary judgment on the merits of the excessive-force claim, qualified immunity, causation, and the state-law claims. (R. 51–52) The City of Milwaukee separately moved for summary judgment on actions under color of law, Monell liability, scope of employment, and the state-law claims. (R. 59, 64) Plaintiff-Appellant cross-moved for partial summary judgment on the issues of color of law and scope of employment. (R. 55, 57)

On March 6, 2026, the district court entered an Order on Cross Motions for Summary Judgment granting summary judgment in favor of Mattioli and the City dismissing Plaintiff's federal claims, denying Plaintiff's motion for partial summary judgment, and relinquishing jurisdiction over the state-law claims. (R. 97) The clerk entered judgment the same day. (R. 98) On March 16, 2026, the district court entered an Amended Order on Cross Motions for Summary Judgment reaching the same disposition. (R. 99)

Plaintiff filed a timely Notice of Appeal on March 22, 2026, identifying the Order on Cross Motions for Summary Judgment, the Final Judgment, and the Amended Order on Cross Motions for Summary Judgment. (R. 100)

As it relates to Mattioli, no issues remain pending before the district court. This Court has jurisdiction over the appeal pursuant to 28 U.S.C. § 1291.

1

**STATEMENT OF THE ISSUES PRESENTED FOR REVIEW**

1.     Whether summary judgment for Mattioli should be affirmed because, regardless of whether he acted under color of law, no reasonable jury could find that his use of force in restraining Acevedo, [*an intoxicated houseguest who had assaulted another guest, held until officers summoned by Mattioli could arrive*], was objectively unreasonable under the Fourth Amendment.

2.     Alternatively, whether Mattioli is entitled to qualified immunity from claims because Plaintiff cannot identify any clearly established law that would have put Mattioli on notice that restraining Acevedo under these circumstances was unlawful.

3.     Whether the district court properly exercised its discretion in relinquishing supplemental jurisdiction over Plaintiff's state-law claims, a ruling Plaintiff does not challenge on appeal, and, alternatively, whether those claims fail on their merits should this Court choose to reach them notwithstanding that relinquishment.

**STATEMENT OF THE CASE**

This case arises out of the April 2020 death of Joel Acevedo, which occurred after an altercation in the home of off-duty Milwaukee police officer Michael Mattioli. This Statement of Facts relies primarily on the sworn testimony of those present on the early morning of the altercation.

**I.     Factual Background.**

On April 18, 2020, Mattioli hosted a social bonfire at his home that was attended by Acevedo and two other friends, Christopher Peters and Andrew Janowski. (R. 91 at 3 ¶8.) The four men spent the night drinking alcohol around the bonfire until it got too cold, at which point they went inside, talked, and played cards. (R. 91 at 3 ¶¶8–9.) Because they had been drinking, the

2

guests stayed the night in various rooms of Mattioli's home. (*Id*. at 4 ¶13.) Mattioli slept in his bedroom on the second floor. (*Id*. at 4 ¶14.) Janowski went to sleep on a couch in the living room on the main level of the house. (*Id*.) Peters went to sleep in the basement of the house. (*Id*.) It is unclear where Acevedo was or if he ever went to sleep.

In the early morning hours of April 19, 2020, Mattioli awoke to find Acevedo rummaging through his pants pockets and acting erratically. (R. 70 ¶¶15-17) Mattioli was understandably confused and concerned because Acevedo was aggressive and agitated, in a completely different state of mind from the friend with whom they had played cards hours earlier. (*Id*. ¶¶18, 25) When Mattioli asked Acevedo why he was stealing from him, Acevedo became loud, defensive, and angry. (R. 72 at 6 ¶31.) He denied stealing anything, then began taking items from his own pockets and throwing them onto Mattioli's bed. (*Id*.) Mattioli got out of bed and told Acevedo to leave. (*Id*. ¶33.) Acevedo refused, and a shouting match ensued, continuing from the second-floor bedroom down to the living room.

The commotion woke up Janowski, who was sleeping in the living room, and Peters, who was sleeping in the basement. (R. 70 ¶23) Janowski stood up from the couch but did not immediately intervene. (R. 72 ¶35.) Peters came upstairs from the basement. (*Id*. at 7 ¶36.) All witnesses confirm that Mattioli and Acevedo were screaming at each other, with Mattioli accusing Acevedo of stealing and telling him to leave the house, and Acevedo refusing to go. (*Id*. ¶37.)

Mattioli ultimately threatened to call the police if Acevedo did not leave. (*Id*. ¶38.) Acevedo then escalated the confrontation from verbal to physical. Acevedo responded by shoving Mattioli in the chest, causing him to take a step backward. (*Id*., ¶40; R. 91 at 5 ¶26.) Peters also began yelling at Acevedo, who responded by punching Peters in the face, causing him to fall back

into the adjoining kitchen. (R. 72 at 8 ¶41; R. 91 at 8 ¶¶27–28.) The force of the punch also caused Acevedo to lose his balance and fall to the ground. (R. 72 at 8 ¶¶41–42; R. 91, at 8 ¶30.)

Mattioli tried to gain control of Acevedo to stop any further violence, protect Peters, and protect himself. (R. 70 ¶ 32) Janowski was also concerned about Acevedo's large size and aggression, and, because he did not want Acevedo to hurt anyone else, attempted to assist in gaining control of Acevedo by restraining his legs. (R. 70 ¶¶ 34-35, 41) Despite these efforts, Acevedo continued to try to push off the ground, and each time, Mattioli pushed him back down. (Id. at 15 ¶43.)

At 7:29 a.m., Mattioli called 911, telling the dispatcher, "I need help." (Id. at 11 ¶36; R. 90 at 7 ¶36; R. 72 at 10 ¶49; R. 61-4 at 00:15–00:25.) He also accurately identified himself as an off-duty police officer. (R. 91 at 11 ¶36; R. 90 at 7 ¶36; R. 72 at 10 ¶49; R. 61-4 at 00:15–00:25.) During the call, Acevedo knocked the phone out of Mattioli's hand, and Peters picked up the phone to inform dispatchers that Acevedo was attacking them and urged dispatchers to send someone quickly. (R. 91 at 12 ¶38.) According to Peters and Mattioli, Acevedo continued to resist throughout the 911 call, and both believed he posed a danger to the individuals in the house. (R. 91 at 12–13 ¶¶38–39.) The 911 call lasted 3 minutes 35 seconds. (R. 61-4) When the call ended, Peters went outside to wait for officers to arrive. (R. 72 at  ¶63)

While waiting for police arrival, Acevedo appeared to calm down again, which Mattioli attributed to both his own and Acevedo's exhaustion. Mattioli and Janowski controlled Acevedo on the ground until two City of Milwaukee police officers arrived. (R. 70 ¶¶ 46, 48) While trying to maintain control of Acevedo, Mattioli used parts of his body to keep Acevedo on the ground until the police arrived. (R. 70 ¶ 48) His point of contact with Acevedo was on Acevedo's back.

Mattioli's knees and arms remained in contact with the ground. Mattioli did not lie with his entire body weight on Acevedo. (R. 70 ¶¶ 42-45)

Around 7:38 a.m., Milwaukee Police Officers Robert Roach and Mark Sheremeta arrived. (R. 91 at ¶49; R. 72 at ¶64) Peters met Roach on the sidewalk and urged the officers to hurry as he escorted them to Mattioli's side door, which led into the kitchen. (R. 61-5 at 2:38–3:34) Roach tapped Acevedo's arm and said "hello." When Acevedo did not respond, Roach told Mattioli to get up. (*Id*. at 3:58–4:05) Mattioli and Janowski got off Acevedo and stepped back. Roach checked Acevedo for a pulse but did not find one, and the officers then rolled Acevedo onto his back to start cardiopulmonary resuscitation (CPR). (R. 91 at 22 ¶51; R. 72 at 14 ¶70; R. 61-5 at 4:05–4:58, 6:20–7:48) CPR continued until the emergency medical technicians (EMTs) arrived. (R. 72 at 14 ¶71) At 8:01 a.m., the EMTs detected a pulse. Acevedo was then transported to a hospital, but he never regained consciousness. (*Id*. at 15 ¶¶72–73)

Mattioli did not observe, and was otherwise unaware, that Acevedo was experiencing any physical distress or any difficulty breathing. When Mattioli saw the responding officer start CPR on Acevedo, he was shocked. They had just been physically struggling with each other moments earlier. Mattioli did not believe that his part in the struggle in any way caused injury or harm to Acevedo that would have required medical intervention. (R. 70 ¶¶ 51-55) Mattioli never intended to hurt Acevedo, and he surely did not try to kill him. He simply acted in self-defense and to defend others from Acevedo's assault. Mattioli did not use his firearm, and he did not punch or kick or strike Acevedo. (R. 70 ¶¶ 64-68)

There is no medical evidence that Mattioli compressed Acevedo's neck. Initially, responding Officer Roach described Mattioli's position as "stacked" on top of Acevedo in what appeared to be a rear-naked chokehold. Roach later conceded that he had no way to know whether

5

Mattioli was compressing Acevedo's neck, but his off-hand description of a "chokehold" contributed to criminal charges being brought against Mattioli for first-degree reckless homicide. (R. 70 ¶ 69) That criminal case proceeded to trial in November of 2023, and Mattioli was acquitted by the jury of all charges. (*Id.* ¶ 62)

On April 25, 2020, a week after the incident, Acevedo was pronounced brain dead. (R. 72 at 15 ¶76.) Acevedo's post-mortem examination revealed a Blood Alcohol Concentration that was more than twice the State of Wisconsin's legal limit for vehicle operation, and chemistry panels were positive for cocaine in Acevedo's system. (R. 70 ¶¶ 60-61) Acevedo's health history further revealed preexisting health conditions that included a compromised respiratory system, chronic asthma exacerbated by an immunoglobulin deficiency, and obesity. (R. 70 at ¶¶57-59) Notwithstanding Acevedo's asthmatic lungs, he also smoked cigarettes. (*Id.* ¶ 58) Mattioli was unaware of Acevedo's health history and had no idea that he had used cocaine on the evening of the confrontation. (*Id.* ¶¶ 11, 59)

## II.     Procedural History.

Plaintiffs-Appellants filed the initial complaint in the United States District Court for the Eastern District of Wisconsin on April 14, 2023, alleging civil rights violations. (R. 1) The Complaint named Mattioli as a Defendant in both his individual capacity and in his former capacity as an officer with the City of Milwaukee Police Department. (*Id.*) On May 20, 2023, Mattioli, represented by separate counsel, filed a motion to stay the civil proceedings as his criminal trial stemming from the same incident was scheduled for November 6, 2023. (R.10, R. 11) The court granted Mattioli's motion and stayed the civil case until November 30, 2023.  (R. 14)

Mattioli's criminal trial proceeded as scheduled and resulted in a not-guilty verdict for Mattioli (R. 56-1 at 134) Mattioli then answered the complaint (R. 19)

Plaintiff filed an amended complaint on December 21, 2023, asserting federal claims under 42 U.S.C. § 1983 against Mattioli, City of Milwaukee, Police Chief Alfonso Morales, and Robert Roach, along with related state-law claims. (R. 23)

Mattioli, now represented by the undersigned, answered the amended complaint and filed a crossclaim against the City of Milwaukee. (R. 26) The City, Morales, and Roach answered and filed a crossclaim against Mattioli seeking a declaratory judgment that Mattioli did not act under color of state law or within the scope of his employment during the incident, which Mattioli timely answered. (R. 28)

On July 24, 2025, the parties filed a joint stipulation dismissing Roach and Morales with prejudice, and those defendants were terminated from the suit before summary judgment. (R. 50)

Following discovery, on August 1, 2025, Mattioli moved for summary judgment on the merits of the excessive-force claim, qualified immunity, causation, and the state-law claims; Mattioli took no position on whether he acted under color of law. (R. 51–52, 70) Also on August 1, 2025, the City separately moved for summary judgment on the color of law claim, Monell liability, scope of employment, and the state-law claims. (R. 58–60, 64) Plaintiff opposed both motions and cross-moved for partial summary judgment, asserting that Mattioli had acted under color of law and within the scope of his employment. (R. 55–57)

On March 6, 2026, the district court granted summary judgment for Mattioli and the City, denied Plaintiff's motion for partial summary judgment, dismissed Plaintiff's federal claims, and relinquished jurisdiction over the state-law claims. (R. 97) The clerk entered judgment the same day. (R. 98) On March 16, 2026, the district court issued an Amended Order reaching the same disposition and adding a footnote addressing the Fire and Police Commission materials. (R. 99)

Plaintiff filed a timely Notice of Appeal on March 22, 2026. (R. 100)

**SUMMARY OF THE ARGUMENT**

The district court granted summary judgment dismissing the federal claims against Mattioli after concluding that the material facts bearing on actions taken under color of law are undisputed. The court ruled that those facts established, as a matter of law, that Joel Acevedo's death occurred after he started a drunken altercation at the private residence of an off-duty Milwaukee Police officer. Where the historical facts are undisputed, whether the facts amount to action taken under "under color of state law" is a question of law for the Court. *See Barnes v. City of Centralia*, 943 F.3d 826, 831 (7th Cir. 2019). Under this Circuit's controlling precedent, Mattioli's off-duty status and private setting are not dispositive, but neither was his status as a sworn officer.

Even construing the record in the Estate's favor, the district court determined that none of the facts:  that Mattioli remained a sworn officer whom his guests recognized as such, that he accurately identified himself as off duty when he called for help, that he asked a responding officer to handcuff Acevedo, or that internal police oversight bodies later reviewed his conduct, crossed the line required by this Court's precedent for a finding that Mattioli acted under color of law. At most, the facts show status and cooperation with police who arrived after the fact; they do not show that Mattioli clothed his private restraint of Acevedo with the authority of his office. Finding that no reasonable jury could determine otherwise on this record, the district court's judgment dismissed the federal law claims against Mattioli and should now be affirmed.

And as will be discussed below, regardless of the capacity in which Mattioli was sued, the claims against Mattioli cannot survive summary judgment.

The excessive force claim fails even if the court assumes, *arguendo*, that Mattioli was acting under color of law. In defense against Acevedo's physical aggression, Mattioli acted reasonably when he used his body weight to restrain Acevedo until Milwaukee police officers

could arrive because of the danger posed by Acevedo's behavior and his aggression towards and battery of Peters and Mattioli. (R. 70 ¶¶ 20-22, 32, 39, 43-44, 67) Even if Mattioli's conduct violated Acevedo's Fourth Amendment rights, he is nevertheless entitled to qualified immunity because it was not clearly established that the actions in holding Acevedo to prevent him from further attack were unlawful.

Additionally, whether or not Mattioli was acting as a police officer or private citizen, he is entitled to summary judgment as a matter of law because Plaintiffs admittedly failed to comply with statutory notice prerequisites. Plaintiffs' state law claims alleging assault and battery and intentional infliction of emotional distress further fail as a matter of law for lack of evidence that Mattioli acted with intent to injure Acevedo. Finally, if this court evaluates the merits of Plaintiffs' state-law claims, summary judgment should be granted on the assault and battery claims because Plaintiffs cannot overcome Mattioli's statutory privilege (in his capacity as a police officer or private citizen) to act in self-defense and defense of others under Wis. Stat. § 939.48 (1) and (4).

## STANDARD OF REVIEW

This Court reviews a district court's grant of summary judgment de novo, construing the facts and drawing reasonable inferences in favor of the nonmovant. *Horton v. Pobjecky*, 883 F.3d 941, 948 (7th Cir. 2018). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute exists only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Because the parties filed cross-motions for summary judgment, this Court's review carries two distinct postures. In reviewing the grants of summary judgment for Mattioli and the City, the

9

Court draws all reasonable inferences in the Estate's favor. In reviewing the denial of the Estate's motion for partial summary judgment on color of law, the Court draws all reasonable inferences in the City's and Mattioli's favor. *See Ellison v. U.S. Postal Serv.*, 84 F.4th 750, 755 (7th Cir. 2023).

The moving party bears the initial burden of showing the absence of a genuine dispute of material fact, which it may discharge by showing "there is an absence of evidence to support the nonmoving party's case." *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008) (quoting *Celotex*, 477 U.S. at 323). The nonmoving party must then "come forward with specific facts demonstrating that there is a genuine issue for trial." *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Finally, because review is *de novo*, this Court may affirm summary judgment on any ground supported by the record, even one the district court did not rely on, so long as it was adequately presented below. *King v. Hendricks Cnty. Comm'r*, 954 F.3d 981, 983–84 (7th Cir. 2020); *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 656 (7th Cir. 2010).

Separately, the district court's decision to relinquish supplemental jurisdiction over Plaintiff's state-law claims under 28 U.S.C. § 1367(c)(3) is reviewed only for abuse of discretion. *Williams Elecs. Games, Inc. v. Garrity*, 479 F.3d 904, 906–07 (7th Cir. 2007).

## ARGUMENT

Regardless of how pled, most of the Plaintiffs' claims rely upon their assertion of Mattioli's status as an employee of the Milwaukee Police Department (MPD) and that his actions on April 19, 2020, were taken "under color of law." (R. 23, at 10-12) The district court disagreed, concluding that "Mattioli was acting as a private citizen in connection with the incident, and not under color of law, thus precluding any alleged constitutional violation." See (A-013-14, 017-022. The district court went on to explain that "none of the facts cited by the Estate, whether viewed

individually or together, are sufficient for a reasonable jury to find that Mattioli acted under color of law in fighting with and restraining Acevedo." (A-022).

Appellee-Mattioli understands the application of the district court's ruling that he was acting as a private citizen, thus not susceptible to suit under 42 U.S.C. § 1983, and without waiving the ability to challenge any matter that may be remanded to the district, takes no position on that element of the appeal in this response.

The district court did not directly address Mattioli's summary judgment arguments that— regardless of whether he was acting under color of law—he was nonetheless entitled to dismissal of the excessive force claims against him on the merits and under the doctrine of qualified immunity. (A-022; see R. 52, at 9-14) In this *de novo* appeal, Mattioli reiterates his arguments as an alternative basis for dismissal of the claims against him.

Plaintiffs-Appellant's brief fails to address the merits of dismissal against Mattioli, beyond an underdeveloped conclusion paragraph. (Appellants Brief at 24). The Seventh Circuit has "made clear that perfunctory and underdeveloped arguments, and arguments that are unsupported by pertinent authority are waived." See *Greenbank v. Great Am. Assurance Co.*, 47 F.4th 618 (7th Cir. 2022).  Even if this court finds that the Plaintiffs'-Appellants' failure to develop arguments against dismissal of Mattioli does not constitute waiver, Mattioli requests that this court affirm dismissal of the claims against him upon the merits of the summary judgment grounds that he raised and the parties briefed in the district court. See *Est. of Thomson v. Behn*, No. 25-2827, 2026 U.S. App. LEXIS 20127, * 22 (7th Cir. July 9, 2026) ("Though the district court didn't address qualified immunity for the excessive force claims, we also affirm on this ground."); citing e.g. *de Lima Silva v. Dep't of Corr.*, 917 F.3d 546, 558 (7th Cir. 2019) ("We may affirm the grant of

summary judgment on any ground supported by the record, as long as the parties adequately presented the issue).  *See generally* (R. 52, at 6-23; R. 78, at 5-8, 12-30; R. 92, at 6-16)

**I.     THE COURT SHOULD AFFIRM SUMMARY JUDGMENT DISMISSING THE FEDERAL CLAIMS AGAINST MATTIOLI UPON ALL GROUNDS PRESENTED TO THE DISTRICT COURT.**

**A.     Mattioli Did Not Use Excessive Force Against Acevedo.**

Regardless of whether Mattioli acted under color of law, Plaintiff's excessive-force claim fails on the merits. Fourth Amendment excessive-force claims are governed by an objective-reasonableness standard that balances the nature and quality of the intrusion against the governmental interests at stake, considering the severity of the underlying conduct, whether the subject poses an immediate threat, and whether he is actively resisting. *Graham v. Connor*, 490 U.S. 386, 396 (1989). When analyzing these claims under the  objective reasonableness standard, this court must adopt "the perspective of a reasonable officer under the circumstances, rather than examining the officer's actions in hindsight." *Avina v. Bohlen,* 882 F.3d 674, 678 (7th Cir. 2018) (citation modified). While juries resolve disputed facts, the ultimate question of objective reasonableness is a legal one for the court. *Phillips v. Cmty. Ins. Corp.*, 678 F.3d 513, 520 (7th Cir. 2012). As the court explained in *Phillips*, "a constitutional tort is not 'an analog of civil negligence.'" *Id*.

The undisputed facts establish that Acevedo, intoxicated, agitated, and having already shoved Mattioli and punched Peters hard enough to knock himself to the ground, continued to physically resist restraint even after Mattioli and Janowski brought him to the ground. Mattioli did not strike, kick, or use any weapon against Acevedo. (R. 70 ¶¶ 65-66) He used only his body weight and positioning to keep Acevedo restrained while Peters summoned police, precisely the kind of measured, bounded response this Court has held reasonable when a suspect is actively

resisting. *See United States v. Tilmon*, 19 F.3d 1221, 1228 (7th Cir. 1994) (bringing a dangerous suspect to the ground is often the safest available option). This Court reached the same conclusion where officers held a combative, distressed man on the ground with a knee and a hobble restraint until his resistance stopped — holding such a response objectively reasonable given the continued, escalating resistance. *Estate of Phillips v. City of Milwaukee*, 123 F.3d 586, 593–94 (7th Cir. 1997).

And more recently, in *Estate of Thomson v. Thomas Behn et al.*, this court found that officers did not use excessive force when restraining an agitated and combative recently discharged hospital patient, explaining:

> As Thomson struggled, Officer O'Donnell then pinned him to the wall, took him to the ground, and held him down while trying to handcuff him. That wasn't unreasonable, either. See *Cibulka v. City of Madison*, 992 F.3d 633, 640 (7th Cir. 2021) (finding the practice of taking a resisting subject to the ground a "routine police activity"). Because Thomson wasn't complying, Officer O'Donnell (and later, the officers assisting him) were entitled to use more force to subdue Thomson. See *Est. of Phillips v. City of Milwaukee*, 123 F.3d 586, 593 (7th Cir. 1997) ("Authorities must be allowed to graduate their response to the demands of any particular situation.").

*Est. of Thomson v. Behn*, No. 25-2827, 2026 U.S. App. LEXIS 20127, at *1 (7th Cir. July 9, 2026)(citations in original). Here too, the minimal force used by Mattioli to restrain Acevedo was a constitutionally permissible response to his continued and escalating resistance. As in *Estate of Phillips* and *Estate of Thomson*, Mattioli wrestled with Acevedo, finally was able to get him on the ground in a prone position, and with the assistance of his friend, held him there while waiting for the police to respond. And just as in *Estate of Phillips* and *Estate of Thomson*, each of those actions was reasonable under the Fourth Amendment.

The fact that the district court identified whether Mattioli's positioning constituted a "chokehold" as disputed does not preclude summary judgment. (A-015) The only support for that characterization was Officer Roach's initial, in-the-moment impression that Mattioli appeared

"stacked" on Acevedo, an impression Roach himself later acknowledged he had no way to substantiate. (R. 70 ¶ 69; R. 54-5 at 9:8-24, 13:4-16, 25:19-22) No medical evidence in this record establishes that Mattioli compressed Acevedo's airway, and a single hedged lay impression, unsupported by medical evidence and contradicted by the officer's own concession, is not the kind of "specific fact" that creates a genuine issue for trial. *Matsushita*, 475 U.S. at 587. Nor does it change the reasonableness calculus: Mattioli's arm remained positioned near, not intentionally around, Acevedo's neck, while restraining him through his continued physical resistance until Acevedo calmed down as police arrived. (SA-012; R. 56-1 at 106-107)

**B.      The Federal Claims Are Precluded by the Doctrine of Qualified Immunity.**

*If* Mattioli is found to have acted under color of law, and *if* the Estate could establish that Mattioli used objectively unreasonable force, he would nonetheless be entitled to qualified immunity from suit.

Qualified immunity shields officers from suit unless their conduct violated a constitutional right that was clearly established at the time, such that a reasonable officer would have understood the conduct to be unlawful. *Anderson v. Creighton*, 483 U.S. 635, 640–41 (1987). The qualified-immunity inquiry is a question of law properly resolved at summary judgment. *Horton v. Pobjecky*, 883 F.3d 941, 950 (7th Cir. 2018).

When qualified immunity is available to the defendants in a § 1983 suit, it is the plaintiff who has the burden to overcome that defense. *Spiegel v. Cortese*, 196 F.3d 717, 723 (7th Cir. 1999). To overcome qualified immunity in an excessive-force case, the Estate must: (i) identify a closely

analogous case establishing a right to be free from the type of force used or (ii) show that the force "was so plainly excessive that, as an objective matter, the police officers would have been on notice

14

that they were violating the Fourth Amendment." *Cibulka*, 992 F.3d at 639 (citation modified). **Plaintiff cannot make either showing here.**

Far from establishing that Mattioli's restraint of Acevedo was clearly unlawful, this Court's own precedent points the opposite direction: in circumstances closely resembling ours, restraining a resisting, combative individual in a prone position, even though the restrained person later died, in part from undisclosed underlying health conditions, has been held objectively reasonable as a matter of law. *Estate of Phillips*, 123 F.3d at 593–94; *Tilmon*, 19 F.3d at 1228. Plaintiffs identify no case, from this Court or otherwise, holding that a private citizen who restrains a physically aggressive, resisting houseguest until police arrived, without striking, kicking, or using a weapon, violates the Fourth Amendment. Nor was Mattioli's conduct so obviously excessive as to place any reasonable person on notice of unlawfulness: he used only body weight and positioning against a subject who never stopped resisting and had already assaulted two people. (SA-012; R 56-1 at 106-107)

In the district court, Plaintiffs responded to Mattioli's invocation of qualified immunity by arguing that it was clearly established by April of 2020 that the use of neck restraints or maintaining a prone, body weight restraint on a subdued person violates the Fourth Amendment. (R. 78 at 18-20). Plaintiffs only cited two cases in support of that argument—C*yrus v. Town of Mukwonago*, 624 F.3d 856 (7th Cir. 2010) and *Miller v. Gonzalez*, 761 F.3d 822 (7th Cir. 2014).

In *Cyrus*, the suspect plaintiff was neither armed nor violent when he "did not immediately comply" with requests to show his hands, resulting in officers tasing him a disputed five to twelve times. 624 F.3d at 860.

In *Miller*, at the conclusion of a foot pursuit, the suspect was lying prone on the ground in a yard when a police officer jumped over a nearby fence, landed on the suspect's head, and broke the suspect's jaw. 761 F.3d at 825.

While using disproportionate force against a non-resistive subject may be unreasonable—as cited above—that is not what occurred in our case. None of the cases cited by Plaintiffs "squarely governs" the specific facts at issue here. As a result, Plaintiffs cannot meet their burden of showing the Mattioli was on notice that using his body weight to attempt to gain control during a violent struggle with Acevedo violated a clearly established right. "Qualified immunity attaches unless not even one reasonable officer, placed in the defendants' shoes, would have thought that her conduct was lawful." *Royal v. Norris*, 776 F. App'x 354, 358 (7th Cir. 2019). Thus, summary judgment on this ground would be independently warranted even if this Court disagreed with the analysis in Section I. A. above; Mattioli did not use excessive force against Acevedo.

## II. SUMMARY DISMISSAL OF THE STATE LAW CLAIMS AGAINST MATTIOLI IS APPROPRIATE.

### A. The District Court Did Not Abuse Its Discretion in Relinquishing Supplemental Jurisdiction.

Appellants do not challenge the district court's decision to relinquish supplemental jurisdiction over the state-law claims. Appellant's brief argues that ruling should be a matter revisited by the district court on remand if this Court reverses the ruling on "color of law," not as an issue this Court need decide now. (Appellant's Br. at 24). That concession is well taken: the district court did not decide the state law claims on their merits. Having dismissed the Estate's federal claims, the court declined to exercise supplemental jurisdiction over the remaining state-law claims under 28 U.S.C. § 1367(c)(3), expressly reserving the notice-of-claim failure as an issue for evaluation by the state courts. (A-010, A-023)

That unchallenged, discretionary decision was correct in any event. It reflects the ordinary and expected practice in this Circuit: where a district court dismisses all claims over which it has original jurisdiction before trial, relinquishing jurisdiction over the remaining state-law claims is the norm, not the exception. *Harvey v. Town of Merrillville*, 649 F.3d 526, 533 (7th Cir. 2011); *Redwood v. Dobson*, 476 F.3d 462, 467 (7th Cir. 2007); *see also Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251 (7th Cir. 1994). This Court should affirm that disposition regardless of how it resolves the federal issues raised above.

**B.      Should This Court Elect to Reach the State-Law Claims, The Claims Fail as a Matter of Law and On The Merits.**

If this Court elects *de novo* resolution of Mattioli's motion for summary judgment of the state-law claims against him, dismissal is warranted regardless of whether Mattioli is deemed to have acted under color of law. If Mattioli is alleged to have acted under color of law, Plaintiffs' state law claims fail on the merits for failure to comply with statutory requirements and are further barred by discretionary immunity.   Alternatively, if the district court is correct in its conclusion that Mattioli was acting as a private citizen,  Plaintiffs' state law claims fail on the merits because Mattioli did not act to intentionally injure Acevedo. Finally, Plaintiffs cannot overcome Mattioli's statutory privilege (in his capacity as a police officer or private citizen) to act in self-defense and defense of others.

**1.      The State Law Claims Fail to Comply with Wis. Stat. § 893.80's Notice Requirements.**

To the extent that Mattioli is alleged to have acted within the scope of his municipal employment, the state law claims must be dismissed for Plaintiffs'/Appellants' failure to comply with the notice provisions of § 893.80(1d) of the Wisconsin Statutes.

17

As a prerequisite to bringing any state law claims against a governmental body or its employees, Wis. Stat. § 893.80(1d)(a) requires that a written notice of circumstances be **served upon the officer and his employer** within 120 days after the event giving rise to the claim (emphasis added). The written notice must identify the circumstances that give rise to the claim. *Probst v. Winnebago Co.*, 225 Wis. 2d 753, 593 N.W.2d 478 (Ct. App. 1999). The 120-day period commences from the happening of the event forming the basis of the claim. *Carlson v. Pepin*, 167 Wis. 2d 345, 355, 481 N.W.2d (Ct. App. 1982).

Dispositively, Wis Stat. § 893.80(1d)(b) also requires a party to serve a separate written claim that includes an itemized statement of the relief sought. *Thorp v. Town of Lebanon*, 2000 WI 60, ¶ 28, 235 Wis. 2d 610, 612 N.W.2d 59. Compliance with both statutes is required to permit the municipality and its employees to investigate the claim and evaluate pre-suit resolution.

A state law lawsuit can only proceed after the timely written notice under sub. (1d)(a) has been submitted, after a written claim/itemization under sub. (1d)(b) has been served, and after the municipality has disallowed the claim by formal notice or the passage of 120 days. *Colby v. Columbia Cnty.*, 202 Wis. 2d 342, 550 N.W.2d 126 (1996). "Failure to comply with the statute constitutes grounds for dismissal of the action." *Casteel v. Vaade,* 167 Wis. 2d 1, 10, 481 N.W.2d 277 (1992).

Because the incident occurred on April 19, 2020, the Estate was required to serve Mattioli and his employer with a written notice of the circumstances by August 17, 2020 (within 120 days). Plaintiffs failed to do so, and Mattioli's affirmative defense put Plaintiffs on notice of this fatal error. (R. 26 at 14)

Plaintiffs concede that they failed to satisfy the requirements under § 893.80 (1d) (1d)(a) and (b). See (R. 78 at 23-24). Indeed, the District Court expressly noted "that the Estate may have

18

undercut its ability to pursue its state law claims by failing to follow state law notice requirements."

(A-022)

Plaintiffs cannot resurrect any state law claim by alleging the City of Milwaukee had "actual notice" of the claim, an argument rejected in the *Estate of Swayzer v. Milwaukee Cnty.*, No. 16-cv-1703-bhl, 2022 U.S. Dist. LEXIS 38326, 2022 WL 656884, at \*21-\*22 (E.D. Wis. Mar. 4, 2022). There, the court found the failure to comply with §893.80(1d)(b) – the service of an itemized claim for damages - required dismissal of the state law claims:

> Plaintiffs' fourth argument is that, because Defendants had actual notice of the state law claims, §893.80 has been satisfied. This argument conflates and misunderstands the legal differences between §§893.80(1d)(a) and 893.80(1d)(b).

*Estate of Swayzer*, at \*21-\*22. Under Wisconsin law, actual knowledge and lack of prejudice are sufficient to satisfy the former, but not the latter. *Est. of Swayzer*, at \*71-73, citing *Townsend v. Neenah Joint School Dist.*, 358 Wis. 2d 618, 634, 856 N.W.2d 644 (Ct. App. 2014)("actual notice and lack of prejudice are an alternative to the written notice for sub sec. (a) but not for sub sec. (b)") (citing §893.80(1d)). Given Plaintiffs' conceded failure to serve Mattioli with the statutory notices of circumstance and of claim, all state law claims against Mattioli must be dismissed.

### 2. The State Law Claims are Precluded by State Discretionary Immunity and Privilege.

To the extent that Mattioli is alleged to have acted within the scope of his municipal employment, and Plaintiff's failing to comply with statutory prerequisites is forgiven, the state law claims are barred by discretionary act immunity.

Governmental immunity under Wisconsin law is "extremely broad." *Estate of Perry v. Wenzel*, 872 F.3d 439, 463 (7th Cir. 2017). Under Wisconsin law, both public officers or employees and the governmental entities that employ them "enjoy immunity from liability for injuries resulting from the performance of any discretionary act within the scope of their

governmental employment." *Wilson v. City of Milwaukee*, 138 F.Supp.2d 1126, 1130 (E.D. Wis. 2001). The discretionary immunity analysis assumes negligence and "focus[es] instead on whether the municipal action (or inaction) upon which liability is premised is entitled to immunity under the statute, and if so, whether one of the judicially created exceptions to immunity applies." *Lodl v. Progressive N. Ins. Co.*, 2002 WI 71, ¶ 17, 253 Wis. 2d 323, 646 N.W.2d 314.

A discretionary act involves the "exercise of judgment in the application of a rule to specific facts." *Willow Creek Ranch, LLC v. Town of Shelby*, 2000 WI 56, ¶ 25, 235 Wis. 2d 409, 611 N.W.2d 693. "[M]any governmental actions, even those done under a legal obligation, qualify as discretionary because they implicate some discretion." *Scott v. Savers Property and Cas. Ins. Co.*, 2003 WI 60, ¶ 28, 262 Wis. 2d 127, 663 N.W.2d 715 (emphasis added).

In Wisconsin, civil battery is an intentional tort and Plaintiffs would have to prove the following elements: (1) there was an unlawful use of force or violence upon another; (2) the direction of such force or violence at the person of another was intentional; and (3) the bodily harm sustained on the part of the person against whom such force or violence is directed. *Vandervelden v. Victoria*, 177 Wis. 2d 243, 249, 502 N.W.2d 276 (Ct. App. 1993). For police officers, Wisconsin law requires the proof of different elements for a claim that the law enforcement officer's use of force was in the exercise of his or her duties. See *Wirsing v. Krzeminski*, 61 Wis. 2d 513, 519, 213 N.W.2d 37 (1973); see also Wis JI-Civil 2008, Comment ("In *Wirsing*, the court specifically recognized that a police officer's liabilities for a battery are founded on legal and policy considerations that are distinguishable from those in an ordinary battery case.").

Law enforcement officers have a privilege under state law to use physical force that is reasonably necessary to effect an arrest, for self-defense, to protect public interest and safety, and/or maintain the peace. *Wirsing*, 61 Wis. 2d at 519-21. Notably, "a police officer in the exercise

of his duties is privileged to use whatever force is reasonably necessary, and only if more force than is reasonably necessary is used does it constitute assault and battery." *Wirsing*, 61 Wis. 2d at 521; see also *Kofler v. Florence*, 216 Wis. 2d 41, 45, 573 N.W.2d 568 (Ct. App. 1997) (noting that a law enforcement officer has a "limited privilege to engage in civil battery"). As the Wisconsin Supreme Court has stated:

> The defense to the alleged . . . battery is privilege. That is to say, a law enforcement officer is cloaked with a legal privilege to commit acts that would otherwise constitute an intentional tort if he acts within the scope of his authority and uses only such force as is reasonably necessary to accomplish his legally authorized purpose.

*Baranowski v. City of Milwaukee*, 70 Wis.2d 684, 688, 235 N.W.2d 279 (1975). Further, a plaintiff must also establish that the law enforcement officer had the requisite intent that his conduct be battery to prevail on a state law excessive force claim. *Kofler*, 216 Wis. 2d at 45; Wis. JI-Civil 2004, Wis. JI-Civil 2008.

In the present case, if Mattioli was acting as a police officer, he did not exceed his legal privilege under Wisconsin law to use physical force that was reasonably necessary to effect an arrest, for self-defense, to protect public interest and safety, and/or maintain the peace. As above, Plaintiffs cannot establish that Mattioli used improper force against Acevedo at all. But even if they could, Acevedo's death was not the intent of Mattioli but, instead, an accidental and unintended consequence of otherwise constitutionally appropriate force. Mattioli would be protected from state liability by the operation of privilege.

### 3.    The State Law Claims Fail on the Merits Because Mattioli Did Not Act Intentionally.

Plaintiffs' state law claims alleging assault and battery and intentional infliction of emotional distress all require proof that Mattioli acted to intentionally harm Acevedo. There is no evidence to support such a finding, and thus the state law claims fail as a matter of law.

21

Under Wisconsin law, assault and battery require a non-privileged act which is meant to intentionally cause harm. Wis. JI-Civil 2004 (assault); Wis. JI-Civil 2005 (battery); Wis. JI-Civil 2008 (battery: excessive force in arrest). Similarly, the Estate's claim for infliction of emotional distress also requires proof that Mattioli intended the specific harm of emotional distress to Acevedo. See Wis JI—Civil 2725 (intentional infliction of emotional distress).

There is no evidence of such purpose on the part of Mattioli here. The undisputed facts in this case demonstrate that Mattioli did not intend to cause any harm to Acevedo and that he only intended to briefly restrain him to prevent further injury to himself and others while help was on the way. (R. 70 ¶¶ 64-68; R. 56-1 at 85, 166) Plaintiffs cannot satisfy their burden by arguing that Mattioli intended to act; they must instead prove that Mattioli intended to cause Acevedo physical and emotional harm. No witness in this case supports such an allegation. On April 19, 2020, Mattioli did not act with an intent to cause Acevedo either physical or emotional distress; he acted in defense of himself and Peters. (R. 70 ¶¶ 64-68,70-71)

Independently, Mattioli's conduct is protected by Wisconsin's privilege to use reasonable force in self-defense and defense of others, Wis. Stat. § 939.48(1), and, to the extent his conduct is treated as that of a police officer, by discretionary-act immunity for the manner in which an officer effectuates a restraint or arrest. *Lodl v. Progressive N. Ins. Co.*, 2002 WI 71, ¶ 17, 253 Wis. 2d 323, 646 N.W.2d 314; *Wirsing v. Krzeminski*, 61 Wis. 2d 513, 519–21, 213 N.W.2d 37 (1973). The undisputed facts establish that Acevedo was the initial physical aggressor; he shoved Mattioli and punched Peters before any physical response, and that Mattioli's subsequent restraint was directed at ending that aggression, not causing injury. Under either theory, Plaintiff cannot establish the intentional, non-privileged conduct Wisconsin law requires for assault, battery, or intentional infliction of emotional distress.

22

## CONCLUSION

For the reasons stated above, the defendants request that this court affirm the district court and additionally affirm summary judgment in favor of Michael Mattioli on additional grounds.

Respectfully submitted this 29th day of July 2026.

<div style="margin-left: 50%;">

WIRTH + BAYNARD
Attorneys for Defendant-Appellee,
Michael Mattioli

By:    /s/ *Jasmyne M. Baynard*
Jasmyne M. Baynard
WI State Bar No. 1099898
9898 West Bluemound Road
Wauwatosa, WI 53226
Telephone: (414) 291-7979
jmb@wbattys.com

</div>

## CERTIFICATE OF COMPLIANCE WITH
## FRAP RULE 32(a)(7), FRAP RULE 32(g) and CR 32(c)

The undersigned counsel of record for Defendant-Appellee Michael Mattioli furnishes the following in compliance with F.R.A.P. Rule 32(a)(7):

I hereby certify that this brief conforms to the rules contained in F.R.A.P Rule 32(a)(7) for a brief produced with a proportionally spaced font. The length of this brief is 7,145 words.

Respectfully submitted this 29th day of July 2026.

> WIRTH + BAYNARD
> Attorneys for Defendant-Appellee
> Michael Mattioli
>
> By:    /s/ *Jasmyne M. Baynard*
>         Jasmyne M. Baynard
>         WI State Bar No. 1099898
>         9898 West Bluemound Road
>         Wauwatosa, WI 53226
>         Telephone: (414) 291-7979

**PROOF OF SERVICE**

The undersigned, counsel for the Defendant-Appellee Michael Mattioli, hereby certifies that on July 29, 2026, I electronically filed Defendant-Appellee's Brief with the Clerk of Court of the Court for the United States Court of Appeals for the Seventh Circuit and to counsel for Plaintiff-Appellant, B'Ivory LaMarr, Devon M. Jacob, and Benjamin L. Crump, and counsel for Defendant-Appellee City of Milwaukee, Clint B. Muche, using the CM/ECF system.

Dated this 29th day of July 2026.

<div style="text-align:right">

WIRTH + BAYNARD
Attorneys for Defendant-Appellee,
Michael Mattioli

By:    /s/ *Jasmyne M. Baynard*
Jasmyne M. Baynard
WI State Bar No. 1099898
9898 West Bluemound Road
Wauwatosa, WI  53226
Telephone: (414) 291-7979

</div>