**No. 26-1555**

**UNITED STATES COURT OF APPEALS**
**FOR THE SEVENTH CIRCUIT**

JOSE ACEVEDO, individually, and as a
Special Administrator of the
ESTATE OF JOEL ACEVEDO,

*Plaintiff-Appellant,*

v.

MICHAEL MATTIOLI and
CITY OF MILWAUKEE, WISCONSIN,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Eastern District of Wisconsin, No. 23-cv-00489
The Honorable Brett H. Ludwig, District Judge

# REPLY BRIEF OF PLAINTIFF-APPELLANT

**The LaMarr Firm, PLLC**
B'Ivory LaMarr, Bar No. 1122469
5718 Westheimer Rd., Suite 1000
Houston, TX 77057
(800) 679-4600, ext. 700
blamarr@bivorylamarr.com

**Jacob Litigation, Inc.**
Devon M. Jacob, Pa. Bar No. 89182
P.O. Box 837
Mechanicsburg, PA 17055-0837
(717) 796-7733
djacob@jacoblitigation.com

**Ben Crump Law, PLLC**
Benjamin L. Crump, D.C. Bar No. 1552623
122 S. Calhoun Street
Tallahassee, FL 32301
(800) 959-1444
court@bencrump.com

*Attorneys for the Plaintiff-Appellant, Jose Acevedo, individually, and as a Special Administrator of the Estate of Joel Acevedo*

## TABLE OF CONTENTS

**ARGUMENT** .......... **1**

I. The City discounts the combined force of Mattioli's specific acts. .......... 2

II. The City's comparator cases do not support affirmance. .......... 7

III. Mattioli's alternative federal grounds do not support affirmance. .......... 9

IV. The state-law issues do not provide an alternative ground for affirmance. .......... 14

V. The proper disposition is reversal on color of law and remand for further proceedings. 16

**CONCLUSION** .......... **16**

**CERTIFICATE OF COMPLIANCE** .......... **17**

# TABLE OF AUTHORITIES

## Cases

*Abdullahi v. City of Madison*, 423 F.3d 763 (7th Cir. 2005) .......... 13-14
*Barnes v. City of Centralia*, 943 F.3d 826 (7th Cir. 2019) .......... 5-6
*Consumer Fin. Prot. Bureau v. Townstone Fin., Inc.*, 107 F.4th 768 (7th Cir. 2024).......... 10, 15
*Cyrus v. Town of Mukwonago*, 624 F.3d 856 (7th Cir. 2010) .......... 12
*de Lima Silva v. Dep't of Corr.*, 917 F.3d 546 (7th Cir. 2019).......... 10
*DiDonato v. Panatera*, 24 F.4th 1156, 1158 (7th Cir. 2022).......... 7
*El Paso Natural Gas Co. v. Neztsosie,* 526 U.S. 473 (1999).......... 15
*Estate of Phillips v. City of Milwaukee*, 123 F.3d 586 (7th Cir. 1997).......... 12
*Estate of Sims ex rel. Sims v. County of Bureau*, 506 F.3d 509 (7th Cir. 2007) .......... 6
*Estate of Thomson v. Behn,* No. 25-2827, slip op. (7th Cir. July 9, 2026) .......... 13
*First Midwest Bank, Guardian of Estate of LaPorta v. City of Chicago,* 988 F.3d 978 (7th Cir. 2021).......... 7
*Gibson v. City of Chicago, 910 F.2d 1510 (7th Cir. 1990)* .......... 2, 9
*Graham v. Connor*, 490 U.S. 386 (1989) .......... 12
*Leavell v. Illinois Department of Natural Resources,* 600 F.3d 798 (7th Cir. 2010) .......... 15
*Mackall v. Cathedral Trustees, Inc.,* 465 F. App'x 549 (7th Cir. 2012) .......... 15
*Monell v. Dep't of Soc. Servs.,* 436 U.S. 658 (1978).......... 7, 9, 16
*Pickrel v. City of Springfield, Ill., 45 F.3d 1115 (7th Cir. 1995)*.......... 2, 7-9
*Rivera v. Allstate Insurance Co.,* 913 F.3d 603 (7th Cir. 2018) .......... 15
*Singleton v. Wulff*, 428 U.S. 106 (1976) .......... 10, 15
*Spencer v. Lee*, 864 F.2d 1376 (7th Cir. 1989) (en banc) .......... 5-6

## Statutes

28 U.S.C. § 1367(c)(3).......... 14-16

## Rules

FED. R. CIV. P. 56(a).......... 7

## ARGUMENT

Defendants' briefs confirm the central error in the district court's ruling. The color of law question does not turn on whether any single fact independently proves state action; it turns on the totality of Mattioli's specific acts. Those acts are materially undisputed. Mattioli remained a sworn MPD officer, and Acevedo and the other guests knew he was a police officer. SA-002–SA-003, SA-017. Mattioli identified himself as an off-duty police officer during the 911 call. A-015; SA-007, SA-018. He initially tried to make Acevedo leave when the dispute concerned alleged theft from Mattioli and Acevedo's refusal to leave; after Acevedo allegedly punched Christopher Peters, Mattioli changed course, restrained Acevedo, and held him for responding police. A-015–A-016; SA-005–SA-008; SA-018–SA-019. He placed Acevedo's arms behind his back in a position to be handcuffed and directed Officer Roach to handcuff him. A-016; SA-011; ECF No. 80-4 at 64:9–21. Subject to his objections, Mattioli admitted that his off-duty responsibility and "authority" were dictated by MPD SOP 220.30 and that he intended to act pursuant to duties under that SOP. SA-022–SA-023; SA-044–SA-049. He admitted at deposition that, after the incident, he said he was arresting Acevedo for his conduct. SA-008. The FPC investigation and charging materials further corroborate Plaintiff's characterization of the incident as police-related. SA-060–SA-061, SA-064; SA-073; SA-077–SA-079.

The City disputes the legal significance of those acts; Mattioli takes no position on color of law. City Br. 10–29; Mattioli Br. 11. Plaintiff's primary position remains that the undisputed material facts establish color of law as a matter of law. At minimum, those facts permit a reasonable jury to find that Mattioli invoked or purported to exercise police authority. Either conclusion requires reversal.

## I. The City discounts the combined force of Mattioli's specific acts.

The City argues that color of law is a question of law and assigns no legal significance to the individual facts because each, viewed separately, may also be consistent with private conduct. City Br. 10–23. That framing misses the point. Plaintiff agrees that color of law may be resolved as a matter of law when the material facts permit only one reasonable conclusion. That is why Plaintiff moved for partial summary judgment. But when the record permits competing reasonable characterizations of the defendant's conduct, the issue cannot be resolved against Plaintiff at summary judgment. *Gibson v. City of Chicago,* 910 F.2d 1510, 1517 (7th Cir. 1990). The question is whether Mattioli's words and acts, considered together, show that he invoked or purported to exercise police authority. Plaintiff does not rely on any single fact by itself. The specific acts matter in combination. *Pickrel v. City of Springfield, Ill.,* 45 F.3d 1115, 1118 (7th Cir. 1995).

The City emphasizes that "one's unspoken views do not move the needle." City Br. 28. Plaintiff agrees and relies on affirmative acts and statements. Mattioli identified himself to the dispatcher as an off-duty police officer while requesting a police response and actively restraining Acevedo. A-015; SA-018. He restrained Acevedo prone and held him for the officers he had summoned. A-015; SA-005; SA-018–SA-019. He directed Roach to handcuff Acevedo and positioned Acevedo's arms for handcuffing. A-016; SA-011; ECF No. 80-4 at 64:9–21. When Roach asked which man was the police officer, Mattioli answered that he was, and Roach ultimately commanded, "Officer, get up." A-016. Mattioli later admitted that he had said he was arresting Acevedo. SA-008. Every one of those items is an act or a statement. None is a thought.

The transformation of the encounter is especially important. The City emphasizes that Mattioli initially threatened to call police, which it says shows he meant to summon others with authority. City Br. 25. But that occurred when the dispute concerned alleged theft from Mattioli

and Acevedo's refusal to leave. After Acevedo allegedly punched Peters, Mattioli changed course. He restrained Acevedo, held him for responding police, called 911, identified himself as an off-duty officer, placed Acevedo's arms behind his back in a position to be handcuffed, and directed Roach to handcuff him. A-015–A-016; SA-005–SA-008; SA-018–SA-021; ECF No. 80-4 at 64:9–21. That later conduct is the color of law conduct at issue.

The restraint also prevented Acevedo from leaving, which is inconsistent with the City's purely defensive account. Acevedo can be heard saying, "Let me go. I want to go home." A-015. The June 15 draft FPC charges recited that Janowski told responding officers that Acevedo "had nearly left the house and he was brought back in and they laid on his legs so he would not get away." SA-074. Mattioli confirmed that he would have permitted Acevedo to leave earlier but that, once the encounter became physical, "No, I did not" let him go. SA-008. A jury could find that this was a detention by an off-duty police officer to secure a person for responding on-duty police, not merely an effort to eject an unwanted guest.

The City also understates the handcuffing evidence. Roach did not merely receive a private citizen's report. He entered a scene where Peters had already told him Mattioli was a police officer, saw Mattioli restraining Acevedo, asked which person was the officer, and heard Mattioli tell him to handcuff Acevedo. A-016. Roach testified that Mattioli placed Acevedo's arms behind his back in a position to be handcuffed and that Roach understood "Cuff this guy" to mean, "at the very least," to detain Acevedo in handcuffs. ECF No. 80-4 at 64:9–21. A jury could view that sequence as arrest-related detention. Plaintiff submits the totality establishes that conclusion as a matter of law.

The City's objection that the FPC materials cannot "retroactively imbue" Mattioli's actions with police authority misreads their use. City Br. 15. Plaintiff does not offer the Commission's

conclusions as legal determinations binding this Court. The June 15 draft charges stated, based on Mattioli's own description, that he was "effecting an arrest" on Acevedo. SA-073. The final charges did not retain that arrest-rule charge, but they still proceeded against "POLICE OFFICER MICHAEL MATTIOLI," recited that he restrained Acevedo, called 911, and "held Acevedo until the police showed up," and referred the citizen complaint for FPC trial, fact finding, and discipline. SA-077–SA-079. Mattioli's description of his own conduct and the Commission's treatment of the incident are corroborating record evidence, not after-the-fact sources of police authority. The fact that the evidence was gathered afterward does not make it irrelevant to the character of Mattioli's conduct.

The City concedes that "SOP § 220.30 applied to Mattioli during the incident" and that "it is broadly true that the policy governed Mattioli's conduct during the 911 call and after Officer Roach and Officer Sheremeta arrived." City Br. 14. That concession matters because SOP 220.30(C)(2) provides that "[t]he off-duty member shall immediately identify him or herself as an off-duty officer and comply with all the commands of the on-duty personnel." SA-049. Mattioli identified himself as an off-duty officer during the 911 call, and when Roach entered and asked which man was the officer, Mattioli identified himself. A-015–A-016. When Roach commanded him to get up, he did so. Id. That sequence does not decide color of law by itself, but it mirrors the sequence the policy prescribes when an off-duty officer interacts with on-duty personnel.

SOP 220.30 recognizes off-duty arrest authority in specified circumstances. SA-048. SOP 220.10 defines arrest as the "[t]aking or detaining of a person by word or action into custody so as to subject their liberty to the actual control and will of the person making the arrest," and provides that "no formal declaration of arrest is required." SA-044. SOP 220.35 further provides that, for purposes of civil and criminal liability, a member acting under specified Wisconsin statutory

authority is considered to be acting in an official capacity, subject to stated exceptions. SA-049. Subject to his objections, Mattioli admitted that his off-duty responsibility and "authority" were dictated by SOP 220.30 and that he intended to act pursuant to duties under that SOP. SA-022–SA-023.

The policy's limitations point in the same direction. SOP 220.30 discourages police action after alcohol consumption and generally restricts an off duty member from being personally involved in the incident underlying the arrest, subject to the policy's exception when the member is the victim of a crime. SA-045, SA-049. Those are limitations on an authority the policy recognizes, not evidence that no authority existed. Whether Mattioli complied with every limitation is separate from whether he possessed and purported to exercise off-duty arrest authority.

The City's contention that none of Mattioli's conduct required authority beyond that possessed by an ordinary citizen proves too little. City Br. 19–23. The self defense privilege and the common law right of citizen's arrest establish what a private citizen may do; they do not establish the capacity in which Mattioli acted. A jury crediting Mattioli's admissions could find that he was not exercising a citizen's privilege but performing an off-duty arrest under a policy he admitted he intended to follow. That the same physical acts might also have been available to a private citizen does not resolve the capacity in which Mattioli undertook them.

The City's cited misuse cases provide examples of state action; they do not establish that official equipment or assistance from another officer is always required. And *Barnes* and *Spencer* do not resolve this case. In *Barnes*, Officer Peebles submitted a complaint as a private citizen, left charging discretion to another officer, and participated no further. *Barnes v. City of Centralia*, 943 F.3d 826, 829, 831–32 (7th Cir. 2019). Peebles personally seized no one. Here, Mattioli personally

restrained Acevedo, held him for the officers he summoned, and directed Roach to handcuff him. A-015–A-016; ECF No. 80-4 at 64:9–21. *Spencer* held that a citizen who makes a citizen's arrest is not transformed into a state actor merely by turning the person over to police. *Spencer v. Lee*, 864 F.2d 1376, 1382 (7th Cir. 1989) (en banc). It does not resolve whether a sworn officer who identified himself as an off-duty officer, acted under a policy governing off-duty arrests, described his conduct as an arrest, and directed an on-duty officer to apply handcuffs was acting in that private capacity.

*Estate of Sims* is likewise distinguishable. It explains that a state employee does not act under color of law when "off on a frolic, trying to protect a personal interest." *Estate of Sims ex rel. Sims v. County of Bureau*, 506 F.3d 509, 516 (7th Cir. 2007). Here, the issue is not merely Mattioli's personal motive; it is whether his affirmative words and acts show that he invoked or purported to exercise police authority to arrest a person for assaulting a third party. The City's self identification cases likewise establish only that identification alone is insufficient. Plaintiff has never argued otherwise; here, identification is one fact in a much larger totality.

The City's forfeiture argument fails. Misuse of state authority is not a separate theory requiring separate preservation; it is part of the governing color of law standard, and it is the standard the district court applied. The court framed the inquiry as whether Mattioli exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." A-017–A-018. This Court states the same rule in terms of the "misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Barnes*, 943 F.3d at 831. Plaintiff briefed that standard below and applied it to Mattioli's police identification, detention for responding officers, handcuffing directive, police restraint methods, and SOP 220 authority. ECF No. 57 at 2–5; ECF

No. 71 at 3–8; ECF No. 78 at 8–12. The opening brief developed the same argument. Opening Br. 10, 15, 19–23. In any event, the City concedes that it "touched upon this issue below" and answers it on the merits. City Br. 18. There is no forfeiture.

The City's approach repeats the district court's error by treating the combined facts as no more probative than each fact viewed alone. Fed. R. Civ. P. 56(a) and *Pickrel* require consideration of the specific acts together. Here, those acts establish, or at minimum permit a reasonable jury to find, that Mattioli purported to exercise police authority.

**II. The City's comparator cases do not support affirmance.**

The City relies heavily on *LaPorta* and *DiDonato*. City Br. 25–28. Neither controls this record.

*LaPorta* proceeded on the undisputed premise that Kelly was off duty and not acting under color of law when he shot LaPorta after a night of drinking. *First Midwest Bank, Guardian of Estate of LaPorta v. City of Chicago,* 988 F.3d 978, 982, 987 (7th Cir. 2021). The opinion identifies no comparable evidence that Kelly identified himself as police during an active detention, restrained a person for responding officers, positioned the person's arms for handcuffing, directed handcuffing, acted under an off-duty arrest policy, or later admitted that he said he was arresting the person for his conduct. The appellate issue was whether the City could nevertheless be liable under *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658 (1978), for that private violence. *LaPorta,* 988 F.3d at 982–87. That is not this case.

*DiDonato* is also materially different. There, the defendant was a paramedic, but the alleged misconduct occurred in his home during a private encounter. The plaintiff alleged that she fell and injured her head, that the defendant failed to summon medical help, and that he sexually assaulted her. *DiDonato v. Panatera*, 24 F.4th 1156, 1158, 1161–62 (7th Cir. 2022). The Seventh

Circuit held that the "mere overlap" between the defendant's paramedic training and the plaintiff's medical need did not establish state action absent invocation or misuse of state authority. Id. at 1161.

Plaintiff does not rely on occupational overlap. Plaintiff relies on invocation and purported exercise of police authority. Mattioli identified himself as an off-duty police officer during the 911 call, restrained Acevedo for responding police after alleged criminal conduct against Peters, placed Acevedo's arms behind his back in a position to be handcuffed, directed Roach to handcuff him, and admitted – subject to his objections – that his off-duty responsibility and "authority" were dictated by SOP 220.30. A-015–A-016; SA-007–SA-008; SA-018–SA-023; ECF No. 80-4 at 64:9–21. Mattioli also testified that he learned the bodyweight method "basically from experience on the police force," had used it on duty in front of other officers and supervisors, and was "to an extent" doing what he had done while on duty. SA-008–SA-009. Those facts are not "mere overlap." They are evidence that Mattioli used police-derived methods while performing the arrest related acts described above.

The City's attempt to distinguish *Pickrel* also fails. The City's catalog of what Mattioli did not do – no uniform, no marked squad car, no express arrest announcement – treats facts sufficient in *Pickrel* as though they were necessary. City Br. 24–26. *Pickrel* did not create a checklist; it held that an off-duty rationale "only skim[med] the surface" and that the inquiry turns "largely on the nature of the specific acts" performed. 45 F.3d at 1118. MPD's own definition provides that "no formal declaration of arrest is required," SA-044, and Mattioli testified that even "on duty in full uniform" he does not always say "you are under arrest," SA-016. Mattioli did not merely summon others with authority. He restrained Acevedo, held him until officers arrived, identified himself as the officer present, positioned Acevedo's arms for handcuffing, and directed Roach to handcuff

him. A-015–A-016; SA-007–SA-008; SA-018–SA-023; ECF No. 80-4 at 64:9–21. The City's final distinction – that *Pickrel* arose at the pleading stage while this case follows discovery – proves Plaintiff's point: discovery produced admissions that were not before the court in *Pickrel*.

The City's reliance on *Gibson* is equally misplaced. *Gibson* involved an officer who had been stripped of police authority. 910 F.2d at 1512–13, 1517–18. Mattioli was not in that posture. He remained a sworn MPD officer, and SOP 220 regulated off-duty arrest authority. SA-017; SA-044, SA-048–SA-049. *Gibson* therefore supports Plaintiff's distinction between an officer with no police authority left to invoke and an officer who still possessed authority and purported to exercise it.

One consequence warrants emphasis because the City's silence obscures it. The City moved below on an alternative *Monell* theory – that municipal liability failed even if Mattioli acted under color of law – but it does not renew that theory here. ECF No. 64 at 17–24; City Br. 2, 10–29. The district court never reached the City's alternative Monell theory, and the City does not ask this Court to decide it. The judgment for the City rests on the same threshold ruling as the judgment for Mattioli: that Mattioli acted as a private citizen. A-022–A-023. If that threshold ruling is reversed, the appropriate course is to vacate the judgment for the City and remand its unaddressed Monell theory for consideration in the first instance.

## III. Mattioli's alternative federal grounds do not support affirmance.

Mattioli asks this Court to affirm the federal judgment on objective reasonableness and qualified immunity, references causation among the grounds raised below, and separately asks the Court to resolve state law defenses. Mattioli Br. 12–22. The federal grounds do not support affirmance, and to the extent the Court does not reject them on this record, should be addressed by

the district court on remand if the color of law ruling is reversed. The state law arguments are addressed separately below.

Plaintiff waived nothing. The opening brief was not required to assign error to rulings the district court never made. It identified the unresolved objective reasonableness, qualified immunity, causation, and state law grounds and requested remand. Opening Br. 24–25. Mattioli concedes that "[t]he district court did not directly address Mattioli's summary judgment arguments." Mattioli Br. 11; A-022–A-023. His own authority states that this Court "may affirm" on a preserved alternative ground; it does not require the Court to do so. *de Lima Silva v. Dep't of Corr.*, 917 F.3d 546, 558 (7th Cir. 2019). And "[i]t is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below." *Consumer Fin. Prot. Bureau v. Townstone Fin., Inc.*, 107 F.4th 768, 777 (7th Cir. 2024) (quoting *Singleton v. Wulff*, 428 U.S. 106, 120 (1976)). Because Mattioli now urges objective reasonableness and qualified immunity as alternative grounds, this reply responds to them.

The district court dismissed the federal claims on the threshold conclusion that Mattioli did not act under color of law. A-020–A-022. It did not decide objective reasonableness, qualified immunity, causation, or the state law defenses. A-022–A-023. Those questions involve record intensive issues that should be addressed by the district court in the first instance unless the Court concludes that the present record forecloses them.

Mattioli does not present causation as a separate issue for review. Mattioli Br. 2, 12–16. His federal merits argument addresses objective reasonableness and qualified immunity, with no separately developed causation argument. In any event, the summary judgment record independently precludes affirmance on causation for the reasons addressed below.

Mattioli's alternative arguments depend on his version of disputed facts. He says Acevedo "never stopped resisting," that Mattioli used only limited bodyweight and positioning, and that no evidence supports a neck compression or asphyxiation theory. Mattioli Br. 12–16. But the summary judgment record, viewed in Plaintiff's favor, supports a materially different account.

Mattioli's contention that the only support for the "chokehold" characterization was Roach's initial impression is not the record. Mattioli told an investigator, "I didn't suffocate the guy. I had my arms around his neck, yes, and I held him there, but I didn't suffocate the guy. I didn't press hard enough." SA-009. He also said, "I wasn't squeezing tight enough where he couldn't breathe." SA-010. At deposition, Mattioli described his right arm as "across his neck and chin area," his upper body as lying on Acevedo's "back, neck and head area," and acknowledged pushing down with his upper body against Acevedo's "back, head and neck area" as Acevedo pushed up. SA-009–SA-010. When Roach moved closer because he was "making sure [Mattioli] did not have his arm around [Acevedo's] neck," Mattioli answered, "oh, yeah." A-016. These are Mattioli's own admissions and the responding officer's contemporaneous observation, not a single unsupported impression.

When Roach entered, Acevedo was face down beneath Mattioli. By the time Roach moved closer to check whether Mattioli's arm was around Acevedo's neck, Acevedo was not moving. A-015–A-016. Mattioli was on top of him, with his upper body on Acevedo's upper body and his right arm under Acevedo's chin or neck. A-015. When Roach asked whether Acevedo was breathing, Mattioli answered, "I don't know." A-016. Roach then moved closer because he was making sure Mattioli did not have his arm around Acevedo's neck. A-016. Mattioli then sat on Acevedo's back and placed Acevedo's arms behind his back in a position to be handcuffed before Roach told him to get up. A-016; ECF No. 80-4 at 64:9–13. Officers checked for a pulse and began

CPR. A-016. The medical examiner determined that the cause of death was anoxic encephalopathy due to traumatic asphyxia and classified the manner of death as homicide. SA-039.

Objective reasonableness cannot be resolved on this record. The relevant considerations include the severity of the crime, whether the person posed an immediate threat, and whether he was actively resisting or attempting to flee. *Graham v. Connor*, 490 U.S. 386, 396 (1989). The second and third considerations are disputed. No weapon was found on Acevedo. SA-021. Peters told Roach that Acevedo was "subdued." ECF No. 80-4 at 25:13–26:5. Mattioli testified that Acevedo stopped moving before Roach arrived, that the cessation was not "instant," that he "stayed on top of him," and that his arm remained "under his chin and the neck area." SA-010–SA-012. Plaintiff does not contend that the severity consideration necessarily favors him; Mattioli testified that he believed felonies had occurred. SA-006. But the severity of a completed offense cannot justify force maintained after the threat or resistance ended.

"Force is reasonable only when exercised in proportion to the threat posed, and as the threat changes, so too should the degree of force." *Cyrus v. Town of Mukwonago*, 624 F.3d 856, 863 (7th Cir. 2010). Whether Mattioli continued prone bodyweight and neck area pressure after Acevedo was subdued is the disputed fact on which reasonableness turns. A-015–A-016; SA-009–SA-012. That issue cannot be resolved by accepting Mattioli's account at summary judgment.

The autopsy's traumatic asphyxia finding, considered with the evidence of prone bodyweight and neck area pressure, also precludes affirmance on causation. A-015–A-016; SA-009–SA-010; SA-039.

*Estate of Phillips v. City of Milwaukee*, 123 F.3d 586, 593–95 (7th Cir. 1997), does not compel affirmance. There, the Seventh Circuit held the force reasonable on a record showing that Phillips continued to struggle, the officers used only the force necessary to restrain him, and they

monitored him after placing him prone. Here, by contrast, Plaintiff identifies specific evidence from which a jury could find the force unreasonable: Mattioli's upper body pressure, arm under Acevedo's chin or neck, continued restraint after Acevedo stopped moving, failure to know whether Acevedo was breathing, placement of Acevedo's arms behind his back in a position to be handcuffed, and the traumatic asphyxia death finding. A-015–A-016; SA-009–SA-012; SA-039.

*Estate of Thomson v. Behn,* No. 25-2827, slip op. at 3–5, 8–10, 14–18 (7th Cir. July 9, 2026), is also distinguishable. There, the officers were on duty, responded in a hospital setting, monitored Thomson's breathing, ensured no one was applying pressure that might restrict breathing, obtained medical clearance, and later relied on medical personnel. Here, Mattioli was the restraining actor, did not know whether Acevedo was breathing, and continued toward handcuffing after Roach raised that concern and before Roach checked for a pulse. A-016; SA-011. *Thomson* does not support affirmance on this record.

Nor does qualified immunity independently support affirmance. Mattioli frames the question as whether "a private citizen who restrains a physically aggressive, resisting houseguest until police arrived, without striking, kicking, or using a weapon, violates the Fourth Amendment." Mattioli Br. 15. That formulation assumes away both Plaintiff's color of law theory and the facts a jury could find: neck area pressure, continuation of the restraint after Acevedo stopped moving, uncertainty whether he was breathing, and traumatic asphyxia. A-015–A-016; SA-009–SA-012; SA-039.

Long before April 2020, *Abdullahi v. City of Madison*, 423 F.3d 763, 767–72 (7th Cir. 2005), addressed materially similar prone bodyweight force and fatal pressure trauma. There, an officer knelt on the back or shoulder area of a prone man for approximately thirty to forty-five seconds; the man died shortly afterward from injuries consistent with external pressure to the chest

and neck. *Id.* The court explained that "[t]he reasonableness of kneeling on a prone individual's back during an arrest turns, at least in part, on how much force is applied." *Id.* at 771. Because the medical evidence supported competing inferences concerning potentially lethal force, the court held that a jury had to resolve the issue. *Id.* at 768–72.

*Abdullahi* also refused to resolve qualified immunity while the nature and visibility of the officer's conduct remained disputed. *Id.* at 773–74. Without first determining what force was used and how that conduct appeared to those present, the court could not decide qualified immunity as a matter of law. *Id.* The same is true here. Qualified immunity must be assessed on the facts a jury could find, not on Mattioli's preferred account. He may contest those facts on remand, but they cannot be resolved in his favor now.

## IV. The state law issues do not provide an alternative ground for affirmance.

Mattioli asks this Court to resolve state law notice, immunity, privilege, and intent defenses. Mattioli Br. 16–22. The Court should not do so.

Plaintiff conceded nothing regarding supplemental jurisdiction. Mattioli characterizes the opening brief as containing a "concession" that relinquishment was correct. Mattioli Br. 16. It contains no such thing. Plaintiff asked this Court to "direct the district court to reconsider supplemental jurisdiction over the related state law claims." Opening Br. 25. The relinquishment rested entirely on 28 U.S.C. § 1367(c)(3) and the dismissal of every federal claim. A-022. If that predicate is removed, the district court must reconsider whether to exercise supplemental jurisdiction.

More fundamentally, Mattioli's merits arguments are not alternative grounds for affirming the state law disposition actually entered. The district court did not grant summary judgment on the state law claims. It relinquished supplemental jurisdiction and expressly declined to decide the

notice issue, stating that it "will not delve into this technical state law issue" and would "instead leave it for the state courts to address, if necessary." A-022. It supplied no merits ruling on immunity, privilege, or intent. A dismissal following relinquishment under § 1367(c) is without prejudice. *Rivera v. Allstate Insurance Co.,* 913 F.3d 603, 618 (7th Cir. 2018).

Mattioli asks this Court to replace the disposition not on the merits with summary judgment in his favor on the state law claims. Mattioli Br. 16–22. An appellee may defend a judgment on any ground supported by the record, but absent a cross appeal may not seek to enlarge his own rights or lessen the rights of the appellant. *El Paso Natural Gas Co. v. Neztsosie,* 526 U.S. 473, 479–80 (1999). Applying that rule, *Leavell v. Illinois Department of Natural Resources,* 600 F.3d 798, 804 n.4 (7th Cir. 2010), declined an appellee's request to convert dismissals without prejudice into dismissals with prejudice. Mattioli filed no cross appeal. His request for a judgment in his favor would enlarge his victory by converting claims preserved for adjudication in an appropriate forum into claims adjudicated against Plaintiff on the merits.

This Court confronted the same procedural posture in *Mackall v. Cathedral Trustees, Inc.,* 465 F. App'x 549, 552 (7th Cir. 2012) (nonprecedential). There, after the district court relinquished supplemental jurisdiction and dismissed the state law claims without prejudice, the appellees asked this Court to reject those claims on the merits. *Id.* at 551–52. The Court refused because the appellees had not cross appealed, "thus precluding their attempt to enlarge their victory." *Id.* at 552. The same rule forecloses Mattioli's request here.

The district court also supplied no state law merits reasoning to review. "It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below." *Consumer Financial Protection Bureau v. Townstone Financial, Inc.,* 107 F.4th 768, 777 (7th Cir. 2024) (quoting *Singleton v. Wulff,* 428 U.S. 106, 120 (1976)). If the federal judgment is vacated,

the proper course is to remand so the district court may reconsider supplemental jurisdiction, and if it retains jurisdiction, address the state law defenses in the first instance.

### V. The proper disposition is reversal on color of law and remand for further proceedings.

The parties' briefs expose the dispositive problem with the district court's ruling. The City asks this Court to characterize Mattioli's conduct as private by assigning benign significance to each part of the same record: the 911 identification, the handcuffing directive, SOP 220, the FPC materials, and Mattioli's arrest admission. Plaintiff is entitled to the contrary inference on the City's motion, and Plaintiff submits that the undisputed acts establish color of law as a matter of law on Plaintiff's motion.

The district court should not have granted summary judgment to Defendants on the threshold color of law issue. The Court should reverse the denial of Plaintiff's motion for partial summary judgment on color of law and direct entry of partial summary judgment on that element. At minimum, the Court should hold that a reasonable jury could find that Mattioli acted under color of law, vacate the judgments entered for Defendants, and remand for further proceedings on the unresolved federal and state law issues. The City's unaddressed *Monell* theory and the state law questions the district court expressly declined to reach should be addressed by the district court in the first instance on remand.

## CONCLUSION

Plaintiff-Appellant respectfully requests that the Court reverse the denial of Plaintiff's motion for partial summary judgment as to color of law, vacate the summary judgments entered for Defendants, and remand for further proceedings. Alternatively, the Court should hold that the record at minimum permits a reasonable jury to find that Mattioli acted under color of state law, vacate the judgments, and remand for further proceedings. The City's unaddressed *Monell* theory,

any unresolved causation question, and the state law issues the district court expressly declined to decide should be addressed by the district court in the first instance on remand.

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) and Circuit Rule 32(c) because it contains 5,148 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

This brief also complies with the typeface and type style requirements of Federal Rule of Appellate Procedure 32(a)(5) and Circuit Rule 32(b) because it was prepared using Microsoft Word in Times New Roman, 12-point font, a proportionally spaced typeface.

Respectfully submitted on August 18, 2026,

**The LaMarr Firm, PLLC**

By: /s/ B'Ivory LaMarr, Bar No. 1122469
5718 Westheimer Rd., Suite 1000
Houston, TX 77057
(800) 679-4600, ext. 700
blamarr@bivorylamarr.com

**Jacob Litigation, Inc.**

By: /s/ Devon M. Jacob, Pa. Bar No. 89182
P.O. Box 837
Mechanicsburg, PA 17055-0837
(717) 796-7733
djacob@jacoblitigation.com

**Ben Crump Law, PLLC**

Benjamin L. Crump, D.C. Bar No. 1552623
122 S. Calhoun Street
Tallahassee, FL 32301
(800) 959-1444
court@bencrump.com

*Attorneys for the Plaintiff-Appellant, Jose Acevedo, individually, and as a Special Administrator of the Estate of Joel Acevedo*